FILED
14 APR 09 AM 11:27

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 14-2-10101-5 KNT

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

BRETT DURANT, On Behalf of Himself and all other similarly situated,

Plaintiffs,

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign automobile insurance company,

Defendant.

**CLASS ACTION**

KING COUNTY NO.

**COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELEIF AND FOR DAMAGES**

JURY TRIAL DEMANDED

The Plaintiff, by and through his attorneys of record, Van Siclen, Stocks & Firkins, and the Law Office of David Nauheim, complains and alleges as follows:

## I. NATURE OF THIS ACTION

1.1 Defendant State Farm Mutual Automobile Insurance Company ("State Farm") has engaged in a systematic practice of prematurely and unlawfully depriving its injured claimants of their medical benefits. Like most insurance policies, State Farm's policies contain personal injury protection ("PIP") clauses. These clauses promise that State Farm



VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

will pay an insured's or a third-party beneficiary's "reasonable and necessary" medical expenses incurred from bodily injuries sustained in accidents.

1.2 Personal Injury Protection ("PIP") benefits may be lawfully terminated for only one of four reasons: if treatment is not (1) reasonable, (2) necessary, (3) related to the accident, or (4) incurred within three years. WAC 284-30-395(1). Insurance regulations are unequivocal: no other reasons are permitted. Despite this, for over twenty years, Defendant State Farm has issued insurance policies that purport to allow termination of benefits when it finds that continued treatment is not "essential in achieving maximum medical improvement for the bodily injury . . . ." This action concerns thousands of consumers who had their PIP benefits by State Farm terminated under this illegitimate standard.

## II. JURISDICTION AND VENUE

2.1 This Court has jurisdiction over Plaintiff's claims pursuant to RCW 2.08.010, which grants to Superior Courts jurisdiction over claims of this type

2.2 This Court has jurisdiction over State Farm because State Farm systematically and continuously does business in Washington.

2.3 Venue is proper in this county under RCW 4.12.025 because State Farm transacts business in this county, the contract in question was entered into in this county, and many of the alleged breaches took place here.

## III. PARTIES & BACKGROUND FACTS

3.1 Plaintiff Brett Durant was, and at all times material hereto is, a resident of King County, State of Washington.



VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

3.2 Defendant State Farm Automobile Insurance Company was, and at all times material hereto is, an insurance company licensed to provide insurance under the laws of the state of Washington and by the Washington State Insurance Commissioner.

3.3 At all times material herein, Plaintiff was insured under a contract of insurance with Defendant and dutifully paid all material sums and premiums on said contract since 1995. On July 21, 2012, Plaintiff was injured in an automobile accident. In order to obtain treatment for his injuries, Plaintiff opened a PIP claim with Defendant.

## IV. CLASS ACTION ALLEGATIONS

4.1 Plaintiff brings all claims herein as class claims pursuant to Civil Rule ("CR") 23 and Local Rule ("LR") 23. As explained herein, the requirements of these rules are met with respect to the class defined below.

4.2 The class consists of all insured, as defined in the medical payments coverage portions of State Farm' policies, and all third-party beneficiaries of such coverage, under any State Farm insurance policy issued in the state of Washington with respect to whom State Farm terminated, or limited benefits, based upon its determination that its insured had reached "maximum medical improvement" or that such benefits were not "essential in achieving maximum medical improvement for the bodily injury."

4.3 With respect to the "numerosity" requirement of CR 23(a), joinder of all members of the class is impracticable because the class consists of hundreds of persons located throughout Washington that have been impacted by the abovementioned practices of Defendant. The exact number of class members can be determined by appropriate discovery.



VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

4.4 With respect to the "commonality" requirement of CR 23(a), there are questions of law and fact common to the class, including, but not limited to, the following:[1]

A. Whether it is lawful for State Farm to terminate or limit benefits based upon language that it employs in its insurance policy that is not permitted under insurance regulations and statutes pertaining to Personal Injury Protection?

B. Whether a Declaratory Judgment should be entered declaring State Farm's conduct unlawful?

C. Whether State Farm should be enjoined from such further unlawful conduct?

D. Whether State Farm's unlawful conduct damaged class members?

E. A determination of the nature and extent of such damages?

F. Whether State Farm's unlawful conduct alleged herein extinguishes any contractual or equitable subrogation interest in its insured's third party recoveries?

4.5 With respect to the "typicality" requirement of CR 23(a), the interests of Plaintiff in this matter are the same as those of the rest class members. His claim arises from the same practice and course of conduct that gives rise to the claims of other potential class members. *See Smith v. Behr Process Corp.*, 113 Wash. App. 306 (2002) (also noting that varying fact patterns in individual claims do not defeat the typicality requirement for class certification where the same unlawful conduct is alleged to have affected both the named plaintiffs and the class members).

4.6 With respect to the "adequate representation" requirement of CR 23(a), Plaintiff is committed to vigorously pursuing this action on behalf of the class and has retained counsel competent to handle class actions of this sort. Plaintiff will fairly and

[1] The "commonality" requirement is qualitative rather than quantitative. *Schwendeman v. USAA Cas. Ins. Co.*, 116 Wash. App. 9 (2003). Courts will find commonality where the facts indicate that the defendant was engaged in a common course of conduct in relation to all the potential class members. *Id.*



VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

adequately represent the interests of the class members and has no interests that conflict with those of the rest of the class.

4.7 With respect to the requirements of CR 23(b)(1), the prosecution of separate actions by members of the class would create a risk of establishing incompatible standards of conduct for State Farm. For example, one court might determine that the challenged actions are illegal and enjoin them, while another might decide that those same actions are permissible. Similarly, individual actions may, as a practical matter, be dispositive of the interests of the class.

4.8 With respect to the requirements of CR 23(b)(2), as explained above, State Farm has acted in a consistent manner towards all class members such that a pattern of activity is apparent. That is, State Farm, has imposed an illegal and unfair practice that affects all class members. *See* FRIEDENTHAL, KANE & MILLER, CIVIL PROCEDURE ß 16.2 (West Hornbook, 4th ed.). State Farm's actions are, therefore, generally applicable to the class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the entire class.

4.9 With respect to the requirements of CR 23(b)(3), the common questions of law and fact enumerated above predominate over those questions that affect only individual members of the class. Moreover, a class action is the superior method for fair and efficient adjudication of this controversy because State Farm's practice is pervasive across a great many policy-holders with PIP protection. For similar reasons, the likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct this litigation. To Plaintiff's knowledge, no similar litigation is



VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

currently pending by other members of the class. Plaintiff's counsel, experienced in class actions, foresees little difficulty in managing this case as a class action.

4.10 Finally, the prerequisites to maintaining a class action for injunctive relief exist in this case. If injunctive relief is not granted, great harm and irreparable injury to Plaintiff and members of the class will continue. The proposed class has no adequate remedy at law for the injuries which will surely recur given that, absent action from this Court, State Farm will continue to mislead and cause economic and noneconomic injury to its policy-holders and third-party beneficiaries. An order finding, money damages alone would be meaningless to those who will be injured in the future if the challenged conduct is allowed to continue, and for those who rely on State Farm in choosing an insurance provider and seeking care for their accidental injuries.

## V. STATEMENT OF FACTS

5.1 State Farm is a foreign insurer that provides automobile liability insurance in the State of Washington. For over twenty years, State Farm has issued automobile liability policies in the State of Washington That policy requires State Farm to pay its insured's "reasonable medical expenses" for up to three years for bodily injury sustained in an automobile accident. However, the policy defines reasonable medical expenses as expenses that are incurred for medical services that "are essential in achieving maximum medical improvement for the bodily injury sustained in the accident." The most recent version of State Farm's automobile liability in Washington is known as Form 9847A and has been in effect since 2006 and contains this illegitimate standard. (Exhibit 1.)



VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

5.2 Insurance regulations in Washington unequivocally limit the reasons for which an insurance company is permitted to terminate, limit or deny PIP:

(1) if the treatment is not reasonable;

(2) if the treatment is not necessary;

(3) if the treatment is not related to the motor vehicle accident; or,

(4) if the treatment was not incurred within three years of the motor vehicle accident.

5.3 Insurance regulations unequivocally provide that this is an exhaustive list. WAC 284-30-395(1) ("These are the only grounds for denial, limitation, or termination of medical and hospital services permitted[.]") (emphasis added).

5.4 Yet for over **twenty** years, State Farm has terminated or limited coverage while their insureds were still treating for their injuries when it found that further treatment was not "essential to achieving maximum medical improvement" or that their insured had reached "maximum medical improvement."

5.5 The central dispute in this action is whether State Farm conduct violated its duty of good faith, violated the Insurance Fair Conduct Act, breached the insurance contract, and violated the Consumer Protection Act; and if so, what should be the remedy for the thousands of insureds who were denied medical treatment for their injuries, or who incurred out of pocket expenses for medical treatment that should have been covered by their State Farm PIP policy, or who paid subrogation to State Farm, when in fact State Farm's right to subrogation had been extinguished by its bad faith and breach of contract.

5.6 Brett Durant, the Representative Plaintiff in this action, has been a policy holder with State Farm since 1995 and has dutifully paid his premiums for 19 years. He chose



VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

to carry $35,000 in PIP coverage. On July 21, 2012, Mr. Durant was injured in a motor vehicle accident when another driver failed to obey a yield sign and struck the left front side of his vehicle. There was $11,501.56 in property damage to Mr. Durant's vehicle and he and his fiancée, Sarah Durant, were injured.

5.7 Three days later, Mr. Durant sought treatment with chiropractor Harold Rasmussen, DC, who diagnosed him with cervical, thoracic, sacral and bilateral sacroiliac sprain condition with fixation of the right shoulder, headache and dizziness. He began chiropractic treatment and massage therapy. When his shoulder did not improve, he was referred him for a shoulder MRI, which showed for a sprain of the middle glenohumeral ligament and a possible small type I SLAP tear. He was referred to orthopedic surgeon Scott Hormel, who diagnosed mild bursitis/tendinitis. This was treated with physical therapy and later subacromial cortisone injections.

5.8 On October 18, 2012—four months after the accident—State Farm sent Dr. Rasmussen a form letter inquiring as to Mr. Durant's progress. Notably, the form letter did not inquire about any of the standards listed in WAC 284-30-395(1). Rather, it only asked about the illegitimate standard: "Has the patient reached maximum medical improvement?" and, "If the patient has not reached maximum medical improvement, when is your target date?" This form letter is the same letter that State Farm systematically uses on all of its PIP claims in the State of Washington. Dr. Rasmussen responded that Mr. Durant was not at MMI, but that his target date was February 2, 2013.

5.9 However, Mr. Durant's injuries were not recovered by that date and he continued to receive chiropractic adjustment and massage therapy. On April 2, 2013, State



VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

Farm sent another letter to Dr. Rasmussen asking again whether Mr. Durant was at MMI and if not, when he was expected to do so. Dr. Rasmussen listed 3/27/13 as the date of MMI. This time the letter asked, "You have treated Brett past his given MMi [sic] date of 2/1/2013. Please explain." Dr. Rasmussen stated, "Patient was not stable and needed treatment to 3/27/2013."

5.10 However, while Mr. Durant may have been "stable" as of 3/27/2013, this was not the end of the problems he would have with his accident-related injuries. He had continued instability throughout the thoracocervical, thoracolumbar, lumbosacral, and bilateral sacroiliac joints as well as instability of the right shoulder due to the SLAP tear. Like many patients, he had achieved "MMI" by sustained treatment and avoiding activities that would aggravate his injuries—activities that he had been able to engage in before the motor vehicle accident, like playing golf, snowboarding, running, mountain biking, doing yard work, etc. Without the benefit of ongoing treatment, whenever Mr. Durant attempted to return to any of his pre-accident activities, he aggravated his injuries from the motor vehicle accident. What is more, Mr. Durant works as a Data Center Technician for Motricity and singlehandedly maintains a 6000 square foot data center, which requires varying amounts of physical work. From time to time, his physical duties aggravated his injuries from the motor vehicle accident. On these occasions, Mr. Durant sought chiropractic treatment or massage therapy.

5.11 When the activities of daily living aggravates an underlying injury, these aggravations are legally attributable to the original injury. Since treatment for these aggravations is reasonable, necessary, related to the motor vehicle accident, and incurred



VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

within three years, his providers billed State Farm under Mr. Durant's PIP claim. State Farm denied each of these medical bills. The basis given by State Farm for each denial was that: "Services are not covered, as your provider advised us you previously reach maximum medical improvement." The denials made no mention of whether the treatment was reasonable, necessary, or related to the motor vehicle accident.

5.12 By this point, Mr. Durant had retained an attorney to represent him in his personal injury claim. His attorney wrote to State Farm asking them to pay for the outstanding medical bills. The letter explained that State Farm must pay for treatment under that met the standard in WAC 284-30-395(1). The attorney asserted that unless State Farm had a competent medical opinion that Mr. Durant's treatment did not meet this appropriate legal standard, State Farm must resume payment of the plaintiff's medical bills. The attorney requested that State Farm provide legal authority supporting its denials of Mr. Durant's medical bills. He pointed out that the demanding physical nature caused aggravations of his injuries. Finally, the attorney provided State Farm a letter from Dr. Rasmussen explaining that while Mr. Durant had reached MMI, his prognosis was guarded, and that instability throughout the thoracocervical, thoracolumbar, lumbosacral, and bilateral sacroiliac joints as well as instability of the right shoulder due labrum tear would mean that Mr. Durant would require conservative care on and off for his spinal and pelvic dysfunction. He would also experience a definite increase in degenerative joint disease throughout his neck, spine and his right shoulder due to his injuries. He recommended that during periods of aggravation Mr. Durant should receive conservative treatment to restore biomechanics reduce his symptoms of pain. He opined that these aggravations would each require 3-4 treatments to stabilize.



VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

5.13 State Farm ignored Dr. Rasmussen's opinion and did not relent on its position denying the outstanding medical bills.

5.14 Mr. Durant, through his attorney, responded by letter that Mr. Durant needed medical treatment from time to time to due to aggravations in order to stay at MMI, and that this treatment should be considered reasonable, necessary and related under WAC 284-30-395(1). He pointed out that under RCW 48.18.510 to the extent that the insurance policy contradicted insurance regulations, it must be read as if it were in compliance with the code. At this point Mr. Durant had unpaid medical bills of $1,131.16, which had been denied by State Farm ($391.16 in chiropractic treatment and $920 in massage therapy). The letter notified State Farm that its conduct gave rise to a claim under the Insurance Fair Conduct Act (IFCA) and gave State Farm 20 days to correct its position. This letter was carbon copied to the Insurance Commissioner. State Farm made no substantive response to the IFCA letter and did not pay Mr. Durant's outstanding medical bills.

5.15 Ultimately, Mr. Durant obtained a policy limits settlement from the tortfeasor that was liable for the motor accident. He offered State Farm an opportunity to buy out his claim pursuant to *Hamilton v. Farmer's Insurance Co.*, 107 Wn.2d 721 (1987). State Farm declined to buy out the settlement. He informed State Farm that since he had received the policy limits, he was not made whole as a matter of law. State Farm did not pay Mr. Durant's outstanding medical bills.



VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

## VI. UNDERLYING LAW

6.1 State Farm's conduct at issue here is governed by state common law of contracts, tort, etc., and also by state statutes and regulations protection consumers and regulating insurance companies.

6.2 The Washington Consumer Protection Act provides that "any deceptive acts or practices in the conduct of any trade or commerce [are unlawful]." RCW 19.86.020. It also creates a private right of action to enjoin violations and to recover damages and attorneys' fees. RCW 19.86.090.

6.3 The Washington insurance code declares, *inter alia*, that "[t]he business of insurance…requir[es] that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters." RCW 48.01.030. It also prohibits insurance companies from engaging in unfair or deceptive acts or practices in the conduct of their business. RCW 48.30.010.

6.4 Specific acts that the Insurance Commissioner has defined to be unfair claims-handling practices in violation of the insurance code include:

- Misrepresenting pertinent facts or insurance policy provisions.
- Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.
- Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.
- Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed.
- Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement
- Failure to adopt and implement reasonable standards for the processing and payment of claims once the obligation to pay has been established.

WAC 284-30-330.



VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

6.5 In addition, "[e]very insurer, upon receiving notification of claim, shall promptly provide necessary claim forms, instructions, and reasonable assistance so that first party claimants can comply with the policy conditions and the insurer's reasonable requirements." WAC 284-30-360.

6.6 Moreover, "[e]very insurer shall complete investigation of a claim within thirty days after notification of claim, unless such investigation cannot reasonably be completed within such time." WAC 284-30-370.

6.7 And "[w]ithin fifteen working days after receipt by the insurer of properly executed proofs of loss, the first party claimant shall be advised of the acceptance or denial of the claim by the insurer." WAC 284-30-370.

6.8 The foregoing provisions of the insurance code can be enforced through the private right of action created by the state legislature in the Washington Consumer Protection Act: "actions and transactions prohibited or regulated under the laws administered by the insurance commissioner shall be subject to the provisions of RCW 19.86.020 and all sections of chapter…19.86 RCW which provide for the implementation and enforcement of RCW 19.86.020." RCW 19.86.170.

## VII. STATE FARM' UNLAWFUL PRACTICES

7.1 Very simply, State Farm violated WAC 284-30-395(1), which provides the exclusive reasons that PIP benefits may be terminated. There are only four such reasons: benefits may be lawfully terminated for only one of four reasons: if treatment is not (1) reasonable, (2) necessary, (3) related to the accident, or (4) incurred within three years. WAC 284-30-395(1). No other reasons are permitted. Despite this, Defendant State Farm has



VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

terminated or limited coverage based on a reason not listed, that is, whether the treatment is not "essential in achieving maximum medical improvement for the bodily injury . . . ." State Farm is not permitted to violate insurance regulations, and yet it has systematically and intentionally chosen to do so.

## VIII. CLAIMS

### Violation of the Washington Consumer Protection Act and Insurance Code

8.1 Plaintiff realleges each of the paragraphs above as if fully set forth herein.

8.2 Plaintiff's first cause of action is that State Farm committed illegal, inequitable, unfair, and deceptive acts or practices prohibted by the Washington Consumer Protection Act, the insurance code, and regulations promulgated thereunder, including but not limited to RCW 48.01.030, RCW 48.30.010, RCW 19.86.170, RCW 19.86.020, RCW 19.86.090, and WAC 284-30-395.

8.3 State Farm's practices alleged herein are unfair and deceptive, committed in the course of trade or commerce, impact the public interest, and are the proximate cause of harm to Plaintiff and the proposed class members. *See* RCW 48.01.030. Pursuant to RCW chapter 19.86, Plaintiff is entitled to damages, including treble damages, in addition to prejudgment interest, cost, expenses and attorneys' fees.

### Breach of Contract

8.4 Plaintiff realleges each of the paragraphs above as if fully set forth herein.

8.5 State Farm, by its acts and omissions described in this complaint, breached and continues to breach its duties of good faith and fair dealing and its "enhanced obligation



VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

of fairness towards its insured," which are all implicit in State Farm' insurance contracts. *See Safeco Ins. Co. of Amer. v. Butler*, 118 Wn.2d 383, 393 (1992).

8.6 State Farm's specific breaches include, but are not limited to (a) refusing to pay the amount of medical benefits it is contractually obligated to pay, and (b) failing to meet its duties of good faith.

8.7 Plaintiff and the proposed class have been damaged by State Farm's breaches, while State Farm has unreasonably profited from them. Plaintiff and the proposed class are entitled to declaratory and injunctive relief prohibiting State Farm from engaging in the breaches alleged in this complaint. They are also entitled to damages in an amount to be proven at trial, together with prejudgment interest, expenses, and costs.

**Tortious Bad Faith Handling of Insurance Claims**

8.8 Plaintiff realleges each of the paragraphs above as if fully set forth herein.

8.9 State Farm, by its acts and omissions described in this complaint, committed the tort of bad faith handling of insurance claims. *See Butler*, 118 Wash. 2d at 389.

8.10 State Farm's specific tortious activities include, but are not limited to (a) refusing to pay the amount of medical benefits it is obligated to pay, and (b) handling insurance claims in bad faith and in direct violation of the Washington Adminstrative Code.

8.11 Plaintiff and the proposed class have been damaged by State Farm's tortious conduct, while State Farm has unreasonably profited from it. Plaintiff and the proposed class are entitled to declaratory and injunctive relief prohibiting State Farm from engaging in the conduct alleged in this complaint. They are also entitled to damages in an amount to be proven at trial, together with prejudgment interest, expenses, and costs.



VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

**Violation of the Insurance Fair Conduct Act**

8.12 Plaintiff realleges each of the paragraphs above as if fully set forth herein.

8.13 Pursuant to RCW 48.30.015, the plaintiff asserts that State Farm did unreasonably deny and terminate benefits. The plaintiff seeks a determination that the defendant did act unreasonably in denying the plaintiff's PIP claims for coverage or payment of benefit. The plaintiff seeks the amount of the benefits improperly withheld, repayment of subrogation payments made to State Farm by it insured, and noneconomic damages for the prolonged pain and suffering and loss enjoyment of life its insured were subjected to due to the denial of medical care, together with and award of reasonable attorneys' fees and actual and statutory litigation costs, including expert witness fees, to the first party claimant of an insurance contract who is the prevailing party in such an action and treble damages.

## IX. DEMAND FOR JURY

9.1 Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right. In the event this matter is removed, then this prayer for a jury trial should be construed as a demand for a jury under Rule 81.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff herein prays for the following relief:

1. A declaration that State Farm has violated and continues to violate the Washington Consumer Protection Act and the Washington insurance code by limiting coverage in violation of WAC 284-30-395.

2. A declaration that, by committing the acts alleged herein, State Farm has breached and continues to breach its insurance contracts with Plaintiff and the proposed class.



VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

3. A declaration that, by committing the acts alleged herein, State Farm has committed and continues to commit tortious bad faith handling of insurance claims.

4. A declaration that, by committing the acts alleged herein, State Farm has violated and continues to violate the Insurance Fair Conduct Act.

5. A declaration that, by violating its duty of good faith and by breaching the insurance contract, State Farm's has extinguished its equitable right to subrogation/reimbursement on payments that it made on its insureds' PIP claim.

6. An injunction requiring State Farm to cease and desist using the wrong standards to discontinue PIP benefits to its insureds.

7. An injunction requiring State Farm, immediately upon being notified of the injury, to clearly inform injured insureds and third-party beneficiaries that State Farm may only disallow charges that are not reasonable and necessary, and shall discontinue using terms involving maximum medical improvement or any such equivalent.

8. An award to Plaintiff and the class compelling State Farm to pay any and all outstanding medical bills that were due and owing at the time it unilaterally and without justification cut off insurance benefits, together with collection fees and all consequential damages flowing from State Farm's failure to pay said amounts.

9. An award to the Plaintiff and the class compelling State Farm to pay noneconomic damages for the prolonged pain and suffering, mental and emotional distress and loss of enjoyment of life sustained by its insureds due to their inability to obtain medical treatment due to State Farm's conduct.



VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

10. Repayment to its insureds of any subrogation payments received from State Farm by its insureds arising from benefits paid by State Farm on its insured's PIP claims.

11. An award to Plaintiff and the class for any and all of their damages to be proven at trial, together with costs and prejudgment interest at the maximum rate allowable by law.

12. An award to Plaintiff and the class of treble damages, as allowed by RCW 19.86.090.

13. Treble and all other damages allowed by the Insurance Fair Conduct Act.

14. An award to Plaintiff of the expenses of this suit, including costs, reasonable attorneys' and experts' fees.

15. A waiver of State Farm's subrogation interest of all PIP claims in which treatment was unlawfully denied, limited, or terminated.

16. Any and all further relief as the Court may deem just and equitable.

DATED this 11th day of April, 2014.

VAN SICLEN, STOCKS & FIRKINS

/s/ Tyler K. Firkins
By:______________________________
Tyler K. Firkins, WSBA #20964
Attorney for Plaintiff

/s/ David Nauheim
By:______________________________
David Nauheim, WSBA #41880
Attorney for Plaintiff



VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646



Please read the policy carefully. If there is an accident, contact your State Farm agent or one of our Claim Offices at once. (See "INSURED'S DUTIES" in this policy booklet.)

of the termination to the *lessor*

# State Farm®
# **Car Policy**
# Booklet

**Washington**
Policy Form 9847A

## CONTENTS

**THIS POLICY** .... 3
**DEFINITIONS** .... 4
**LIABILITY COVERAGE** .... 6
Additional Definition .... 6
Insuring Agreement .... 6
Supplementary Payments .... 6
Limits .... 7
Nonduplication .... 7
Exclusions .... 7
If Other Liability Coverage Applies .... 9
Required Out-of-State Liability Coverage .... 10
Financial Responsibility Certification .... 10
**PERSONAL INJURY PROTECTION COVERAGE** .... 10
Additional Definitions .... 10
Insuring Agreement .... 11
Determining Reasonable Medical Expenses .... 11
Arbitration .... 12
Limits .... 12
Nonduplication .... 13
Exclusions .... 13
If Other Personal Injury Protection Coverage or Similar Vehicle Insurance Applies .... 14
Our Payment Options .... 15
**MEDICAL PAYMENTS COVERAGE** .... 15
Additional Definitions .... 15
Insuring Agreement .... 16
Determining Medical Expenses .... 16
Arbitration .... 16
Limit .... 17
Nonduplication .... 17
Exclusions .... 17
If Other Medical Payments Coverage or Similar Vehicle Insurance Applies .... 18
Our Payment Options .... 19
**UNDERINSURED MOTOR VEHICLE BODILY INJURY COVERAGE** .... 20
Additional Definitions .... 20
Insuring Agreement .... 20
Notice of Tentative Settlement .... 20
Deciding Fault and Amount .... 21
Limits .... 21
Nonduplication .... 22
Exclusions .... 22
If Other Underinsured Motor Vehicle Bodily Injury Coverage Applies .... 23
Our Payment Options .... 24
**UNDERINSURED MOTOR VEHICLE PROPERTY DAMAGE COVERAGE** .... 24
Additional Definitions .... 24
Insuring Agreement .... 25
Notice of Tentative Settlement .... 25
Deciding Fault and Amount .... 25
Limit .... 26
Exclusions .... 26
If Other Underinsured Motor Vehicle Property Damage Coverage Applies .... 27
Our Payment Options .... 27
**PHYSICAL DAMAGE COVERAGES** .... 27
Additional Definitions .... 27
Insuring Agreements .... 28
Supplementary Payments – Comprehensive Coverage and Collision Coverage .... 29
Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage .... 30
Limits – Car Rental and Travel Expenses Coverage .... 31
Nonduplication .... 32
Exclusions .... 32
If Other Physical Damage Coverage or Similar Coverage Applies .... 34
Financed Vehicle .... 34
Our Payment Options .... 34
**DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE** .... 35
Additional Definitions .... 35
Insuring Agreement .... 35
Benefit .... 35
Exclusions .... 36
Our Payment Options .... 37



**INSURED'S DUTIES** .... 37
Notice to Us of an Accident or Loss .... 37
Notice to Us of Claim or Suit .... 37
Insured's Duty to Cooperate With Us .... 37
Questioning Under Oath .... 37
Other Duties Under the Physical Damage Coverages .... 38
Other Duties Under Personal Injury Protection Coverage, Medical Payments Coverage, Underinsured Motor Vehicle Coverages, and Death, Dismemberment and Loss of Sight Coverage .... 38
**GENERAL TERMS** .... 39
When Coverage Applies .... 39
Where Coverage Applies .... 39
Newly Owned or Newly Leased Car .... 39
Changes to This Policy .... 40
Premium .... 40
Renewal .... 41
Nonrenewal .... 41
Cancellation .... 41
Assignment .... 41
Bankruptcy or Insolvency of the Insured .. 41
Concealment or Fraud .... 41
Our Right to Recover Our Payments .... 42
Legal Action Against Us .... 42
Choice of Law .... 43
Severability .... 43

## THIS POLICY

1. This policy consists of:
   a. the most recently issued Declarations Page;
   b. the policy booklet version shown on that Declarations Page; and
   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.
2. This policy contains all of the agreements between all named insureds and applicants and:
   a. *us*; and
   b. any of *our* agents.
3. *We* agree to provide insurance according to the terms of this policy:
   a. based on payment of premium for the coverages chosen; and
   b. unless otherwise stated in EXCEPTIONS, POLICY BOOKLET, AND ENDORSEMENTS on the Declarations Page, in reliance on the following statements:
      (1) The named insured is the sole owner of *your car*, which is not subject to any lien or security agreement.
      (2) Neither *you* nor any member of *your* household has, within the past three years, had:
         (a) vehicle insurance canceled or nonrenewed by an insurer; or
         (b) either:
            (i) a license to drive; or
            (ii) a vehicle registration
         suspended, revoked, or refused.
      (3) *Your car* is used for pleasure and business.
4. All named insureds and applicants agree by acceptance of this policy that:
   a. the statements in 3.b. above are made by the named insured or applicant and are true; and
   b. *we* provide this insurance on the basis those statements are true.



to *you* or

## DEFINITIONS

***We*** define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in boldface italics.

***Bodily Injury*** means bodily injury to a ***person*** and sickness, disease, or death that results from it.

***Car*** means a land motor vehicle with four or more wheels, designed for use primarily on public roads. It does not include:

1. Any vehicle while located for use as a dwelling or other premises; or
2. A truck-tractor designed to pull any type of trailer.

***Car Business*** means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

***Fungi*** means any type or form of fungus or fungi and includes:

1. Mold;
2. Mildew; and
3. Any of the following that are produced or released by fungi:
   a. Mycotoxins;
   b. Spores;
   c. Scents; or
   d. Byproducts.

***Newly Acquired Car*** means a ***car*** newly ***owned by you***. A ***car*** ceases to be a ***newly acquired car*** on the earlier of:

1. the effective date and time of a policy, including any binder, issued by ***us*** or any other company that describes the ***car*** as an insured vehicle; or
2. the end of the 14th calendar day immediately following the date the ***car*** is delivered to ***you***.

If a ***newly acquired car*** is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that ***newly acquired car***, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the ***newly acquired car*** is delivered to ***you***.

***Non-Owned Car*** means a ***car*** that is in the lawful possession of ***you*** or any ***resident relative*** and that neither:

1. is ***owned by***:
   a. ***you***;
   b. any ***resident relative***;
   c. any other ***person*** who resides primarily in ***your*** household; or
   d. an employer of any ***person*** described in a., b., or c. above; nor
2. has been operated by, rented by, or in the possession of:
   a. ***you***; or
   b. any ***resident relative***

   during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or ***loss***.

***Occupying*** means in, on, entering, or exiting.

***Our*** means the Company issuing this policy as shown on the Declarations Page.

***Owned By*** means:

1. owned by;
2. registered to; or
3. leased, if the lease is written for a period of 31 or more days, to.

***Person*** means a human being.

***Private Passenger Car*** means:

1. a ***car*** of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry ***persons*** and their luggage; or



2. a pickup truck, van, minivan, or sport utility vehicle:
   a. that is not used for:
      (1) wholesale; or
      (2) retail
      pick up or delivery; and
   b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

***Resident Relative*** means a ***person***, other than ***you***, who resides primarily with the first ***person*** shown as a named insured on the Declarations Page and who is:

1. related to that named insured or his or her spouse by blood, marriage, or adoption. An unmarried and unemancipated child of that named insured or his or her spouse is considered to reside primarily with that named insured while that child is away at school; or
2. a ward or a foster child of that named insured, his or her spouse, or a ***person*** described in 1. above.

***State Farm Companies*** means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;
2. State Farm Fire and Casualty Company; and
3. Any of their affiliates.

***Temporary Substitute Car*** means a ***car*** that is in the lawful possession of the ***person*** operating it and that:

1. replaces ***your car*** for a short time while ***your car*** is out of use due to its:
   a. breakdown;
   b. repair;
   c. servicing;
   d. damage; or
   e. theft; and
2. neither ***you*** nor the ***person*** operating it own or have registered.

If a ***car*** qualifies as both a ***non-owned car*** and a ***temporary substitute car***, then it is considered a ***temporary substitute car*** only.

***Trailer*** means:

1. only those trailers:
   a. designed to be pulled by a ***private passenger car***;
   b. not designed to carry ***persons***; and
   c. while not used as premises for office, store, or display purposes; or
2. a farm implement or farm wagon while being pulled on public roads by a ***car***.

***Us*** means the Company issuing this policy as shown on the Declarations Page.

***We*** means the Company issuing this policy as shown on the Declarations Page.

***You*** or ***Your*** means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a ***person***, then "***you***" or "***your***" includes the spouse of the first ***person*** shown as a named insured if the spouse resides primarily with that named insured.

***Your Car*** means the vehicle shown under YOUR CAR on the Declarations Page. ***Your Car*** does not include a vehicle that ***you*** no longer own or lease.

If a ***car*** is shown on the Declarations Page under YOUR CAR, and ***you*** ask ***us*** to replace it with a ***car*** newly ***owned by you***, then the ***car*** being replaced will continue to be considered ***your car*** until the earliest of:

1. the end of the 30th calendar day immediately following the date the ***car*** newly ***owned by you*** is delivered to ***you***;
2. the date this policy is no longer in force; or
3. the date ***you*** no longer own or lease the ***car*** being replaced.



electronically transmit a notice

## LIABILITY COVERAGE

This policy provides Liability Coverage if "A" is shown under "Symbols" on the Declarations Page.

**Additional Definition**

***Insured*** means:

1. ***you*** and ***resident relatives*** for:
   a. the ownership, maintenance, or use of:
      (1) ***your car***;
      (2) a ***newly acquired car***; or
      (3) a ***trailer***; and
   b. the maintenance or use of:
      (1) a ***non-owned car***; or
      (2) a ***temporary substitute car***;
2. the first ***person*** shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured for the maintenance or use of a ***car*** that is ***owned by***, or furnished by an employer to, a ***person*** who resides primarily in ***your*** household, but only if such ***car*** is neither ***owned by***, nor furnished by an employer to, the first ***person*** shown as a named insured on the Declarations Page or that ***person's*** spouse;
3. any other ***person*** for his or her use of:
   a. ***your car***;
   b. a ***newly acquired car***;
   c. a ***temporary substitute car***; or
   d. a ***trailer*** while attached to a ***car*** described in a., b., or c. above.

   Such vehicle must be used within the scope of ***your*** consent; and
4. any other ***person*** or organization vicariously liable for the use of a vehicle by an ***insured*** as defined in items 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither ***owned by***, nor hired by, that other ***person*** or organization.

***Insured*** does not include the United States of America or any of its agencies.

**Insuring Agreement**

1. ***We*** will pay:
   a. damages an ***insured*** becomes legally liable to pay because of:
      (1) ***bodily injury*** to others; and
      (2) damage to property

      caused by an accident that involves a vehicle for which that ***insured*** is provided Liability Coverage by this policy;
   b. attorney fees for attorneys chosen by ***us*** to defend an ***insured*** who is sued for such damages; and
   c. court costs charged to an ***insured*** and resulting from that part of a lawsuit:
      (1) that seeks damages payable under this policy's Liability Coverage; and
      (2) against which ***we*** defend an ***insured*** with attorneys chosen by ***us***.

   ***We*** have no duty to pay attorney fees and court costs incurred after ***we*** pay or deposit in court, with either the approval of the ***insured*** or as required by law, all amounts due under this policy's Liability Coverage.
2. ***We*** have the right to:
   a. investigate, negotiate, and settle any claim or lawsuit;
   b. defend an ***insured*** in any claim or lawsuit, with attorneys chosen by ***us***; and
   c. appeal any award or legal decision

   for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

***We*** will pay, in addition to the damages, fees, and costs described in the Insuring Agreement above, the interest, premiums, costs, and expenses listed below that result from such accident:

1. Interest on damages owed by the ***insured*** that accrues:
   a. before a judgment, where owed by law, but only on that part of the judgment ***we*** pay; and



   b. after a judgment. ***We*** will not pay interest on damages paid or payable by a party other than the ***insured*** or ***us***.

   ***We*** have no duty to pay interest that accrues after ***we*** deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage;
2. Premiums for bonds, provided by a company chosen by ***us***, required to appeal a decision in a lawsuit against an ***insured***. ***We*** have no duty to:
   a. pay for bonds that exceed this policy's applicable Liability Coverage limit;
   b. furnish or apply for any bonds; or
   c. pay premiums for bonds purchased after ***we*** deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage; and
3. The following costs and expenses if related to and incurred after a lawsuit has been filed against an ***insured***:
   a. Loss of wages or salary, but not other income, up to $200 for each day an ***insured*** attends, at ***our*** request:
      (1) an arbitration;
      (2) a mediation; or
      (3) a trial of a lawsuit; and
   b. Reasonable expenses incurred by an ***insured*** at ***our*** request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an ***insured*** must be reported to ***us*** before ***we*** will pay such incurred costs or expenses.

**Limits**

The Liability Coverage limits for ***bodily injury*** are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

The limit shown under "Each Person" is the most ***we*** will pay for all damages resulting from ***bodily injury*** to any one ***person*** injured in any one accident, including all damages sustained by other ***persons*** as a result of that ***bodily injury***. The limit shown under "Each Accident" is the most ***we*** will pay, subject to the limit for "Each Person", for all damages resulting from ***bodily injury*** to two or more ***persons*** injured in the same accident.

The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most ***we*** will pay for all damages resulting from damage to property in any one accident.

These Liability Coverage limits are the most ***we*** will pay regardless of the number of:

1. ***insureds***;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Nonduplication**

***We*** will not pay any damages or expenses under Liability Coverage:

1. that have already been paid as benefits under Personal Injury Protection Coverage of any policy issued by the ***State Farm Companies*** to ***you*** or any ***resident relative***;
2. that have already been paid as expenses under Medical Payments Coverage of any policy issued by the ***State Farm Companies*** to ***you*** or any ***resident relative***; or
3. that have already been paid under the Underinsured Motor Vehicle Coverages of any policy issued by the ***State Farm Companies*** to ***you*** or any ***resident relative***.

**Exclusions**

THERE IS NO COVERAGE FOR AN ***INSURED***:

1. WHO INTENTIONALLY CAUSES ***BODILY INJURY*** OR DAMAGE TO PROPERTY;
2. OR FOR THAT ***INSURED'S*** INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;

3. FOR ***BODILY INJURY*** TO THAT ***INSURED'S*** EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that ***insured's*** household employee who is neither covered, nor required to be covered, under workers' compensation insurance;

4. FOR ***BODILY INJURY*** TO THAT ***INSURED'S*** FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to ***you*** and ***resident relatives*** who are legally liable for ***bodily injury*** to fellow employees;

5. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN ***INSURED***;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY ***PERSONS*** FOR A CHARGE. This exclusion does not apply to the use of a ***private passenger car*** on a share-the-expense basis;

7. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT ***INSURED'S*** EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A ***CAR BUSINESS***. This exclusion does not apply to:

a. ***you***; or

b. any ***resident relative***

while maintaining or using ***your car***, a ***newly acquired car***, a ***temporary substitute car***, or a ***trailer***;

8. WHILE THAT ***INSURED*** IS VALET PARKING A VEHICLE;

9. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN ***YOUR CAR***, A ***NEWLY ACQUIRED CAR***, A ***TEMPORARY SUBSTITUTE CAR***, OR A ***TRAILER*** IN ANY BUSINESS OR OCCUPATION OTHER THAN A ***CAR BUSINESS*** OR VALET PARKING. This exclusion does not apply to the maintenance or use of a ***private passenger car***;

10. FOR DAMAGE TO PROPERTY WHILE IT IS:

a. ***OWNED BY***;

b. RENTED TO;

c. USED BY;

d. IN THE CARE OF; OR

e. TRANSPORTED BY

***YOU***, A ***RESIDENT RELATIVE***, OR THE ***PERSON*** WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to either damage to a residence while rented to or leased to an ***insured*** or damage to a private garage while rented to or leased to an ***insured***;

11. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

12. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION;

13. WHILE USING A ***TRAILER*** WITH A MOTOR VEHICLE IF THAT ***INSURED*** IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

14. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING; OR



15. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1. If Liability Coverage provided by this policy and one or more other Car Policies issued to ***you*** or any ***resident relative*** by one or more of the ***State Farm Companies*** apply to the same accident, then:

a. the Liability Coverage limits of such policies will not be added together to determine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. ***We*** may choose one or more policies from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of ***your car*** or a ***trailer*** attached to it.

a. If:

(1) this is the only Car Policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** that provides Liability Coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the ***State Farm Companies*** also applies as primary coverage for the same accident,

then ***we*** will pay the proportion of damages payable as primary that ***our*** applicable limit bears to the sum of ***our*** applicable limit and the limits of all other liability coverage that apply as primary coverage.

b. If:

(1) more than one Car Policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** provides Liability Coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the ***State Farm Companies*** also applies as primary coverage for the same accident,

then the ***State Farm Companies*** will pay the proportion of damages payable as primary that the maximum amount that may be paid by the ***State Farm Companies*** as determined in item 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in item 2. above, the Liability Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only Car Policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** that provides Liability Coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the ***State Farm Companies*** also applies as excess coverage for the same accident,

then ***we*** will pay the proportion of damages payable as excess that ***our*** applicable limit bears to the sum of ***our*** applicable limit and the limits of all other liability coverage that apply as excess coverage.

b. If:

(1) more than one Car Policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** provides Liability Coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the ***State Farm Companies*** also applies as excess coverage for the same accident,

then the ***State Farm Companies*** will pay the proportion of damages payable as excess that the maximum amount that may be paid by the ***State Farm Companies*** as determined in item 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

**Required Out-of-State Liability Coverage**

If:

1. an ***insured*** is in another state, the District of Columbia, or any province of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and
2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## PERSONAL INJURY PROTECTION COVERAGE

This policy provides Personal Injury Protection Coverage if "P1", "P2", P3", "P4", "P5", or "P6" is shown under "Symbols" on the Declarations Page.

**Additional Definitions**

***Automobile*** means every ***motor vehicle*** registered or designed for carrying ten passengers or less and used for the transportation of persons other than:

1. a motorcycle or a motor-driven cycle;
2. a farm-type tractor or other self-propelled equipment designed for use principally off public roads;
3. a vehicle operated on rails or crawler treads;
4. a vehicle located for use as a residence; or
5. a moped.

***Insured*** means:

1. ***you***;
2. ***resident relatives***; and
3. any other ***person***:
   a. while ***occupying*** with ***your*** permission; or
   b. struck as a ***pedestrian*** by ***your car*** or a ***newly acquired car***.

***Motor Vehicle*** means every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails.

***Pedestrian*** means a ***person*** not ***occupying*** a ***motor vehicle***.

***Personal Injury Protection Benefits*** mean accident related:

1. Medical and Hospital Benefits, which are payments for ***reasonable medical expenses*** incurred within three years of the date of the accident.
2. Funeral Expense Benefits, which are payments for reasonable expenses actually incurred for funeral, burial or cremation.
3. Income Continuation Benefits, which are payments for the ***insured's*** actual loss of income from work because of continuous inability to perform the duties of his or her usual occupation.



It applies during a period that:

a. begins on the 14th day after the date of the accident, and
b. ends either:
   (1) when the ***insured*** is reasonably able to perform the duties of his or her usual occupation;
   (2) 52 weeks after such 14th day begins; or
   (3) on the date of the ***insured's*** death;

   whichever occurs first.

4. Loss of Services Benefits, which are payments for reasonable expenses actually incurred for services:
   a. the ***insured*** would have performed without pay for his or her household except for the injury;
   b. furnished by someone other than a member of the ***insured's*** household; and
   c. furnished during a period that:
      (1) begins on the date of the accident; and
      (2) ends either:
         (a) when the ***insured*** is reasonably able to perform those services;
         (b) 365 days after the date of the accident; or
         (c) when the ***insured*** dies;

   whichever occurs first.

***Reasonable Medical Expenses*** mean expenses:

1. that are the lowest one of the following charges:
   a. The usual and customary fees charged by a majority of healthcare providers who provide similar medical services in the geographical area in which the charges were incurred;
   b. The fee specified in any fee schedule:
      (1) applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where ***medical services*** are provided; and
      (2) as prescribed or authorized by the law of the state where ***medical services*** are provided;
   c. The fees agreed to by both the ***insured's*** healthcare provider and ***us***; or
   d. The fees agreed upon between the ***insured's*** healthcare provider and a third party when ***we*** have a contract with such third party.
2. incurred for necessary:
   a. medical, surgical, X-ray, dental, ambulance, hospital, and professional nursing services, and
   b. pharmaceuticals, eyeglasses, hearing aids, and prosthetic devices

that are rendered by or prescribed by a licensed medical provider within the legally authorized scope of the provider's practice and are essential in achieving maximum medical improvement for the ***bodily injury*** sustained in the accident.

Subject to 1. and 2. above, semi-private room charges are the most ***we*** will pay unless intensive care is medically required.

**Insuring Agreement**

***We*** will provide ***personal injury protection benefits*** to an ***insured*** for ***bodily injury*** sustained by that ***insured*** and caused by an ***automobile*** accident.

**Determining Reasonable Medical Expenses**

***We*** have the right to:

1. obtain and use:
   a. peer reviews; and
   b. medical bill reviews

   of the medical expenses and services to determine if they are reasonable and necessary for the ***bodily injury*** sustained;
2. use a medical examination of the ***insured*** to determine if:



to ***you*** or
egular use.

a. the ***bodily injury*** was caused by a ***motor vehicle*** accident; and

b. the medical expenses and services are reasonable and necessary for the ***bodily injury*** sustained; and

3. enter into a contract with a third party that has an agreement with the ***insured's*** healthcare provider to charge fees as determined by that agreement.

**Arbitration**

1. If there is a disagreement as to whether incurred expenses or actual loss of income claimed by an ***insured*** are payable as ***personal injury protection benefits***, then the disagreement will be resolved by arbitration upon mutual written consent of the ***insured*** and ***us***.

2. The arbitration will take place in the county in which the ***insured*** resides unless the parties agree to another location.

The ***insured*** and ***we*** will jointly select a competent and impartial arbitrator. If unable to agree on the arbitrator within 30 days, then either the ***insured*** or ***we*** may petition a court that has jurisdiction to select the arbitrator.

Each party will pay the cost of its own attorneys and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the arbitrator.

3. The arbitrator shall only decide whether incurred expenses and actual loss of income claimed by an ***insured*** are payable as ***personal injury protection benefits***. The arbitrator shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. The arbitrator's written decision that contains an explanation of how the decision was arrived at, will be binding on:

a. ***us***; and

b. the ***insured***.

5. Subject to items 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

6. Neither ***we*** nor the ***insured*** waive any rights by submitting to arbitration.

**Limits**

The Personal Injury Protection Coverage limits are shown in the following Schedule.

1. The applicable amount shown below the Personal Injury Protection Coverage Symbol found on the schedule that matches the Personal Injury Protection Coverage Symbol shown under "Symbols" on the Declarations Page for each ***personal injury protection benefit*** is the most ***we*** will pay for any one ***insured*** in any one accident.

2. Any amount payable under Personal Injury Protection Coverage, other than under Loss of Income Expense, will be reduced by any amount paid or payable to or for the ***insured*** under any:

a. workers' compensation law; or

b. any similar medical or disability benefits law.

This does not apply to benefits paid or payable under Medicare.

3. The most ***we*** will pay per week for Loss of Income is the lesser of:

a. 85% of the actual loss of income from work;

b. 85% of the ***insured's*** weekly income reduced by any weekly payment receivable under any worker's compensation benefit, other disability insurance benefit, or other income continuation benefit. Any Loss of Income Expense amount payable under this coverage is excess over any worker's compensation or other disability insurance benefits required by law; or

c. the maximum applicable weekly benefit shown in the schedule.

Payments will be made on a monthly basis within 30 days after ***we*** have proof of the amount due.



4. Schedule

| Coverage Designation | P1 | P2 | P3 | P4 | P5 | P6 |
|---|---|---|---|---|---|---|
| 1. Medical Expenses | $10,000 | $25,000 | $50,000 | $100,000 | $100,000 | $35,000 |
| 2. Funeral | $2,500 | $3,000 | $3,000 | $3,000 | $3,000 | $2,000 |
| 3. Loss of Income | | | | | | |
| (a) Maximum total benefit | $10,000 | $10,400 | $15,600 | $20,800 | $36,400 | $35,000 |
| (b) Maximum weekly benefit | $200 | $200 | $300 | $400 | $700 | $700 |
| (c) Number of weeks | 52 | 52 | 52 | 52 | 52 | 52 |
| 4. Loss of Services Expenses | | | | | | |
| (a) Maximum total benefit | $5,000 | $5,000 | $5,000 | $5,000 | $14,600 | $14,600 |
| (b) Maximum daily benefit | $40 | $40 | $40 | $40 | $40 | $40 |
| (c) Maximum weekly benefit | $200 | $200 | $200 | $200 | $280 | $280 |

**Nonduplication**

***We*** will not pay any ***personal injury protection benefits*** under Personal Injury Protection Coverage that have already been paid:

1. as damages under Liability Coverage or Underinsured Motor Vehicle Coverage of any policy issued by the ***State Farm Companies*** to ***you*** or any ***resident relative***;

2. as expenses under Medical Payments Coverage of any policy issued by the ***State Farm Companies*** to ***you*** or any ***resident relative***; or

3. by or on behalf of a party who is legally liable for the ***insured's bodily injury***.

**Exclusions**

THERE IS NO COVERAGE FOR AN ***INSURED***:

1. WHO INTENTIONALLY CAUSES ***BODILY INJURY*** TO HIMSELF OR HERSELF;

2. WHOSE ***BODILY INJURY*** RESULTS FROM THAT ***INSURED'S*** USE OF AN ***AUTOMOBILE*** IN THE COMMISSION OF A FELONY;

3. WHO IS ***OCCUPYING*** A ***MOTOR VEHICLE***:

a. ***OWNED BY YOU***; OR

b. FURNISHED FOR ***YOUR*** REGULAR USE

IF IT IS NOT ***YOUR CAR*** OR A ***NEWLY ACQUIRED CAR***;

4. WHO IS A ***RESIDENT RELATIVE*** AND WHILE ***OCCUPYING*** A ***MOTOR VEHICLE***:

a. ***OWNED BY***; OR

b. FURNISHED FOR THE REGULAR USE OF

THAT ***INSURED*** IF THAT ***MOTOR VEHICLE*** IS NOT ***YOUR CAR***;

5. WHOSE ***BODILY INJURY*** RESULTS FROM WAR OF ANY KIND;

6. WHOSE ***BODILY INJURY*** RESULTS FROM:

a. NUCLEAR REACTION;

b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE; OR

7. WHO IS ***OCCUPYING*** A VEHICLE WHILE IT IS:

a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING



***Lessor*** means ... who leases ***your car*** to ***you*** or

CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING

**If Other Personal Injury Protection Coverage or Similar Vehicle Insurance Applies**

1. An ***insured*** shall not recover for the same ***personal injury protection benefits*** under both this coverage and other personal injury protection coverage or similar vehicle insurance.

2. If Personal Injury Protection Coverage provided by this policy and one or more other vehicle policies issued to ***you*** or any ***resident relative*** by one or more of the ***State Farm Companies*** apply to the same ***bodily injury***, then:

   a. the Personal Injury Protection Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. ***We*** may choose one or more policies from which to make payment.

3. The Personal Injury Protection Coverage provided by this policy applies as primary coverage for an ***insured*** who sustains ***bodily injury*** while ***occupying your car*** or a ***trailer*** attached to it.

   a. If:

      (1) this is the only vehicle policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** that provides Personal Injury Protection or other similar vehicle insurance which applies as primary coverage; and

      (2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the ***State Farm Companies*** also applies as primary coverage for the same accident,

   then ***we*** will pay the proportion of ***personal injury protection benefits*** payable as primary that ***our*** applicable limit bears to the sum of ***our*** applicable limit and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as primary.

   b. If:

      (1) more than one vehicle policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** provides Personal Injury Protection Coverage or other similar vehicle insurance which applies as primary coverage; and

      (2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the ***State Farm Companies*** also applies as primary coverage for the same accident,

   then the ***State Farm Companies*** will pay the proportion of ***personal injury protection benefits*** payable as primary that the maximum amount that may be paid by the ***State Farm Companies*** as determined in item 2. above bears to the sum of such amount and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in item 3. above, the Personal Injury Protection Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only vehicle policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** that provides Personal Injury Protection Coverage or other similar vehicle insurance which applies as excess coverage; and

      (2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the ***State Farm Companies*** also applies as excess coverage for the same accident,

   then ***we*** will pay the proportion of ***personal injury protection benefits*** payable as excess that ***our*** applicable limit bears to the sum of ***our*** applicable limit and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as excess coverage.

   b. If:

      (1) more than one vehicle policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** provides Personal Injury Protection Coverage or other similar vehicle insurance which applies as excess coverage; and

      (2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the ***State Farm Companies*** also applies as excess coverage for the same accident,

   then the ***State Farm Companies*** will pay the proportion of ***personal injury protection benefits*** payable as excess that the maximum amount that may be paid by the ***State Farm Companies*** as determined in item 2. above bears to the sum of such amount and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

***We*** may, at ***our*** option, make payment to one or more of the following:

1. The ***insured***;
2. Any ***person*** or organization that provides the medical services;
3. A parent or guardian of the ***insured***, if the ***insured*** is a minor or an incompetent ***person***; or
4. A ***person*** authorized by law to receive such payment.



## MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "Symbols" on the Declarations Page.

**Additional Definitions**

***Insured*** means:

1. ***you*** and ***resident relatives***:

   a. while ***occupying***:

      (1) ***your car***;
      (2) a ***newly acquired car***;
      (3) a ***temporary substitute car***;
      (4) a ***non-owned car***; or
      (5) a ***trailer*** while attached to a ***car*** described in (1), (2), (3), or (4) above; or

   b. if struck as a ***pedestrian*** by a motor vehicle or any type of trailer; and

2. any other ***person*** while ***occupying***:

   a. ***your car***;
   b. a ***newly acquired car***;
   c. a ***temporary substitute car***; or
   d. a ***trailer*** while attached to a ***car*** described in a., b., or c. above.

   Such vehicle must be used within the scope of ***your*** consent.

***Medical Expenses*** mean ***reasonable expenses*** for ***medical services***.

***Medical Services*** mean treatments, procedures, products, and other services that are:

1. necessary to achieve maximum medical improvement for the ***bodily injury***;
2. rendered by a healthcare provider:



of the termination to the ***lessor***

tion who leases ***your car*** to ***you*** or ***your*** employer for ***your*** regular use.

a. who is licensed as a healthcare provider if a license is required by law: and

b. within the legally authorized scope of that healthcare provider's practice;

3. commonly and customarily recognized throughout the medical profession and within the United States as appropriate for the treatment of the ***bodily injury***;

4. primarily designed to serve a medical purpose;

5. not experimental; and

6. not for research purposes.

***Pedestrian*** means a ***person*** who is not ***occupying***:

1. a motorized vehicle; or
2. a vehicle designed to be pulled by a motorized vehicle.

***Reasonable Expenses*** mean the lowest one of the following charges:

1. The usual and customary fees charged by a majority of healthcare providers who provide similar ***medical services*** in the geographical area in which the charges were incurred;
2. The fee specified in any fee schedule:
   a. applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where ***medical services*** are provided; and
   b. as prescribed or authorized by the law of the state where ***medical services*** are provided;
3. The fees agreed to by both the ***insured's*** healthcare provider and ***us***; or
4. The fees agreed upon between the ***insured's*** healthcare provider and a third party when ***we*** have a contract with such third party.

**Insuring Agreement**

***We*** will pay:

1. ***medical expenses*** incurred because of ***bodily injury*** that is sustained by an ***insured*** and caused by a motor vehicle accident. ***We*** will only pay such ***medical expenses***:
   a. if any of the ***medical services*** are provided within one year immediately following the date of the accident; and
   b. for ***medical services*** provided within three years immediately following the date of the accident; and
2. funeral expenses incurred for an ***insured*** who dies within three years immediately following the date of a motor vehicle accident if the death is a direct result of ***bodily injury*** sustained in such accident.



**Determining Medical Expenses**

***We*** have the right to:

1. obtain and use:
   a. utilization reviews;
   b. peer reviews; and
   c. medical bill reviews

   to determine if the incurred charges are ***medical expenses***;
2. use a medical examination of the ***insured*** to determine if:
   a. the ***bodily injury*** was caused by a motor vehicle accident; and
   b. the expenses incurred are ***medical expenses;*** and
3. enter into a contract with a third party that has an agreement with the ***insured's*** healthcare provider to charge fees as determined by that agreement.

**Arbitration**

1. If there is a disagreement as to whether incurred charges are ***medical expenses***, then the disagreement will be resolved by arbitration upon mutual written consent of the ***insured*** and ***us***.
2. The arbitration will take place in the county in which the ***insured*** resides unless the parties agree to another location.

   The ***insured*** and ***we*** will jointly select a competent arbitrator. If unable to agree on the arbitrator within 30 days, then either the ***insured*** or ***we*** may petition a court that has jurisdiction to select the arbitrator.

   Each party will pay the cost of its own attorneys and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the arbitrator.
3. The arbitrator shall only decide whether incurred charges are ***medical expenses***. The arbitrator shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.
4. A written decision that contains an explanation of how the decision was arrived at will be binding on:
   a. ***us***;
   b. the ***insured***;
   c. any assignee of the ***insured***; and
   d. any ***person*** or organization with whom the ***insured*** expressly or impliedly contracts for ***medical services***.
5. Subject to items 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.
6. Neither ***we*** nor the ***insured*** waive any rights by submitting to arbitration.

**Limit**

The Medical Payments Coverage limit is shown on the Declarations Page under "Medical Payments Coverage – Limit – Each Person". This limit is the most ***we*** will pay for the ***medical expenses*** and funeral expenses combined, incurred by or on behalf of any one ***insured*** as a result of any one accident, regardless of the number of:

1. ***insureds***;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

Subject to the limit shown on the Declarations Page, the most ***we*** will pay for funeral expenses incurred for any one ***insured*** is $3,000.

**Nonduplication**

***We*** will not pay any ***medical expenses*** or funeral expenses under Medical Payments Coverage that have already been paid:

1. as damages under Liability Coverage or Underinsured Motor Vehicle Coverage of any policy issued by the ***State Farm Companies*** to ***you*** or any ***resident relative***; or
2. by or on behalf of a party who is legally liable for the ***insured's bodily injury***.

**Exclusions**

THERE IS NO COVERAGE FOR AN ***INSURED***:

1. WHO IS STRUCK AS A ***PEDESTRIAN*** BY A MOTOR VEHICLE, ***OWNED BY*** THAT ***INSURED*** OR ***YOU***, IF IT IS NOT ***YOUR CAR*** OR A ***NEWLY ACQUIRED CAR***;
2. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT ***INSURED'S BODILY INJURY***;
3. WHO IS ***OCCUPYING*** A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN ***INSURED***;
4. WHO IS ***OCCUPYING*** A VEHICLE WHILE IT IS BEING USED TO CARRY ***PERSONS*** FOR A CHARGE. This exclusion does not apply to:
   a. the use of a ***private passenger car*** on a share-the-expense basis; or
   b. an ***insured*** while ***occupying*** a ***non-owned car*** as a passenger;
5. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT ***INSURED'S*** EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A ***CAR BUSINESS***. This exclusion does not apply to:
   a. ***you***; or
   b. any ***resident relative***

   while maintaining or using ***your car***, a ***newly acquired car***, a ***temporary substitute car***, or a ***trailer***;



***Lessor*** means the pers... tion who leases ***your car*** to ***you*** or ***your*** employer for ***your*** regular use.

6. WHILE THAT ***INSURED*** IS VALET PARKING A VEHICLE;
7. WHILE MAINTAINING OR USING A ***NON-OWNED CAR*** IN ANY BUSINESS OR OCCUPATION OTHER THAN A ***CAR BUSINESS*** OR VALET PARKING. This exclusion does not apply to the maintenance or use of a ***private passenger car***;
8. WHO IS EITHER ***OCCUPYING*** OR STRUCK AS A ***PEDESTRIAN*** BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;
9. WHO IS STRUCK AS A ***PEDESTRIAN*** BY A VEHICLE THAT:
   a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR
   b. RUNS ON RAILS OR CRAWLER-TREADS;
10. WHOSE ***BODILY INJURY*** RESULTS FROM WAR OF ANY KIND;
11. WHOSE ***BODILY INJURY*** RESULTS FROM:
   a. NUCLEAR REACTION;
   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR
   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;
12. WHOSE ***BODILY INJURY*** RESULTS FROM THE DISCHARGE OF A FIREARM;
13. WHOSE ***BODILY INJURY*** RESULTS FROM EXPOSURE TO ***FUNGI***; OR
14. WHO IS ***OCCUPYING*** A VEHICLE WHILE IT IS:
   a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR
   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An ***insured*** shall not recover for the same ***medical expenses*** or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.
2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to ***you*** or any ***resident relative*** by one or more of the ***State Farm Companies*** apply to the same ***bodily injury***, then:
   a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and
   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. ***We*** may choose one or more policies from which to make payment.
3. The Medical Payments Coverage provided by this policy applies as primary coverage for an ***insured*** who sustains ***bodily injury*** while ***occupying your car*** or a ***trailer*** attached to it.
   a. If:
      (1) this is the only vehicle policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and
      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the ***State Farm Companies*** also applies as primary coverage for the same accident,

      then ***we*** will pay the proportion of ***medical expenses*** and funeral expenses payable as primary that ***our*** applicable limit bears to the sum of ***our*** applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.
   b. If:
      (1) more than one vehicle policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and
      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the ***State Farm Companies*** also applies as primary coverage for the same accident,

      then the ***State Farm Companies*** will pay the proportion of ***medical expenses*** and funeral expenses payable as primary that the maximum amount that may be paid by the ***State Farm Companies*** as determined in item 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.
4. Except as provided in item 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.
   a. If:
      (1) this is the only vehicle policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and
      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the ***State Farm Companies*** also applies as excess coverage for the same accident,

      then ***we*** will pay the proportion of ***medical expenses*** and funeral expenses payable as excess that ***our*** applicable limit bears to the sum of ***our*** applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.
   b. If:
      (1) more than one vehicle policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and
      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the ***State Farm Companies*** also applies as excess coverage for the same accident,

      then the ***State Farm Companies*** will pay the proportion of ***medical expenses*** and funeral expenses payable as excess that the maximum amount that may be paid by the ***State Farm Companies*** as determined in item 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

***We*** may, at ***our*** option, make payment to one or more of the following:

1. The ***insured***;
2. The ***insured's*** surviving spouse;
3. A parent or guardian of the ***insured***, if the ***insured*** is a minor or an incompetent ***person***;
4. A ***person*** authorized by law to receive such payment; or
5. Any ***person*** or organization that provides the ***medical services*** or funeral services.





***Lessor*** means the person ... tion who leases ***your car*** to ***you*** or ... for ***your*** regular use.

held legally liable for that ***bodily injury***; or

(b) the sum of all limits of all bodily injury liability bonds and insurance policies that apply to the ***insured's bodily injury***; or

(2) the limits of this coverage.

b. The limit shown under "Each Accident" is the most ***we*** will pay, subject to the limit for "Each Person", for all compensatory damages resulting from ***bodily injury*** to two or more ***insureds*** injured in the same accident.

2. These Underinsured Motor Vehicle Bodily Injury Coverage limits are the most ***we*** will pay regardless of the number of:

a. ***insureds***;

b. claims made;

c. vehicles insured; or

d. vehicles involved in the accident.

**Nonduplication**

***We*** will not pay under Underinsured Motor Vehicle Bodily Injury Coverage any damages:

1. that have already been paid to or for the ***insured***:

a. by or on behalf of any ***person*** or organization who is or may be held legally liable for the ***bodily injury*** to the ***insured***; or

b. for ***bodily injury*** under Liability Coverage of any policy issued by the ***State Farm Companies*** to ***you*** or any ***resident relative***; or

2. that have already been paid as:

a. benefits under Personal Injury Protection Coverage of this policy; or

b. expenses under Medical Payments Coverage of this policy.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN ***INSURED*** WHO SUSTAINS ***BODILY INJURY*** WHILE ***OCCUPYING***:

a. A MOTOR VEHICLE ***OWNED BY*** OR AVAILABLE FOR THE REGULAR USE OF ***YOU*** OR ANY ***RESIDENT RELATIVE*** IF IT IS NOT ***YOUR CAR*** OR A ***NEWLY ACQUIRED CAR***.

This exclusion (1.a.) does not apply to the first ***person*** shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while ***occupying*** a motor vehicle not ***owned by*** one or both of them; OR

b. A MOTORCYCLE OR A MOTOR DRIVEN CYCLE;

2. FOR AN ***INSURED*** WHO SUSTAINS ***BODILY INJURY*** IN AN ACCIDENT INVOLVING AN ***UNDERINSURED MOTOR VEHICLE*** THAT IS:

a. INSURED UNDER LIABILITY COVERAGE OF THIS POLICY;

This exclusion (2.a.) does not apply to the first ***person*** shown as a named insured on the Declarations page, that named insured's spouse who resides primarily with that named insured, and ***resident relatives***; OR

b. FURNISHED FOR THE REGULAR USE OF ***YOU*** OR ANY ***RESIDENT RELATIVE***, AND THE ***INSURED*** IS NOT STRUCK AS A ***PEDESTRIAN*** BY THAT VEHICLE;

3. FOR AN ***INSURED*** WHOSE ***BODILY INJURY*** RESULTS FROM THE DISCHARGE OF A FIREARM;

4. TO THE EXTENT IT BENEFITS:

a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES;

5. FOR PUNITIVE OR EXEMPLARY DAMAGES; OR

6. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION.

**If Other Underinsured Motor Vehicle Bodily Injury Coverage Applies**

1. If Underinsured Motor Vehicle Bodily Injury Coverage provided by this policy and one or more other vehicle policies issued to ***you*** or any ***resident relative*** by one or more of the ***State Farm Companies*** apply to the same ***bodily injury***, then:

a. the Underinsured Motor Vehicle Bodily Injury Coverage limits of such policies will not be added together to determine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. ***We*** may choose one or more policies from which to make payment.

2. The Underinsured Motor Vehicle Bodily Injury Coverage provided by this policy applies as primary coverage for an ***insured*** who sustains ***bodily injury*** while ***occupying your car***.

a. If:

(1) this is the only vehicle policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** that provides Underinsured Motor Vehicle Bodily Injury Coverage which applies to the accident as primary coverage; and

(2) underinsured motor vehicle coverage provided by one or more sources other than the ***State Farm Companies*** also applies as primary coverage for the same accident,

then ***we*** will pay the proportion of damages payable as primary that ***our*** applicable limit bears to the sum of ***our*** applicable limit and the limits of all other underinsured motor vehicle coverage that apply as primary coverage.

b. If:

(1) more than one vehicle policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** provides Underinsured Motor Vehicle Bodily Injury Coverage which applies to the accident as primary coverage; and

(2) underinsured motor vehicle coverage provided by one or more sources other than the ***State Farm Companies*** also applies as primary coverage for the same accident,

then the ***State Farm Companies*** will pay the proportion of damages payable as primary that the maximum amount that may be paid by the ***State Farm Companies*** as determined in item 1. above bears to the sum of such amount and the limits of all other underinsured motor vehicle coverage that apply as primary coverage.

3. Except as provided in item 2. above, the Underinsured Motor Vehicle Bodily Injury Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only vehicle policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** that provides Underinsured Motor Vehicle Bodily Injury Coverage which applies to the accident as excess coverage; and





of the termination to the lessor ... tion who leases ***your car*** to ***you*** or

(2) underinsured motor vehicle coverage provided by one or more sources other than the ***State Farm Companies*** also applies as excess coverage for the same accident,

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other underinsured motor vehicle coverage that apply as excess coverage.

b. If:

(1) more than one vehicle policy issued to *you* or any ***resident relative*** by the ***State Farm Companies*** provides Underinsured Motor Vehicle Bodily Injury Coverage which applies to the accident as excess coverage; and

(2) underinsured motor vehicle coverage provided by one or more sources other than the ***State Farm Companies*** also applies as excess coverage for the same accident,

then the ***State Farm Companies*** will pay the proportion of damages payable as excess that the maximum amount that may be paid by the ***State Farm Companies*** as determined in item 1. above bears to the sum of such amount and the limits of all other underinsured motor vehicle coverage that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The ***insured***;
2. The ***insured's*** surviving spouse;
3. A parent or guardian of the ***insured***, if the ***insured*** is a minor or an incompetent ***person***; or
4. A ***person*** authorized by law to receive such payment.



## UNDERINSURED MOTOR VEHICLE PROPERTY DAMAGE COVERAGE

This policy provides Underinsured Motor Vehicle Property Damage Coverage if "U1" is shown under "Symbols" on the Declarations Page.

**Additional Definitions**

***Insured*** means:

1. ***you***;
2. ***resident relatives***;
3. any other ***person*** while ***occupying***:
   a. ***your car***, or
   b. a ***newly acquired car***.

   Such vehicle must be used within the scope of ***your*** consent. Such other ***person occupying*** a vehicle used to carry ***persons*** for a charge is not an ***insured***, and
4. any ***person*** entitled to recover compensatory damages as a result of ***property damage*** of an ***insured*** as defined in items 1., 2. or 3. above.

***Property Damage*** means physical damage to or destruction of:

1. ***your car*** or a ***newly acquired car***; or
2. property owned by an ***insured*** while that property is in the passenger compartment of ***your car*** or a ***newly acquired car***.

***Underinsured Motor Vehicle*** means a land motor vehicle:

1. the ownership, maintenance, and use of which is:
   a. not insured or bonded for property damage liability at the time of the accident; or
   b. insured or bonded for property damage liability at the time of the accident; but
      (1) the insuring company:
         (a) denies that its policy provides liability coverage for compensatory damages that result from the accident; or
         (b) is or becomes insolvent; or
      (2) the limits are less than the damages which the insured is legally entitled to recover; or
2. the owner or driver of which remains unknown and which causes ***property damage***. If there is no physical contact between that land motor vehicle and ***your car*** or a ***newly acquired car***, then the facts of the accident must be corroborated by competent evidence other than testimony of the ***insured*** or any other ***person*** who has a claim under this coverage or under Underinsured Motor Vehicle Bodily Injury Coverage.

***Underinsured Motor Vehicle*** does not include a land motor vehicle:

1. insured under Liability Coverage of this policy;
2. furnished for the regular use of ***you*** or any ***resident relative***;
3. ***owned by*** or rented to any government or any of its political subdivisions or agencies to the extent it is obligated to pay for the ***property damage***, unless such governmental entity is unable to satisfy a claim because of financial inability or insolvency; or
4. while located for use as a dwelling or other premises.

**Insuring Agreement**

*We* will pay compensatory damages for ***property damage*** an ***insured*** is legally entitled to recover from the owner or driver of an ***underinsured motor vehicle***. The ***property damage*** must be caused by an accident that involves the operation, maintenance, or use of an ***underinsured motor vehicle*** as a motor vehicle.

**Notice of Tentative Settlement**

1. The ***insured*** shall:
   a. notify ***us*** of any tentative settlement with the owner or driver of an ***underinsured motor vehicle***; and
   b. give ***us*** a reasonable period of time to make a substitute payment to the ***insured*** in an amount that equals that tentative settlement offer.
2. If a substitute payment is made by ***us***, then:
   a. such payment shall be considered a payment made by or on behalf of the owner or driver of the ***underinsured motor vehicle***; and
   b. any subsequent recovery from or on behalf of the owner or driver of the ***underinsured motor vehicle*** shall first be used to repay ***us*** the amount of the substitute payment.

   The decision to make a substitute payment can only be made by ***us***. A substitute payment to an ***insured*** does not reduce or increase the limits of coverage otherwise available to that ***insured*** under this coverage or any other coverage of ***your*** policy.
3. If ***we*** elect to not make a substitute payment within a reasonable period of time, then the acceptance of the tentative settlement by the ***insured*** shall not be considered to have prejudiced ***us*** with respect to ***our*** rights of subrogation or reimbursement as to the owner or driver of the ***underinsured motor vehicle***.

**Deciding Fault and Amount**

1. a. The ***insured*** and ***we*** must agree to the answers to the following two questions:
      (1) Is the ***insured*** legally entitled to recover compensatory damages from the owner or driver of the ***underinsured motor vehicle***?
      (2) If the answer to 1.a.(1) above is yes, then what is the amount of compensatory damages that the ***insured*** is legally entitled to recover from the owner or driver of the ***underinsured motor vehicle***?
   b. If there is no agreement on the answer to either question in 1.a. above, then the ***insured*** shall:
      (1) file a lawsuit, in a state or federal court that has jurisdiction, against:
         (a) ***us***; and



of the termination to the *lessor*

tion who leases *your car* to *you* or

(6) any other *person* or organization, including the owner or driver of the *underinsured motor vehicle* who may still be legally liable to the *insured* for the *insured's* damages;

(2) consent to a jury trial if requested by *us*;

(3) agree that *we* may contest the issues of liability and the amount of damages; and

(4) secure a judgment in that action. The judgment must be the final result of an actual trial and an appeal, if an appeal is taken.

2. *We* are not bound by any default judgment against any *person* or organization other than *us*.

3. Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

**Limit**

1. The Underinsured Motor Vehicle Property Damage Coverage limit is shown on the Declarations Page under "Underinsured Motor Vehicle Property Damage Coverage – Limit – Each Accident". The limit shown is the most *we* will pay for all damages for *property damage* resulting from any one accident.

Subject to the above, the most *we* will pay any one *insured* is the lesser of:

a. that *insured's* compensatory damages for *property damage* reduced by the lesser of:

(1) the sum of all payments for compensatory damages made by or on behalf of any *person* or organization who is or may be held legally liable for that *insured's property damage*; or

(2) the sum of all limits of all property damage liability bonds and insurance policies that apply to the *insured's property damage*; or

b. the limits of this coverage.

2. This Underinsured Motor Vehicle Property Damage Coverage limit is the most *we* will pay regardless of the number of:

a. *insureds*;

b. claims made;

c. vehicles insured; or

d. vehicles involved in the accident.

3. Any amount payable under Underinsured Motor Vehicle Property Damage Coverage will be reduced by any amount collected by the *insured* from other physical damage insurance or property insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. TO THE EXTENT THE *INSURED* HAS COLLECTED OR MAY COLLECT FROM ANY OF THE PHYSICAL DAMAGE COVERAGES OF THIS POLICY OR FROM ANY PROPERTY INSURANCE OF ANOTHER POLICY;

2. TO THE EXTENT IT BENEFITS ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES;

3. FOR THE FIRST:

a. THREE HUNDRED DOLLARS OF *PROPERTY DAMAGE* IF THE DAMAGES ARE CAUSED BY AN *UNDERINSURED MOTOR VEHICLE* THAT DID NOT STRIKE THE *INSURED* OR THE VEHICLE THE *INSURED* WAS *OCCUPYING*; OR

b. ONE HUNDRED DOLLARS OF *PROPERTY DAMAGE* IF THE DAMAGES ARE CAUSED BY ANY OTHER *UNDERINSURED MOTOR VEHICLE*;

4. FOR PUNITIVE OR EXEMPLARY DAMAGES; OR

5. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION.



**If Other Underinsured Motor Vehicle Property Damage Coverage Applies**

If this policy and one or more sources also provide underinsured motor vehicle property damage coverage, then *we* will pay the proportion of damages payable that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other underinsured motor vehicle property damage coverage that apply.

**Our Payment Options**

*We* may, at our option, make payment to one or more of the following:

1. The *insured*;
2. The *insured's* surviving spouse;
3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or
4. A *person* authorized by law to receive such payment.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";
2. Collision Coverage if "G";
3. Emergency Road Service Coverage if "H";
4. Car Rental and Travel Expenses Coverage if "R1",

is shown under "Symbols" on the Declarations Page. If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

***Covered Vehicle*** means:

1. *your car*;
2. a *newly acquired car*;
3. a *temporary substitute car*;
4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;
5. a *non-owned car* while it is:
   a. being driven by an *insured*; or
   b. in the custody of an *insured* if at the time of the *loss* it is:
      (1) not being driven; or
      (2) being driven by a *person* other than an *insured* and being *occupied* by an *insured*; and
6. a *non-owned trailer* and a *non-owned camper* while it is being used by an *insured*;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and campers must be securely fixed as a permanent part of the *trailer* or camper.

***Daily rental charge*** means the sum of:

1. the daily rental rate;
2. mileage charges; and
3. related taxes.

***Insured*** means *you* and *resident relatives*.

***Loss*** means:

1. direct, sudden, and accidental damage to; or
2. total or partial theft of

a *covered vehicle*. *Loss* does not include any reduction in the value of any *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

***Loss Caused By Collision*** means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or other object; or
2. the overturning of a *covered vehicle*.



tion who leases *your car* to *you* or

of the termination to the *lessor*

Any ***loss*** caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a ***Loss Caused By Collision***.

***Non-Owned Camper*** means a camper designed to be mounted on a pickup truck that is in the lawful possession of an ***insured*** and that neither:

1. is ***owned by***:
   a. an ***insured***;
   b. any other ***person*** residing in the same household as an ***insured***; or
   c. an employer of any ***person*** described in a. or b. above; nor
2. has been used by, rented by, or in the possession of an ***insured*** during any part of each of the 31 or more consecutive days immediately prior to the date of the ***loss***.

***Non-Owned Trailer*** means a ***trailer*** that is in the lawful possession of an ***insured*** and that neither:

1. is ***owned by***:
   a. an ***insured***;
   b. any other ***person*** residing in the same household as an ***insured***; or
   c. an employer of any ***person*** described in a. or b. above; nor
2. has been used by, rented by, or in the possession of an ***insured*** during any part of each of the 31 or more consecutive days immediately prior to the date of the ***loss***.

**Insuring Agreements**

1. **Comprehensive Coverage**
   a. ***We*** will pay for ***loss***, except ***loss caused by collision***, to a ***covered vehicle***.
   b. If ***your car*** or a ***newly acquired car*** is stolen, then ***we*** will pay transportation expenses incurred by an ***insured***. These transportation expenses must be incurred during a period that:
      (1) starts on the date ***you*** report the theft to ***us***; and
      (2) ends on the earlier of:
         (a) the date the vehicle is recovered; or
         (b) the date ***we*** offer to pay ***you*** for the theft if the vehicle has not yet been recovered.

      These transportation expenses must be reported to ***us*** before ***we*** will pay such incurred expenses.
2. **Collision Coverage**

   ***We*** will pay for ***loss caused by collision*** to a ***covered vehicle***.
3. **Emergency Road Service Coverage**

   ***We*** will pay the fair cost incurred by an ***insured*** for:
   a. up to one hour of labor to repair a ***covered vehicle*** at the place of its breakdown;
   b. towing to the nearest repair facility where necessary repairs can be made if a ***covered vehicle*** is not drivable;
   c. towing a ***covered vehicle*** out of a location where it is stuck if the vehicle is on or immediately next to a public road;
   d. delivery of gas, oil, battery, or tire necessary to return a ***covered vehicle*** to driving condition. ***We*** do not pay the cost of the gas, oil, battery, or tire; and
   e. up to one hour of labor for locksmith services to unlock a ***covered vehicle*** if its key is lost, stolen, or locked inside the vehicle.
4. **Car Rental and Travel Expenses Coverage**
   a. **Car Rental Expense**

      ***We*** will pay the ***daily rental charge*** incurred when ***you*** rent a ***car*** from a ***car business*** while ***your car*** or a ***newly acquired car*** is:
      (1) not drivable; or
      (2) being repaired

      as a result of a ***loss*** which would be payable under Comprehensive Coverage or Collision Coverage.



***We*** will pay the ***daily rental charge*** incurred during a period that:
      (1) starts on the date:
         (a) the vehicle is not drivable as a result of the ***loss***; or
         (b) the vehicle is left at a repair facility if the vehicle is drivable; and
      (2) ends on the earliest of:
         (a) the date the vehicle has been repaired or replaced;
         (b) the date ***we*** offer to pay ***you*** for the ***loss*** if the vehicle is repairable but ***you*** choose to delay repairs; or
         (c) five days after ***we*** offer to pay ***you*** for the ***loss*** if the vehicle is:
            (i) a total loss as determined by ***us***; or
            (ii) stolen and not recovered.

      The amount of any such ***daily rental charge*** incurred by ***you*** must be reported to ***us*** before ***we*** will pay such amount.
   b. **Travel Expenses**

      ***We*** will pay expenses for commercial transportation, lodging, and meals if ***your car*** or a ***newly acquired car*** is not drivable as a result of a ***loss*** which would be payable under Comprehensive Coverage or Collision Coverage. The ***loss*** must occur more than 50 miles from ***your*** home. ***We*** will only pay these expenses if they are incurred by:
      (1) an ***insured*** during the period that:
         (a) starts after the ***loss*** occurs; and
         (b) ends on the earlier of:
            (i) the ***insured's*** arrival at his or her destination or home if the vehicle is left behind for repairs; or
            (ii) the repair of the vehicle if the ***insured*** waits for repairs before continuing on to his or her destination or returning home; and
      (2) ***you***, or any ***person you*** choose, to travel to retrieve the vehicle and drive it to either the original destination or ***your*** home if the vehicle was left behind for repairs.

      These expenses must be reported to ***us*** before ***we*** will pay such incurred expenses.
   c. **Rental Car – Repayment of Deductible Expense**

      ***We*** will pay the comprehensive deductible or collision deductible an ***insured*** is required to pay the owner of a ***car*** rented from a ***car business***.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If Symbol "D" is shown on the Declarations Page and the ***covered vehicle*** sustains ***loss*** for which ***we*** make a payment under Comprehensive Coverage, or if Symbol "G" is shown on the Declarations Page and the ***covered vehicle*** sustains ***loss*** for which ***we*** make a payment under Collision Coverage, then ***we*** will pay reasonable expenses incurred to:

1. tow the ***covered vehicle*** immediately after the ***loss***:
   a. for a reasonable distance from the location of the ***loss*** to any one repair facility chosen by an ***insured*** or the owner of the ***covered vehicle***, if the ***covered vehicle*** is not drivable; or
   b. to any one repair facility or commercial storage facility, neither of which was chosen by an ***insured*** or the owner of the ***covered vehicle***. ***We*** will also pay reasonable expenses incurred to tow the ***covered vehicle*** for a reasonable distance from this facility to any one repair facility chosen by an ***insured*** or the owner of the ***covered vehicle***, if the ***covered vehicle*** is not drivable.



***Lessor*** means the ***person*** ... ***your car*** to ***you*** or

2. store the ***covered vehicle***, if it is not drivable immediately after the ***loss***, at:
   a. any one repair facility or commercial storage facility, neither of which was chosen by an ***insured*** or the owner of the ***covered vehicle***; and
   b. any one repair facility chosen by the owner of the ***covered vehicle***, and ***we*** determine such vehicle is a total loss.

   If the owner of the ***covered vehicle*** consents, then ***we*** may move the ***covered vehicle*** at ***our*** expense to reduce storage costs. If the owner of the ***covered vehicle*** does not consent, then ***we*** will pay only the storage costs that would have resulted if ***we*** had moved the damaged ***covered vehicle***; and
3. clean up debris from the ***covered vehicle*** at the location of the ***loss***. The most ***we*** will pay to clean up the debris is $250 for any one ***loss***.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. ***We*** have the right to choose to settle with ***you*** or the owner of the ***covered vehicle*** in one of the following ways:
   a. Pay the cost to repair the ***covered vehicle*** minus any applicable deductible.
      (1) ***We*** have the right to choose one of the following to determine the cost to repair the ***covered vehicle***:
         (a) The cost agreed to by both the owner of the ***covered vehicle*** and ***us***;
         (b) A bid or repair estimate approved by ***us***; or
         (c) A repair estimate that is written based upon or adjusted to:
            (i) the prevailing competitive price;
            (ii) the lower of paintless dent repair pricing established by an agreement ***we*** have with a third party or the paintless dent repair price that is competitive in the market; or
            (iii) a combination of items (i) and (ii) above.

      The prevailing competitive price means prices charged by a majority of the repair market in the area where the ***covered vehicle*** is to be repaired as determined by a survey made by ***us***. If asked, ***we*** will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the ***covered vehicle*** to its pre-loss condition.

      ***You*** agree with ***us*** that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

      ***You*** also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.
      (2) The cost to repair the ***covered vehicle*** does not include any reduction in the value of the ***covered vehicle*** after it has been repaired, as compared to its value before it was damaged.
      (3) If the repair or replacement of parts normally subject to repair and replacement during the useful life of the ***covered vehicle*** results in the vehicle being better than its pre-loss condition, then ***you*** must pay for the amount of the betterment.

      Betterment shall be limited to the lesser of:
         (a) an amount equal to the proportion that the expired life of the part to be repaired or replaced bears to the normal useful life of that part, or
         (b) the amount which the resale value of the vehicle is increased by the repair or replacement.
      (4) If ***you*** and ***we*** agree, windshield glass will be repaired instead of replaced.
   b. Pay the actual cash value of the ***covered vehicle*** minus any applicable deductible.
      (1) The owner of the ***covered vehicle*** and ***we*** must agree upon the actual cash value of the ***covered vehicle***. If there is disagreement as to the actual cash value of the ***covered vehicle***, then the disagreement will be resolved by appraisal upon written request of the owner or ***us***, using the following procedures:
         (a) The owner and ***we*** will each select a competent appraiser.
         (b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or ***we*** may petition a court that has jurisdiction to select the third appraiser.
         (c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.
         (d) The appraisers shall only determine the actual cash value of the ***covered vehicle***. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.
         (e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the ***covered vehicle*** and ***us***.
         (f) Neither ***we*** nor the owner of the ***covered vehicle*** waive any rights by submitting to an appraisal.
      (2) The damaged ***covered vehicle*** must be given to ***us*** in exchange for ***our*** payment, unless ***we*** agree that the owner may keep it. If the owner keeps the ***covered vehicle***, then ***our*** payment will be reduced by the value of the ***covered vehicle*** after the ***loss***.
   c. Return the stolen ***covered vehicle*** to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.
2. The most ***we*** will pay for any:
   a. damage to any vehicle due to; and
   b. testing or remediation of

   ***fungi*** that is proximately caused by a ***loss*** that is payable under Comprehensive Coverage or Collision Coverage is $500.
3. The most ***we*** will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per ***loss***.
4. The most ***we*** will pay for ***loss*** to a ***non-owned trailer*** or a ***non-owned camper*** is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

1. **Car Rental Expense**

   The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".
   a. The limit shown under "Each Day" is the most ***we*** will pay for the ***daily rental charge***. If:





of the termination to the ***lessor***

***Lessor*** means ... who leases ***your car*** to ***you*** or

(1) a dollar amount is shown, then ***we*** will pay the ***daily rental charge*** up to that dollar amount;

(2) a percentage amount is shown, then ***we*** will pay that percentage of the ***daily rental charge***.

b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most ***we*** will pay for Car Rental Expense incurred as a result of any one ***loss***.

2. **Travel Expenses**

The most ***we*** will pay for Travel Expenses incurred by all ***insureds*** as a result of any one ***loss*** is $500.

3. **Rental Car – Repayment of Deductible Expense**

The most ***we*** will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one ***loss*** is $500.

**Nonduplication**

***We*** will not pay for any ***loss*** or expense under the Physical Damage Coverages for which the ***insured*** or owner of the ***covered vehicle*** has already received payment from, or on behalf of, a party who is legally liable for the ***loss*** or expense.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ANY ***COVERED VEHICLE*** THAT IS:
   a. INTENTIONALLY DAMAGED; OR
   b. STOLEN

   BY OR AT THE DIRECTION OF AN ***INSURED***;
2. ANY ***COVERED VEHICLE*** WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN ***INSURED***;
3. ANY ***COVERED VEHICLE*** WHILE IT IS USED TO CARRY ***PERSONS*** FOR A CHARGE. This exclusion does not apply to the use of a ***private passenger car*** on a share-the-expense basis;
4. ANY ***COVERED VEHICLE*** DUE TO:
   a. THEFT;
   b. CONVERSION;
   c. EMBEZZLEMENT; OR
   d. SECRETION

   BY AN ***INSURED***, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A ***PERSON*** WHO OBTAINS POSSESSION OF THE ***COVERED VEHICLE*** WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;
5. ***LOSS*** TO ***YOUR CAR*** OR A ***NEWLY ACQUIRED CAR*** IF AN ***INSURED*** VOLUNTARILY RELINQUISHES POSSESSION OF THAT ***CAR*** TO A ***PERSON*** OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;
6. ANY ***COVERED VEHICLE*** TO THE EXTENT ***OUR*** PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR ***LOSS*** TO SUCH ***COVERED VEHICLE***;
7. ***LOSS*** TO ANY ***COVERED VEHICLE*** DUE TO ***FUNGI***. ***WE*** WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF ***FUNGI***, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY ***COVERED VEHICLE*** THAT ARE DUE TO THE EXISTENCE OF ***FUNGI***. This exclusion does not apply if the ***fungi*** is proximately caused by a ***loss*** that is payable under:
   a. Comprehensive Coverage and "D" is shown under "Symbols" on the Declarations Page; or
   b. Collision Coverage and "G" is shown under "Symbols" on the Declarations Page;
8. ***LOSS*** TO ANY ***COVERED VEHICLE*** THAT RESULTS FROM:
   a. NUCLEAR REACTION;
   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR
   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;
9. ***LOSS*** TO ANY ***COVERED VEHICLE*** THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT ***COVERED VEHICLE*** BY ANY GOVERNMENTAL AUTHORITY;
10. ***LOSS*** TO ANY ***COVERED VEHICLE*** THAT RESULTS FROM WAR OF ANY KIND;
11. ***YOUR CAR*** WHILE SUBJECT TO ANY:
    a. LIEN AGREEMENT;
    b. RENTAL AGREEMENT;
    c. LEASE AGREEMENT; OR
    d. SALES AGREEMENT

    NOT SHOWN ON THE DECLARATIONS PAGE;
12. ANY ***NON-OWNED CAR*** WHILE IT IS:
    a. BEING MAINTAINED OR USED BY ANY ***PERSON*** WHILE THAT ***PERSON*** IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A ***CAR BUSINESS***; OR
    b. USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A ***CAR BUSINESS***. This exclusion (12.b.) does not apply to a ***private passenger car***;
13. ANY PART OR EQUIPMENT OF A ***COVERED VEHICLE*** IF THAT PART OR EQUIPMENT:
    a. FAILS OR IS DEFECTIVE; OR
    b. IS DAMAGED AS A DIRECT RESULT OF:
       (1) WEAR AND TEAR;
       (2) FREEZING; OR
       (3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

    OF THAT PART OR EQUIPMENT.

    This exclusion does not apply if the ***loss*** is the result of theft of the ***covered vehicle***;
14. ANY PART OR EQUIPMENT:
    a. THAT IS NOT LEGAL FOR USE IN OR ON THE ***COVERED VEHICLE*** IN THE STATE WHERE THE ***COVERED VEHICLE*** IS REGISTERED; OR
    b. THE USE OF WHICH IS NOT LEGAL IN THE STATE WHERE THE ***COVERED VEHICLE*** IS REGISTERED, BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE ***COVERED VEHICLE***.

    However, if there is a legal version of the part or equipment that is necessary for the safe operation of the ***covered vehicle***, then ***we*** will pay the cost that ***we*** would otherwise have paid to repair the vehicle with the legal version of the part or equipment. ***We*** will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;
15. TIRES. This exclusion does not apply if:
    a. ***loss*** is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or
    b. ***loss caused by collision*** to another part of the ***covered vehicle*** causes ***loss*** to tires;
16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;
17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;





***Lessor*** means the ***person*** or ... leases ***your car*** to ***you*** or

of the termination ...

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:
    a. DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;
    b. ***OWNED BY AN INSURED***; AND
    c. NOT SHOWN ON THE DECLARATIONS PAGE; OR
19. ANY ***COVERED VEHICLE*** WHILE IT IS:
    a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR
    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING.

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same ***loss*** or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that ***loss*** or expense applies.
2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an ***insured*** by one or more of the ***State Farm Companies*** apply to the same ***loss*** or expense, then only one policy applies. ***We*** will select a policy that pays the most for the ***loss*** or expense.
3. The physical damage coverages provided by this policy apply as primary coverage for a ***loss*** to ***your car***.

   If similar coverage provided by one or more sources other than the ***State Farm Companies*** also applies as primary coverage for the same ***loss*** or expense, then the ***State Farm Companies*** will pay the proportion of the ***loss*** or expense payable as primary that the maximum amount that may be paid by the ***State Farm Companies*** bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.
4. Except as provided in item 3. above, the physical damage coverages provided by this policy apply as excess coverage.

   If similar coverage provided by one or more sources other than the ***State Farm Companies*** also applies as excess coverage for the same loss or expense, then the ***State Farm Companies*** will pay the proportion of the loss or expense payable as excess that the maximum amount that may be paid by the ***State Farm Companies*** bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in ***your car***. Coverage for the creditor's interest will not be provided for the conversion, embezzlement, or secretion of ***your car*** by ***you*** or any of ***your*** agents, employees, or representatives.

   If this policy is cancelled or nonrenewed, then ***we*** will provide the coverage described above for the creditor's interest until ***we*** notify the creditor of the termination of such coverage. The date such termination is effective will be at least 10 days after the date ***we*** mail or electronically transmit a notice of the termination to the creditor. The mailing or electronic transmittal of the notice will be sufficient proof of notice.
2. If ***we*** pay such creditor, then ***we*** are entitled to the creditor's right of recovery against ***you*** to the extent of ***our*** payment. ***Our*** right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1. **Comprehensive Coverage and Collision Coverage**
   a. ***We*** may, at ***our*** option, make payment to one or more of the following for ***loss*** to a ***covered vehicle owned by you***:
      (1) ***You***;
      (2) The repairer; or
      (3) A creditor shown on the Declarations Page, to the extent of its interest.
   b. ***We*** may, at ***our*** option, make payment to one or more of the following for ***loss*** to a ***covered vehicle*** not ***owned by you***:
      (1) ***You***;
      (2) The owner of such vehicle;
      (3) The repairer; or
      (4) A creditor, to the extent of its interest.
2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

   ***We*** may, at ***our*** option, make payment to one or more of the following:
   a. ***You***;
   b. The ***insured*** who incurred the expense; or
   c. Any party that provided the service for which payment is owed.



## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "Symbols" on the Declarations Page.

**Additional Definitions**

***Insured*** means a ***person*** whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

***Pedestrian*** means a ***person*** who is not ***occupying***:
1. a motorized vehicle; or
2. a vehicle designed to be pulled by a motorized vehicle.

**Insuring Agreement**

***We*** will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an ***insured***:
1. dies; or
2. suffers dismemberment or permanent loss of sight, as described in the schedule

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The ***insured*** must be ***occupying*** or be struck as a ***pedestrian*** by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 90 days after the date of the accident.

**Benefit**

The applicable benefit shown in the schedule is the most ***we*** will pay for any one ***insured*** in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

**DEATH, DISMEMBERMENT AND LOSS OF SIGHT BENEFITS SCHEDULES**

If the amount shown on the Declarations Page for the ***insured*** is $5,000, ***we*** will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand & one foot; or one hand or one foot & all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |
| Loss of the thumb & a finger on one hand; or any three fingers | $1,500 |
| Loss of any two fingers | $1,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.



***Lessor*** means the ***person*** or ... tion who leases ***your car*** to ***you*** or

of the termination to the ***lessor***

If the amount shown on the Declarations Page for the ***insured*** is $10,000, ***we*** will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand & one foot; or one hand or one foot & all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb & a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

The benefits shown in the schedules are doubled for an ***insured*** who, at the time of the accident was ***occupying*** a ***private passenger car*** and using a seat belt in the manner recommended by the vehicle's manufacturer.

**Exclusions**

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE DOES NOT APPLY TO AN ***INSURED***:

1. WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A ***CAR BUSINESS***;
2. WHILE ***OCCUPYING***, LOADING, OR UNLOADING:
   a. AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;
   b. A VEHICLE, OTHER THAN AN EMERGENCY VEHICLE, WHILE USED IN THE:
      (1) ***INSURED'S*** BUSINESS; OR
      (2) COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A ***CAR BUSINESS***.

   This exclusion (2.b.) does not apply if the vehicle is a ***private passenger car***;

   c. A MILITARY VEHICLE; OR
   d. A VEHICLE WHILE IT IS:
      (1) BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR
      (2) ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING;
3. WHILE ***OCCUPYING***, LOADING, UNLOADING, OR WHO IS STRUCK AS A ***PEDESTRIAN*** BY:
   a. A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;
   b. A MOTOR VEHICLE THAT IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR
   c. A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES; OR
4. FOR DEATH, DISMEMBERMENT, OR LOSS OF SIGHT THAT RESULTS FROM:
   a. WAR OF ANY KIND;
   b. NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;
   c. THE DISCHARGE OF A FIREARM;
   d. EXPOSURE TO ***FUNGI***;
   e. SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE ***INSURED*** WAS SANE OR INSANE; OR
   f. DISEASE except pus-forming infection due to ***bodily injury*** sustained in the accident.



**Our Payment Options**

***We*** may, at ***our*** option, make payment to one or more of the following:

1. The ***insured***;
2. The ***insured's*** surviving spouse;
3. A parent or guardian of the ***insured***, if the ***insured*** is a minor or an incompetent ***person***; or
4. A ***person*** or organization authorized by law to receive such payment.

## INSURED'S DUTIES

1. **Notice to Us of an Accident or Loss**

   The ***insured*** must give ***us*** or one of ***our*** agents notice of the accident or ***loss*** as soon as reasonably possible. The notice must give ***us***:

   a. ***your*** name;
   b. the names and addresses of all ***persons*** involved in the accident or ***loss***;
   c. the hour, date, place, and facts of the accident or ***loss***; and
   d. the names and addresses of witnesses to the accident or ***loss***.
2. **Notice to Us of Claim or Suit**
   a. If a claim is made against an ***insured***, then that ***insured*** must immediately send ***us*** every demand, notice, and claim received.
   b. If a lawsuit is filed against an ***insured***, then that ***insured*** must immediately send ***us*** every summons and legal process received.
3. **Insured's Duty to Cooperate With Us**
   a. The ***insured*** must cooperate with ***us*** and, when asked, assist ***us*** in:
      (1) making settlements;
      (2) securing and giving evidence; and
      (3) attending, and getting witnesses to attend, depositions, hearings, and trials.
   b. The ***insured*** must not, except at his or her own cost, voluntarily:
      (1) make any payment to others; or
      (2) assume any obligation to others

   unless authorized by the terms of this policy.
   c. Any ***person*** or organization making claim under this policy must, when ***we*** require, give ***us*** proof of loss on forms ***we*** furnish.
4. **Questioning Under Oath**

   Under:

   a. Liability Coverage, each ***insured***;
   b. Personal Injury Protection Coverage, Medical Payments Coverage, Underinsured Motor Vehicle Coverages, or Death, Dismemberment and Loss of Sight Coverage, each ***insured***, or any other ***person*** or organization making claim or seeking payment; and
   c. Physical Damage Coverages, each ***insured*** or owner of a ***covered vehicle***, or any other ***person*** or organization making claim or seeking payment;

   must, at ***our*** option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as ***we*** require. Such ***person*** or organization must answer questions under oath, asked by anyone ***we*** name, and sign copies of the answers. ***We*** may require each ***person*** or organization answering questions under oath to answer the questions with only that ***person's*** or organization's legal representative, ***our*** representatives, any ***person*** or ***persons*** designated by ***us*** to record the questions and answers, and no other ***person*** present.



of the termination to the ***lessor***

***Lessor*** means the ***person*** or organization who leases ***your car*** to ***you*** or

**5. Other Duties Under the Physical Damage Coverages**

When there is a ***loss***, ***you*** or the owner of the ***covered vehicle*** must:

a. protect the ***covered vehicle*** from additional damage. ***We*** will pay any reasonable expense incurred to do so;

b. make a prompt report to the police when the ***loss*** is the result of theft;

c. allow ***us*** to:

(1) inspect any damaged property before its repair or disposal;

(2) test any part or equipment before that part or equipment is removed or repaired; and

(3) move the ***covered vehicle*** at ***our*** expense in order to conduct such inspection or testing;

d. provide ***us*** all:

(1) records;

(2) receipts; and

(3) invoices

that ***we*** request and allow ***us*** to make copies; and

e. not abandon the ***covered vehicle*** to ***us***.

**6. Other Duties Under Personal Injury Protection Coverage, Medical Payments Coverage, Underinsured Motor Vehicle Coverages, and Death, Dismemberment and Loss of Sight Coverage**

A ***person*** making claim under:

a. Personal Injury Protection Coverage, Medical Payments Coverage, Underinsured Motor Vehicle Coverages, or Death, Dismemberment and Loss of Sight Coverage must:

(1) notify ***us*** of the claim and give ***us*** all the details about the death, injury, treatment, and other information that ***we*** may need as soon as reasonably possible after the injured ***insured*** is first examined or treated for the injury. If the ***insured*** is unable to give ***us*** notice, then any other ***person*** may give ***us*** the required notice;

(2) be examined as reasonably often as ***we*** may require by physicians chosen and paid by ***us***. A copy of the report will be sent to the ***person*** upon written request;

(3) provide written authorization for ***us*** to obtain:

(a) medical bills;

(b) medical records;

(c) wage, salary, and employment information; and

(d) any other information ***we*** deem necessary to substantiate the claim.

If an injured ***insured*** is a minor, unable to act, or dead, then his or her legal representative must provide ***us*** with the written authorization.

If the holder of the information refuses to provide it to ***us*** despite the authorization, then at ***our*** request the ***person*** making claim or his or her legal representative must obtain the information and promptly provide it to ***us***; and

(4) allow ***us*** to inspect the vehicle that the ***insured occupied*** in the accident;

b. Underinsured Motor Vehicle Coverages must:

(1) report an accident, involving a motor vehicle whose owner and driver remain unknown, to the police within 72 hours and to ***us*** within 30 days; and

(2) report an incident where the ***insured*** was the intended victim of a tortfeasor to the appropriate law enforcement agency and cooperate with any related law enforcement investigation;



c. Underinsured Motor Vehicle Property Damage Coverage must:

(1) protect the damaged property from additional damage. ***We*** will pay any reasonable expense incurred to do so;

(2) allow ***us*** to:

(a) inspect any damaged property before its repair or disposal;

(b) test any part or equipment before that part or equipment is removed or repaired; and

(c) move the damaged property at ***our*** expense in order to conduct such inspection or testing;

(3) provide ***us*** all:

(a) records;

(b) receipts; and

(c) invoices

that ***we*** request and allow ***us*** to make copies; and

(4) not abandon the damaged property to ***us***; and

d. Personal Injury Protection Coverage and Underinsured Motor Vehicle Coverages must send ***us*** immediately a copy of all lawsuit papers if the ***insured*** files a lawsuit against the party liable for the accident.

## GENERAL TERMS

**1. When Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and ***losses*** that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

**2. Where Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and ***losses*** that occur:

a. in the United States of America and its territories and possessions;

b. in Canada; and

c. while a vehicle for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

**3. Newly Owned or Newly Leased Car**

If ***you*** want to insure a ***car*** newly ***owned by you*** with the ***State Farm Companies*** after that ***car*** ceases to be a ***newly acquired car***, then ***you*** must either:

a. request ***we*** replace the ***car*** currently shown on the Declarations Page of this policy with the ***car*** newly ***owned by you*** and pay ***us*** any added amount due. If ***you*** make such request while this policy is in force and:

(1) before the ***car*** newly ***owned by you*** ceases to be a ***newly acquired car***, then that ***car*** newly ***owned by you*** will be insured by this policy as ***your car*** beginning on the date the ***car*** newly ***owned by you*** is delivered to ***you***. The added amount due will be calculated based on that date; or

(2) after the ***car*** newly ***owned by you*** ceases to be a ***newly acquired car***, then that ***car*** newly ***owned by you*** will be insured by this policy as ***your car*** beginning on the date and time ***you*** make the request. The added amount due will be calculated based on that date; or

b. apply to the ***State Farm Companies*** for a separate policy to insure the ***car*** newly ***owned by you***. Such policy will



***Lessor*** means the ***person*** or organization who leases ***your car*** to ***you*** or

electronically transmit a notice of the termination to the ***lessor***

be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

**4. Changes to This Policy**

**a. Changes in Policy Provisions**

***We*** may only change the provisions of this policy by:

(1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

(2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then ***we*** will give ***you*** the broader coverage as of the date ***we*** make the change effective in the state of Washington without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

**b. Change of Interest**

(1) No change of interest in this policy is effective unless ***we*** consent in writing.

(2) Except under Death, Dismemberment and Loss of Sight Coverage, if a named insured dies, then the definition of ***insured*** under each of the coverages provided by this policy is changed to include:

(a) any ***person*** with lawful custody of ***your car***, a ***newly acquired car***, or a ***temporary substitute car*** until a legal representative is qualified; and then

(b) the legal representative of the deceased named insured.

This only applies while such ***person*** is maintaining or using ***your car***, a ***newly acquired car***, or a ***temporary substitute car***.

Policy notice requirements are met by mailing the notice to the deceased named insured's last known address.

**c. Joint and Individual Interests**

When there are two or more named insureds each acts for all to change or cancel the policy.

**5. Premium**

a. If any premium transaction results in a charge or credit of less than 50 cents, ***we*** will not bill ***you*** or make a refund.

b. Unless as otherwise provided by an alternative payment plan in effect with the ***State Farm Companies*** with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

c. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

d. The premium for this policy may vary based upon the purchase of other insurance from the ***State Farm Companies***.

e. The premium for this policy is based upon information ***we*** have received from ***you*** or other sources. ***You*** must inform ***us*** if any information regarding the following is incorrect or incomplete, or changes during the policy period, and ***you*** must answer questions ***we*** ask regarding the following:

(1) ***Your car***, or its use, including annual mileage;

(2) The ***persons*** who regularly drive ***your car***, including newly licensed family members;

(3) ***Your*** marital status; or

(4) The location where ***your car*** is primarily garaged.



If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to ***us*** when ***we*** ask, ***we*** may decrease or increase the premium during the policy period. If ***we*** decrease the premium during the policy period, then ***we*** will provide a refund or a credit in the amount of the decrease. If ***we*** increase the premium during the policy period, then ***you*** must pay the amount of the increase.

**6. Renewal**

***We*** agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless ***we*** mail or deliver a written nonrenewal notice or a written cancellation notice as set forth in items 7. and 8. below.

**7. Nonrenewal**

If ***we*** decide not to renew this policy, then, at least 30 days before the end of the current policy period, ***we*** will mail or deliver a nonrenewal notice which will include the actual reason for ***our*** refusal to renew to the most recent address provided to ***us*** by ***you*** as the policy address. The mailing of the notice will be sufficient proof of notice.

**8. Cancellation**

**a. How You May Cancel**

***You*** may cancel this policy by providing notice to ***us*** prior to or on the date such cancellation is effective. ***We*** may confirm the cancellation in writing.

**b. How and When We May Cancel**

(1) ***We*** may cancel this policy by mailing or delivering a written notice to the most recent address provided to ***us*** by ***you*** as the policy address. The notice will provide both the reason for the cancellation and the date cancellation is effective.

(2) The mailing of the notice will be sufficient proof of notice.

(3) If the reason for cancellation is because the premium was not paid when due, then the date cancellation is effective will be at least 10 days after the date ***we*** mail or deliver the cancellation notice. Otherwise, the date cancellation is effective will be at least 20 days after the date ***we*** mail or deliver the cancellation notice.

(4) After this policy has been in force for more than 60 days, ***we*** will not cancel this policy before the end of the current policy period unless:

(a) the premium is not paid when due; or

(b) ***you***, any ***resident relative***, or any other ***person*** who usually drives ***your car*** has had his or her driver's license under suspension or revocation during the 180 days immediately before the effective date of the policy or during the policy period.

**c. Return of Unearned Premium**

If this policy is cancelled, then premium will be earned on a pro rata basis. Any unearned premium may be returned at the time ***we*** cancel or within 30 days. Delay in the return of any unearned premium does not affect the cancellation date.

**9. Assignment**

No assignment of benefits or other transfer of rights is binding upon ***us*** unless approved by ***us***.

**10. Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the ***insured*** or his or her estate will not relieve ***us*** of ***our*** obligations under this policy.

**11. Concealment or Fraud**

There is no coverage under this policy if ***you*** or any other ***person*** insured under this policy has made false statements with the



electronically transmit a notice of the termination to the ***lessor***

***Lessor*** means the ***person*** or organiza-

intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

**12. Our Right to Recover Our Payments**

a. Death, Dismemberment and Loss of Sight Coverage

*Our* payments are not recoverable by *us*.

b. Personal Injury Protection Coverage, Medical Payments Coverage, and Underinsured Motor Vehicle Bodily Injury Coverage

(1) If *we* are obligated under this policy to make payment to or for a *person* who has a legal right to collect from another party, then *we* will be subrogated to that right to the extent of *our* payment.

(2) If *we* make payment under this policy and the *person* to or for whom *we* make payment recovers or has recovered from another party, then that *person* must:

(a) hold in trust for *us* the proceeds of any recovery; and

(b) reimburse *us* to the extent of *our* payment.

(3) The *person* to or for whom *we* make payment must help *us* recover *our* payments by:

(a) keeping *our* right to recover *our* payment in trust for *us* and doing nothing to impair that legal right;

(b) executing any documents *we* may need to assert that legal right; and

(c) taking legal action through *our* representatives when *we* ask.

c. Underinsured Motor Vehicle Property Damage Coverage and Physical Damage Coverages

If *we* are obligated under this policy to make payment to or for a party who has a legal right to collect from another, then the right of recovery of such party passes to *us*. Such party must help *us* recover *our* payments by:

(1) keeping *our* right to recover *our* payment in trust for *us* and doing nothing to impair that legal right;

(2) executing any documents *we* may need to assert that legal right; and

(3) taking legal action through *our* representatives when *we* ask.

*Our* right to recover *our* payments applies only after the *insured* has been fully compensated for the *bodily injury*, *property damage*, or *loss*.

**13. Legal Action Against Us**

Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy. In addition, legal action may only be brought against *us* regarding:

a. Liability Coverage after the amount of damages an *insured* is legally liable to pay has been finally determined by:

(1) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(2) agreement between the claimant and *us*.

b. Personal Injury Protection Coverage 30 days or more after we get the *insured's* notice of accident.

c. Medical Payments Coverage if the legal action relating to this coverage is brought against *us* within four years immediately following the date of the accident.

d. Underinsured Motor Vehicle Coverage if the legal action is brought within one year from the time the cause of action accrues against *us*. This one year limitation does not apply to legal actions brought pursuant to the Deciding Fault and Amount provision of the Underinsured Motor Vehicle Coverage.

e. Physical Damage Coverages if the legal action relating to these coverages is brought against *us* within one year immediately following the date of the accident or *loss*.

**14. Choice of Law**

Without regard to choice of law rules, the law of the State of:

a. Washington will control, except as provided in item b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b. Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

(1) Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

(2) Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

**15. Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a. such provision will remain in full force to the extent not held invalid or unenforceable; and

b. all other provisions of this policy will remain valid and enforceable.

**4. INSURED'S DUTIES**

The following is added:

**Lessor – Additional Insured**

The ***lessor*** must:

a. report to ***us***, any damage for which payment is sought, within 10 days immediately following the date ***your car*** has been returned to either the ***lessor*** or the ***lessor's*** agent as a result of lease expiration, voluntary surrender, or repossession; and

b. allow ***us*** to inspect the damage prior to repair, sale, or any other disposition of ***your car***.

**5. GENERAL TERMS**

a. The following is added to **Change of Interest:**

This policy will not be changed as to the interest of the ***lessor*** without at least 10 days written notice or electronic notice to such ***lessor***.

b. **Cancellation**

The following is added to **How and When We May Cancel:**

However, notification to the ***lessor*** does not apply once ***your car*** is returned to either the ***lessor*** or the ***lessor's*** agent as a result of lease expiration, voluntary surrender, or repossession.

**6. LIABILITY COVERAGE, PERSONAL INJURY PROTECTION COVERAGE, MEDICAL PAYMENTS COVERAGE, UNDERINSURED MOTOR VEHICLE COVERAGES, and PHYSICAL DAMAGE COVERAGES**

The following exclusions are added:

THERE IS NO COVERAGE:

a. WHILE ***YOUR CAR*** IS RENTED, LEASED, OR SUBLEASED TO ANY PARTY OTHER THAN ***YOU*** OR ***YOUR*** EMPLOYER WHO LEASED THE VEHICLE FOR ***YOUR*** REGULAR USE.

b. FOR:

(1) ***BODILY INJURY***, DAMAGE TO PROPERTY, OR ***LOSS*** THAT OCCURS; OR

(2) ***DAILY RENTAL CHARGES*** INCURRED;

AFTER ***YOUR CAR*** HAS BEEN RETURNED TO EITHER THE ***LESSOR*** OR THE ***LESSOR'S*** AGENT AS A RESULT OF LEASE EXPIRATION, VOLUNTARY SURRENDER, OR REPOSSESSION.





Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

(2) Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

15. **Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a. such provision will remain in full force to the extent not held invalid or unenforceable; and

b. all other provisions of this policy will remain valid and enforceable.



## 6097AR.1 LEASED MOTOR VEHICLES (Lessor As Additional Insured And Loss Payee)

This endorsement is a part of the policy. Except for the changes it makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **DEFINITIONS**

   The following is added:

   ***Lessor*** means the ***person*** or organization who leases ***your car*** to ***you*** or ***your*** employer for ***your*** regular use, but only if that ***person*** or organization is shown on the Declarations Page immediately following the title of this endorsement.

2. **LIABILITY COVERAGE**

   **Additional Definition**

   ***Insured*** is changed to include the ***lessor*** for the ownership, maintenance, or use of ***your car***.

3. **PHYSICAL DAMAGE COVERAGES**

   a. The following is added:

      **Leased Vehicle**

      1. Any Comprehensive Coverage or Collision Coverage provided by this policy applies to the ***lessor's*** interest in ***your car***. Coverage for the ***lessor's*** interest is only provided for a ***loss*** that is payable to ***you***.
      2. If the policy is cancelled or nonrenewed, then ***we*** will provide coverage for the ***lessor's*** interest until ***we*** notify the ***lessor*** of the termination of such coverage. This coverage for the ***lessor's*** interest is only provided for a ***loss*** that would have been payable to ***you*** if the policy had not been cancelled or nonrenewed.

         The date such termination is effective will be at least 10 days after the date ***we*** mail or electronically transmit a notice of the termination to the ***lessor*** unless a different notification period is required by law. The mailing or electronic transmittal of the notice will be sufficient proof of notice. However, this notification does not apply once ***your car*** is returned to either the ***lessor*** or the ***lessor's*** agent as a result of lease expiration, voluntary surrender, or repossession.
      3. If ***we*** pay such ***lessor***, then ***we*** are entitled to the ***lessor's*** right of recovery against ***you*** to the extent of ***our*** payment. ***Our*** right of recovery does not impair the ***lessor's*** right to recover the full amount of its claim.

   b. Item 1.a. under **Our Payment Options** is changed to read:

      a. ***We*** may, at ***our*** option, make payment to one or more of the following for ***loss*** to ***your car*** or a ***newly acquired car***:

         (1) ***you***;

         (2) the repairer;

         (3) a creditor shown on the Declarations Page, to the extent of its interest; or

         (4) the ***lessor***, to the extent of its interest.