Honorable Richard A. Jones

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE WESTERN DISTRICT OF WASHINGTON

BRETT DURANT, On Behalf of
Himself and all other similarly situated,

               Plaintiffs,

   vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a foreign
automobile insurance company,

              Defendant.

CASE NO. 2-15-CV-01710-RAJ

**MOTION TO CERTIFY CLASS AND
APPOINT CLASS COUNSEL**

**NOTE ON MOTION CALENDAR:**
August 5, 2016

MOTION FOR CLASS CERTIFICATION -- I
CASE NO. 2-15-CV-01710-RAJ

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

# TABLE OF CONTENTS

**TABLE OF CONTENTS**…........................................................... ii

**TABLE OF AUTHORITIES**……………………………………….. iv

**MOTION**…....................................................................... 1

I.     RELIEF REQUESTED………………………………….     1

II.    INTRODUCTION.................................................     1

III.   EVIDENCE RELIEF UPON………………………….....     2

IV.    FACTS………………………………………………..     3

    A.    State Farm terminated Mr. Durant's PIP benefits for
       unlawful reasons……………………………………     3

    B.    The unlawful conduct suffered by Durant is a systematic
       practice for State Farm…………………………………     6

V.     ARGUMENT…………………………………………     12

    A.    Legal Standard………………………………………..     12

    B.    Plaintiff's Claims……………………………………..     12

       1.    State Farm's conduct breaches its duty of good faith
          To Mr. Durant and the class………………………     12

       2.    State Farm's conduct violates Washington's Consumer
          Protection Act……………………………………… 14

       3.    State Farm's conduct breaches the insurance
          Contract……………………………………………     15

    C.    This case satisfies the class action certification requirements
       of FRCP 23……………………………………………… 15

       1.    The threshold prerequisites for class action certification
          under FRCP 23(a) are met………………………… 16

MOTION FOR CLASS CERTIFICATION -- II
CASE NO. 2-15-CV-01710-RAJ

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

1

        a.      FRCP 23(a)(1) is satisfied because the large
2
                      Number of widely dispersed class members makes
3
                      Joinder impracticable……………..      16
4
        b.      FRCP 23(a)(2) is met because there are
5
                      questions of law and fact common to the
6
                      class…………………………………..      17
7
        c.      FRCP 23(a)(3) is satisfied because Mr. Durant's
8
                      claims are typical of those of the rest
9
                      of the class……………………………..      18
10
        d.      Mr. Durant and counsel have no conflicts
11
                      and will prosecute the action with vigor…   19
12
     2.      The requirements for maintaining a class action under
13
            FRCP 23(b) are satisfied…………………………..  19
14
        a.      Predominance……………………………… 20
15
        b.      Superiority………………………………… 21
16
VI.     CONCLUSION……………………………………………   23

17

18

19

20

21

22

23

24

25

26

27

28

29

30

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

1

# TABLE OF AUTHORITIES

Cases

*Allison v. Citgo Petroleum Corp.*,
   151 F.3d 402 (5th Cir. 1998) .......................................................................20

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) .........................20

*Anderson v. State Farm Mut. Ins. Co.*,
   101 Wn. App. 323, 2 P.3d 1029 (2000) ...............................................13, 14

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994).............................................................................18

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) .......................................................................19

*Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*,
   No. CIV 13-0971 JB/GBW, 2015 WL 6393567 (D.N.M. Sept. 16, 2015) ...........................22

*Campbell v. PricewaterhouseCoopers*,
   253 F.R.D. 586 (E.D. Cal. 2008) .................................................................16

*Coventry Assocs. v. American States Ins. Co.*,
   136 Wn.2d 269, 961 P.2d 933 (1998)....................................................14, 15

*Cox v. Am. Cast Iron Pipe Co.*,
   784 F.2d 1546 (11th Cir. 1986) ...................................................................17

*Daniel v. Am. Bd. of Emergency
   Med.*, 269 F. Supp. 2d 159 (W.D.N.Y. 2003).............................................20

*Eisen v. Carlisle & Jacquelin*,
   391 F.2d 555 (2d Cir. 1968).........................................................................12

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)......................................................................................12

*Esplin v. Hirschi*,
   402 F.2d 94 (10th Cir. 1968) .......................................................................16

*Fire & Marine Ins. Co. v. Onvia, Inc.*,
   165 Wn.2d 122, 196 P.3d 664 (2008)..........................................................12

MOTION FOR CLASS CERTIFICATION -- IV
CASE NO. 2-15-CV-01710-RAJ

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

*Georgine v. Amchem Prods., Inc.*
    83 F.3d 6102 (3d Cir.1996 .................................................................................22

*Guenther v. Pac. Telecom, Inc.,*
    123 F.R.D. 333 (D. Or. 1988) ............................................................................21

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
    105 Wn.2d 778, 719 P.2d 531 (1986) ...............................................................14

*Hayden v. Mut. of Enumclaw Ins. Co.,*
    141 Wn.2d 55, 1 P.3d 1167 (2000) ...................................................................14

*Hohmann v. Packard Instrument Co.,*
    399 F.2d 711 (7th Cir. 1968) ............................................................................19

*In re Am. Med. Sys., Inc.,*
    75 F.3d 1069 (6th Cir. 1996) ............................................................................18

*In re Flonase Antitrust Litig.*
    284 F.R.D. 2074 (E.D. Pa. 2012 ......................................................................22

*In re Initial Pub. Offering Sec. Litig.,*
    243 F.R.D. 79 (S.D.N.Y. 2007) ........................................................................17

*Indus. Indem. Co. of the NW., Inc. v. Kallevig,*
    114 Wn.2d 907, 792 P.2d 520 (1990) ...............................................................12

*Ins. Co. of State of Pa. v. Highlands Ins. Co.,*
    59 Wn. App. 782, 801 P.2d 284 (1990) ............................................................14

*Jackson v. Foley,*
    156 F.R.D. 538 (E.D.N.Y. 1994) ......................................................................16

*King v. Kansas City S. Indus., Inc.,*
    519 F.2d 20 (7th Cir. 1975) ..............................................................................15

*Klay v. Humana, Inc.,*
    382 F.3d 1241 (11th Cir. 2004) ........................................................................23

*O'Keefe v. Mercedes-Benz,*
    214 F.R.D. 266 (E.D. Pa. 2003) .......................................................................20

*Robidoux v. Celani,*
    987 F.2d 931 (2d Cir. 1993) ..............................................................................17

*Sacred Heart Health Systems, Inc. v. Humana Military Healthcare Servs., Inc.,*
601 F.3d 1159 (11th Cir.2010) ........................................................................22

*Seijas v. Rep. of Argentina,*
606 F.3d 53 (2d Cir.2010)...............................................................................19

*Smith v. Northern Pac. R. Co.,*
79 Wash. 448, 140 P. 685 (1914).................................................................5, 8

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) .....................................................17

*Weber v. Gov't Emps. Ins. Co.,*
262 F.R.D. 431 (D.N.J. 2009)..........................................................................21

*Yamamoto v. Omiya,*
564 F.2d 1319 (9th Cir. 1977) .........................................................................16

## Statutes

RCW 48.01.030 .........................................................................................12, 14

RCW 48.18.510 ...................................................................................................6

RCW 48.22.005(7), 48.22.095, or 48.22.100 ....................................................13

RCW 48.30.010 ...................................................................................12, 13, 14

RCW 48.30.015 ..................................................................................................14

## Rules

FRCP 23.......................................................................................ii, 12, 15, 22

FRCP 23(a) .....................................................................................ii, 15, 16

FRCP 23(a)(1)..................................................................................iii, 1, 16

FRCP 23(a)(2)..................................................................................iii, 1, 17, 18

FRCP 23(a)(3)........................................................................................iii, 18

FRCP 23(a)(4).........................................................................................1, 19

FRCP 23(b)...................................................................................iii, 15, 19

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

1

FRCP 23(b)(3) ................................................................................................2, 20, 21, 22

FRCP 23(c)(1)(C) .................................................................................................. 15

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

## I.     RELIEF REQUESTED

Plaintiff Brett Durant seeks an order certifying this case as a class action on behalf of a class of Washington consumers who had their Personal Injury Protection (PIP) benefits denied, terminated or limited by the Defendant based on a standard prohibited by insurance regulations.

## II.     INTRODUCTION

The Washington Administrative Code provides that there are only four reasons for which an insurer may deny, limit or terminate PIP coverage: if treatment is not reasonable, necessary, related to the accident, or incurred within three years of the accident. WAC 284-30-395(1). Regulations unequivocally declare: "these are the *only* grounds for denial, limitation, or termination" of PIP benefits. *Id*. (emphasis added). Thus, in order to be lawful, a denial, limitation or termination of PIP benefits must be based on one of these four authorized grounds. Yet since 1994, State Farm has adjusted PIP claims based on an *unauthorized* standard: whether treatment is "essential in achieving maximum medical improvement" (MMI). State Farm, in so doing, acts unlawfully. This action seeks compensation for those who have been damaged by this unlawful conduct and for an injunction prohibiting the same.

The Plaintiff's allegations are suitable for class certification. Under FRCP 23(a)(1), the class is certainly numerous: pre-certification discovery indicates that the class includes 3,285 or more potential claimants. State Farm's unlawful conduct is consistent and systematic, providing the necessary common questions of law or fact under FRCP 23(a)(2). Mr. Durant's claim is typical both in the practices alleged and in the damages suffered. Mr. Durant also meets the adequacy requirement of FRCP 23(a)(4): he is committed to vigorously prosecuting this action,

MOTION FOR CLASS CERTIFICATION -- 1
CASE NO. 2-15-CV-01710-RAJ

his attorneys are qualified to do so, and his situation presents no conflicts with other class members.

Certification is appropriate under FRCP 23(b)(3) because the common question of the legality of State Farm's conduct predominates over other questions, and a class action is superior to other methods of resolution. Each plaintiff's damages are too small to justify individual suit, and multiple complaints by all of the individual claimants would overwhelm the court system.

### III.      EVIDENCE RELIED UPON

This motion relies on the declarations and exhibits thereto of Brett Durant, Paul Sampson, PhD., Stephen Strzelec, CPCU, Tyler K. Firkins, and David Nauheim.

### IV.      FACTS

**A.      State Farm terminated Mr. Durant's PIP benefits for unlawful reasons.**

Although WAC 284-30-395(1) unequivocally provides that there are only four exclusive bases upon which PIP claims determinations can be made, since 1994 State Farm's has used an auto liability policy in the State of Washington that contains an additional, unauthorized basis:

*Personal Injury Protection Benefits* means accident related:

1. Medical and Hospital Benefits, which are payments for *reasonable medical expenses* incurred within three years of the date of the accident.

*Reasonable Medical Expenses* mean expenses:

1. That are the lowest one of the following charges:
2. Incurred for necessary:
   …
   a.   medical, surgical, X-ray, dental, ambulance, hospital, and professional nursing services, and
      . . .
      that are rendered by or prescribed by a licensed medical provider within the legally authorized scope of the provider's practice ***and are essential in achieving maximum medical improvement for the bodily injury sustained in the accident***.

MOTION FOR CLASS CERTIFICATION -- 2
CASE NO. 2-15-CV-01710-RAJ

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

1
2
3
4

(Firkins Exhibit N) (bold and italics in original, underscore added).   Relying on this policy provision, State Farm has systematically adjusted PIP claims almost exclusively on the MMI standard., virtually ignoring the lawful standard in WAC 284-30-395(1).

5
6
7
8
9
10
11
12

Plaintiff Brett Durant is one of thousands of consumers that has been harmed by this unlawful conduct.  Mr. Durant has been a policy holder with State Farm since 1995. He chose to carry $35,000 in PIP coverage. On July 21, 2012, Mr. Durant was injured in a motor vehicle accident when another driver failed to obey a yield sign and struck his vehicle causing $11,501.56 in property damage. (Durant Dec. Ex. A) Mr. Durant opened a PIP claim with State Farm. State Farm sent him a form "Coverage Letter" explaining his coverages:

13
14
15

> The policy provides coverage for reasonable and necessary medical expenses that are incurred within three (3) years of the accident. *Medical services must also be essential in achieving maximum medical improvement for the injury you sustained in the accident.*

16
17
18
19
20
21
22
23

(Durant Dec. Ex. C) (emphasis added) Mr. Durant sought treatment with chiropractor Harold Rasmussen, DC, who diagnosed cervical, thoracic, sacral and bilateral sacroiliac sprain condition with fixation of the right shoulder. (Firkins Dec, Ex. Q - Rasmussen Dec. at ¶ 2) After a shoulder MRI showed a sprain of the middle glenohumeral ligament and a possible small type I SLAP tear, Plaintiff was referred to an orthopedic surgeon who diagnosed mild bursitis/tendinitis. *Id.* This was treated with physical therapy and cortisone injections. (Durant Dec. at ¶6)

24
25
26
27
28
29

Four months after the accident, State Farm sent Dr. Rasmussen a "Physician Report," which is a form letter inquiring about the patient's progress. (Firkins Dec, Ex Q ) The letter was directed towards State Farm's illegitimate standard: "Has the patient reached maximum medical improvement?" and, "If the patient has not reached maximum medical improvement, when is your target date?" Notably, the letter did *not* inquire whether Mr. Durant's treatment met the

30

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

standards in WAC 284-30-395(1).  This form letter, or a variation thereof,[1] is the same letter that State Farm systematically uses on all of its PIP claims in the State of Washington. (Firkins, Ex. C & F)  Dr. Rasmussen responded that Mr. Durant was not at MMI but his target date was February 2, 2013. (Firkins Dec., Ex. Q).

Mr. Durant's injuries were not resolved by that date and he continued to receive chiropractic and massage therapy. (Durant Dec. at ¶ 8)  So State Farm sent another letter to Dr. Rasmussen asking again whether Mr. Durant was at MMI and if not, when MMI was expected. (Durant Dec. Ex. 2)  Dr. Rasmussen listed 3/27/13 as the date of MMI. *Id.* This time the letter asked: "You have treated Brett past his given MMi [sic] date of 2/1/2013. Please explain." Dr. Rasmussen stated, "Patient was not stable and needed treatment to 3/27/2013." *Id.*

While Mr. Durant's injuries may have been "stable" as of the end of March, his injuries had not resolved; he had continued instability throughout the thoracocervical, thoracolumbar, lumbosacral, and bilateral sacroiliac joints as well as instability of the right shoulder due to the SLAP tear. (Firkins, Dec Ex. Q - Rasmussen Dec. at ¶ 4) Like many patients, he had temporarily achieved "MMI" by sustained treatment and avoiding activities that would exacerbate his existing injuries—activities that he had been able to engage in before the motor vehicle accident such as playing golf, snowboarding, running, mountain biking, doing yard work, etc. Without the benefit of ongoing treatment, whenever Mr. Durant attempted to return to any of his pre-accident activities, he exacerbated his injuries from the motor vehicle accident.

What is more, Mr. Durant was working as a Data Center Technician for Motricity where he singlehandedly maintained a 6000 square foot data center. This required varying amounts of

---

[1] Training material produced by State Farm indicates that his particular form letter contains several pre-approved questions; the adjuster's chooses the questions that are applicable. Thus, the form letters will vary according to the claim. However, none of the pre-approved questions deal with whether treatment is reasonable or necessary.

MOTION FOR CLASS CERTIFICATION -- 4
CASE NO. 2-15-CV-01710-RAJ

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

physical work, which from time to time exacerbated his injuries and he sought chiropractic treatment or massage therapy. (Durant Dec. at ¶9)

When the activities of daily living exacerbate an underlying injury, these exacerbations are legally attributable to the original injury. *Smith v. Northern Pac. R. Co.,* 79 Wash. 448, 140 P. 685 (1914). Since treatment for these exacerbations was reasonable, necessary, and related to the motor vehicle accident, the Plaintiff's providers billed his PIP claim. State Farm denied each bill on the basis that: "Services are not covered, as your provider advised us you previously reached maximum medical improvement." (Firkins Dec. Ex. E)  The Explanation of Review letter made no mention of the standard in WAC 384-30-395(1).

By this point, Mr. Durant had retained an attorney for his personal injury case. His attorney wrote to State Farm asking them to pay the outstanding medical bills. The attorney explained that State Farm must use the standard authorized by WAC 284-30-395(1); whether Mr. Durant had reached MMI was irrelevant: unless State Farm had a competent medical opinion that Mr. Durant's treatment was not reasonable, necessary or related, State Farm must pay the bills. (Durant Dec. Ex. G) The attorney provided State Farm a letter from Dr. Rasmussen explaining that instability throughout the thoracocervical, thoracolumbar, lumbosacral, and bilateral sacroiliac joints as well as instability of the right shoulder due to the labrum tear meant that Mr. Durant would require conservative care on and off for his spinal and pelvic dysfunction and that during periods of exacerbation, Mr. Durant should receive conservative treatment to restore biomechanics and reduce his symptoms of pain. (Firkins Dec, Ex Q - Rasmussen Dec. at ¶ 4)

The State Farm adjuster ignored Dr. Rasmussen's opinion and authored a letter reiterating the previous denial that Mr. Durant had previously reached MMI. No investigation was performed as to whether the medical expenses were reasonable, necessary and related to the accident.

MOTION FOR CLASS CERTIFICATION -- 5
CASE NO. 2-15-CV-01710-RAJ

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

(Firkins Dec, Ex. O) Mr. Durant, through his attorney, responded by letter that the Plaintiff needed medical treatment from time to time due to exacerbations in order to maintain his recovery, and that this treatment should be considered reasonable, necessary and related under WAC 284-30-395(1). The attorney contended that under RCW 48.18.510, the policy must be read as if it were in compliance with insurance regulations.[2]  (Firkins Dec. Ex. K) At this point Mr. Durant had unpaid medical bills of $1,131.16, which had been denied by State Farm.  (Durant Dec, Ex. I) State Farm stood on its decision to deny payment based on the unlawful MMI standard without consideration of the lawful standard in WAC 284-30-395(1). (Firkins Dec. Ex. O, Durant Dec.)

**B.       The unlawful conduct suffered by Durant is a systematic practice for State Farm.**

Pre-certification discovery of claims files demonstrates that State Farm systematically adjusts PIP claims almost exclusively to the MMI standard. The PIP claims process is tightly controlled by the use of form letters. The PIP claim investigation specifically uses form letter with pre-approved questions. The language of these form letters steers the focus of the investigation and almost without exception, these letters focus *solely* on the MMI standard, ignoring the lawful standard of WAC 284-30-395(1). (Firkins Dec. Exs. F, G, P and R) A transcript of a training broadcast produced by State Farm shows that the form letter language is tightly controlled: adjusters are not permitted to deviate from the form letter without permission from a supervisor:

> All [IME and UR] referral letters contain pre-drafted questions. These questions are the *only* questions that can be asked of the reviewer. You may need to include more than one of the questions in your letter, but only use questions pertinent to the issue or issues you

---

[2] "Any insurance policy, rider, or endorsement hereafter issued and otherwise valid, which contains any condition or provision not in compliance with the requirements of this code, shall not be rendered invalid thereby, but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this code." RCW 48.18.510.

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

are investigating. {Stress this}[3] If a question listed does not meet your needs, you must have approval from your zone Claim Consultant to use different questions.

Firkins Declaration, Ex. P and R.  Via these form letters, it is institutionally assured that PIP claims are systematically adjusted based on the MMI standard.  And examination of the claims files produced in discovery confirms not just by design but also in practice, State Farm adjusts PIP claims almost exclusively to the MMI standard.

It is relatively easy to determine what standard State Farm is using in each PIP claim. Every time a medical bill is submitted, State Farm issues an Explanations of Review (EOR), which contains a "Reason Code" indicating why the bill was or was not paid. There are three particular reason codes that are relevant to this class action:

SF 546:   Your provider advised us you previously reached maximum medical improvement. Please refer to our prior correspondence.

SF 537:   Services not covered due to the results of your examination with a physician of our choice and all other pertinent file material.

SF 536:   Services are not covered due to the results of your utilization review and all other pertinent file materials.

(Strzelec Dec. at 3; Nauheim Dec.) These reason codes represent three different methods for assessing whether medical bills should be paid under an insured's PIP coverage. State Farm refers to these methods collectively as "medical management." (Firkins Dec. Ex. L at 67).

The first method, a "Physician Report," is to simply send a form letter to the insured's treatment provider inquiring whether the insured has reached MMI, and if not, when the patient will reach MMI. (Firkins Dec. Ex. F; Strzelec Dec. at 5) The form letter does not ever inquire about whether treatment is reasonable, necessary or related. (Firkins Dec. Ex. F)  If a treatment provider indicates that the insured has reached MMI, benefits are terminated using reason code SF546. (Strzelec Dec. at 5; Firkins Dec., Ex. K at 60-61) In some instances, an adjuster will

---

[3] Here, the trainer is instructed to "stress" the point that form letters cannot be deviated from without approval.

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

discern a chart note that suggests that the insured reached MMI and use the same reason code to terminate benefits.  *Id.*

The next method is the so-called an Independent Medical Examination (IME). Here, State Farm contracts a physician to examine its insureds, review the medical records, and answer questions posed by the claims adjuster via a form letter. (Firkins Dec. Ex. G; Strzelec Dec. at 5-6) The adjuster chooses from a list of pre-approved questions to include in the letter. Among the questions employed is whether the insured has reached MMI. (Srtzelec Dec. at 5)  Almost none of the pre-approved questions inquire about the lawful reasons.[4] (*See* Firkins Dec. Exs. F,G & O) Review of the claims files demonstrate that a majority of the time, adjusters selected the questions about MMI and the claims decision is made on that basis. (Strzelec Dec. at 5) When State Farm bases its decision on an IME report, it uses reason code SF537 on the EOR.

The final method is the "Utilization Review" (UR). Here, State Farm contracts a physician to review the medical records and answers pre-approved questions posed by the claims adjuster in a form letter. (Firkins Dec. Ex. G, p.2) There is no examination. Among the questions asked is whether the insured has reached MMI. There are no questions inquiring about the lawful reasons. *Id.* State Farm uses reason code SF536 when a decision is based on a UR.

Since reason codes 536 and 537 are ambiguous (they point the insured to the IME or UR report), it was necessary to look at the claims file to determine how often these codes were used for decisions based on the unlawful MMI standard. Steven Strzelec, the Plaintiff's claims handling expert, reviewed 60 claims files, which were produced by State Farm pursuant to a pre-certification discovery order. These claims files reflect a random sampling of claims files known

---

[4] Only one pre-approved question could be found that unequivocally is consistent with the statutory language: "Is the proposed surgery medically necessary to treat the patient's injuries) sustained in the (date of loss) accident?" (Firkins Dec. Ex G p.2) However, not once was this question found in the 60 claims files produced in discovery.

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

to contain one of the relevant reason codes. (Firkins Dec, Ex. S – Discovery Order).  Mr. Strzelec found that in vast majority of cases, State Farm adjusted PIP claims under the unlawful MMI standard. (Strzelec Dec. ¶ 4) Form letters were used to ask treatment providers and IME examiners whether the insured had reached MMI; not whether treatment was reasonable, necessary and related. Id. ¶ 9. Once State Farm had a basis to conclude that the insured had reached MMI for a certain injury or type of treatment, whether by Physician Report, chart note, IME or UR, State Farm would deny further treatment, sending a form letter to its insured explaining that only treatment "determined to be reasonable, necessary and essential to achieving maximum medical improvement for the bodily injured sustained in the" accident "will be considered for payment." (Firkins Dec. Ex. I)

In reviewing the sample claim files, the Plaintiff's expert looked at 27 files containing reason code SF546. In 21 of those files, State Farm denied, limited, or terminated PIP benefits based on a Physician Report or a chart note stating that the insured had reached MMI. (Strzelec Dec. at 11) Reason code SF546 was noted on the EOR, which explained, "[S]ervices are not covered, as your provider advised us you have previously reached maximum medical improvement." (Strzelec Dec. at 3) Since discovery indicates that there are 1,222 claims files containing reason code SF546, Professor Paul Sampson, Plaintiff's statistical expert, was able to extrapolate a statistical range of 708-1,116 claim files that would likely reflect the same inappropriate denials. Id. at 2.

Mr. Strezelec then examined 33 claim files that employed reason code SF537. In 30 of those files, State Farm denied, limited, or terminated PIP benefits based on an IME report stating that the insured had reached MMI. (Strzelec Dec. at 11) In addition to the EOR, the insured received a form letter attaching the IME report. (Strzelec Dec. at 5; Firkins Dec., Exs H &. I) The

MOTION FOR CLASS CERTIFICATION -- 9
CASE NO. 2-15-CV-01710-RAJ

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

EOR stated: "[S]ervices not covered due to the results of your examination with a physician of our choice and the pertinent file material." (Strzelec Dec. at 5) The form letter stated, "It is State Farm's decision that you have reached maximum medical improvement[.]" (Firkins Dec. Ex. E) Since discovery indicates that there are 2070 claims containing reason code SF537, Professor Sampson was able to extrapolate that a range of 1568-2030 claims would reflect the same inappropriate denials. (Sampson Dec. at 3).

In the 60 sample claim files, only two files contained code SF536 (Utilization Reviews). In one of the two, State Farm denied, limited, or terminated PIP benefits based on a UR opinion that the insured had reached MMI. The EOR stated, "Services are not covered due to the results of your utilization review and all other pertinent file material." The insured received a form letter stating the denial was based on MMI with a copy of UR report enclosed. Professor Sampson opined that the number of sample SF536 files was too small to yield a statistically valid sample. (Sampson Dec. at 3) However, discovery indicates that there are 215 claim files containing reason code SF536, resulting in over $1,000,000.00 in denied medical bills. (Sampson Dec. at 4) Thus, while the number of claims is relatively low, the impact on Washington consumers appears to be high.

Insurance industry standards require that all claim handlers know and be in compliance with all laws and regulations that impact claim handling in their jurisdiction. (Strzelec Dec. at 11-12) One such regulation is that the adjusters would be required to know and be in compliance with is WAC 284-30-395. The Plaintiff's expert opined that using the MMI standard to adjust claims is improper and forbidden by WAC 284-30-395. (Strzelec, Dec. at 12) He further opined that in almost every instance, State Farm made its claims determinations to deny, limit or terminate coverage using the inappropriate MMI standard rather than the actual regulatory

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

language. *Id.* Prior to this litigation, State Farm never defined MMI or associated the term as synonymous with the term necessary, as State Farm has recently claimed.[5] (Firkins Dec. Ex. D) In fact, in its Coverage Letter sent out to all PIP claimants, State Farm makes very clear that the MMI standard is *in addition to* the reasonable, necessary and related requirement:

## MEDICAL AND HOSPITAL BENEFITS

The policy provides coverage *for reasonable and necessary medical expenses* that are incurred within three (3) years of the accident.  Medical services *must also be essential in achieving maximum medical improvement* for the injury you sustained in the accident. To assist us in determining what expenses are reasonable and necessary, we may obtain a second opinion from a medical provider.  We may also have the treatment reviewed by other medical professionals.

Occasionally there are situations where treatment may not be considered reasonable, necessary, or related to the accident.  <u>*Similarly, there may be cases where the services are not essential in achieving maximum medical improvement for the injury sustained in the accident.*</u>  In such cases, YOUR PIP COVERAGE MAY NOT PAY FOR ALL OF YOUR EXPENSES.

(Firkins Dec., Ex D) (emphasis added)

Thousands of Washington consumers have had their PIP benefits improperly denied, terminated or limited by State Farm's improper claims handling practices. Statistically the number includes at least 2,278 State Farm insureds.[6] The potential sum of improperly denied medical bills is nearly $8,000,000.00.  (Sampson Dec. at 4) Yet the median amount of denied medical bills is as little as $180. *Id*. at 4. Few consumers will file a lawsuit over such a sum, but the losses incurred by consumers is substantial. This lawsuit seeks to stop the further use of this claims handling practice, and also seeks to compensate the damages of those who were improperly denied benefits.

---

[5] It is important to note that even if State Farm had an alternative reason for denying benefits, the only basis relevant is the reason given to the insured in the denial. WAC 284-30-396 (2) ("The insurer shall include the true and actual reason for its action[.]")

[6] This figure is calculated by adding the lowest numbers in the statistical ranges calculated by Professor Sampson.

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

## V.     ARGUMENT

### A.     Legal Standard

FRCP 23 and relevant local rules govern class actions in the Western District of Washington. Federal courts construe FRCP 23 liberally in favor of permitting class certification. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 563 (2d Cir. 1968), *vacated on other grounds,* 417 U.S. 156(1974). When determining whether class certification is appropriate, courts are *not* to consider the merits of the claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). Thus, any disagreements that State Farm may have with Plaintiff's allegations are irrelevant to the disposition of this motion.

### B.     Plaintiff's Claims

#### 1.     State Farm's conduct breaches its duty of good faith to Mr. Durant and the class.

In an action for bad faith handling of an insurance claim, the insured must establish duty, breach, causation, and damages proximately caused by the breach. *Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 129, 196 P.3d 664 (2008). The insurer's duty of good faith to its insured is imposed by statute:

> The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, their providers, and their representatives rests the duty of preserving inviolate the integrity of insurance.

RCW 48.01.030.

An insurer breaches its duty of good faith if it employs unfair or deceptive claims settlement practices. RCW 48.30.010.  Even a single violation of WAC 284-30 may constitute bad faith. *Indus. Indem. Co. of the NW., Inc. v. Kallevig*, 114 Wn.2d 907, 924, 792 P.2d 520

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

(1990). WAC 284-30-300 to 284-30-400 define certain minimum standards which insurance must follow.  A violation of any one of these provisions constitutes an unfair claims settlement practice and thus a violation of RCW 48.30.010. *Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 331, 2 P.3d 1029 (2000). This litigation arises from WAC 284-30-395(1), one of the unfair claims regulations of that chapter.  It states:

> (1) Within a reasonable time after receipt of actual notice of an insured's intent to file a personal injury protection medical and hospital benefits claim, and in every case prior to denying, limiting, or terminating an insured's medical and hospital benefits, an insurer shall provide an insured with a written explanation of the coverage provided by the policy, including a notice that the insurer may deny, limit, or terminate benefits if the insurer determines that the medical and hospital services:
>
> > (a) Are not reasonable;
> > (b) Are not necessary;
> > (c) Are not related to the accident; or
> > (d) Are not incurred within three years of the automobile accident.
>
> *These are the only grounds for denial, limitation, or termination of medical and hospital services* permitted pursuant to RCW 48.22.005(7), 48.22.095, or 48.22.100.

 WAC 284-30-395 (emphasis added).

The regulation is unambiguous: there are only four reasons under which PIP benefits may be lawfully terminated: if treatment is not (1) reasonable, (2) necessary, (3) related to the accident, or (4) incurred within three years. WAC 284-30-395(1). Unequivocally, "[t]hese are the only grounds for denial, limitation, or termination" of PIP benefits. *Id*. If an insurer terminates benefits *for any other reason*, it violates this regulation and breaches the duty of good faith.

Since 1994, State Farm's auto liability policy has contained the MMI standard *and* systematically used it as the primary standard for adjusting PIP claims. When a PIP claim is opened, State Farm is required by WAC 284-30-395(1) to send its insured a "Coverage Letter," explaining the PIP coverage. Insurance regulations dictate that the Coverage Letter contain the statutory language of WAC 280-30-395(1).  But State Farm impermissibly adds to the statutory

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

language. Its Coverage Letter says "Medical services *must also be* essential in achieving maximum medical improvement for the injury you sustained in the accident." (Durant Dec. Ex. C, p. 24) (emphasis added) While State Farm calls this an additional standard, discovery has shown that in practice (and by design), it treats MMI as the *only* standard. The statutory language is recited only as window dressing; it rarely, if ever, factors into how the claim is adjusted. The class alleges that by adjusting PIP claims using the illegitimate MMI standard, State Farm has breached its duty of the duty of good faith as a matter of law in violation of RCW 48.30.010.

First-party claimants suing for bad faith may recover both consequential damages and general tort damages relating to the insurer's bad faith acts. *Coventry Assocs. v. American States Ins. Co.*, 136 Wn.2d 269, 285, 961 P.2d 933 (1998). Such damages would include emotional distress damages. *Anderson*, 101 Wn. App. at 333. RCW 48.30.015 also provides for litigation costs, reasonable attorneys' fees, and the possibility of treble damages.

## 2. State Farm's conduct violates Washington's Consumer Protection Act.

The five elements of a CPA claim are: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to the plaintiff; (5) and causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785-90, 719 P.2d 531 (1986). Any violation of the claims handling provisions set forth in WAC 284-30-330 et seq., such as WAC 284-30-395, satisfies the first two elements of a CPA claim. *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 62, 1 P.3d 1167 (2000). Under RCW 48.01.030, the third element is satisfied because the legislature has declared that insurance is a business affected by the public interest. *Ins. Co. of State of Pa. v. Highlands Ins. Co.*, 59 Wn. App. 782, 786, 801 P.2d 284 (1990). Thus, once a WAC violation is demonstrated, the plaintiff need only

MOTION FOR CLASS CERTIFICATION -- 14
CASE NO. 2-15-CV-01710-RAJ

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

demonstrate injury and causation. As discussed above, State Farm's practice of terminating PIP benefits based on an unlawful condition violates WAC 284-30-395. This practice has caused medical bills not to be paid. In fact, according to spreadsheets produced in discovery it appears that State Farm improperly refused to pay around $8,000,000 in medical expenses.

### 3.   State Farm's conduct breaches the insurance contract.

Insurance contracts, like all other contracts, incorporate an implied covenant of good faith and fair dealing. *Coventry Associates v. Am. States Ins. Co.*, 136 Wn.2d 269, 281, 961 P.2d 933 (1998). State Farm's bad faith conduct in unlawfully withholding or denying benefits breaches its contracts with its insured. Contract damages recoverable in this case include the medical bills denied by State Farm based on MMI, as well as any other economic damages incurred as a result of the breach such as interest or collection fees. *See Id.* at 284.

### C.   This case satisfies the class action certification requirements of FRCP 23.

A liberal interpretation of FRCP 23 is favored in federal courts, particularly for claims in which important rights would otherwise go unvindicated. *King v. Kansas City S. Indus., Inc.*, 519 F.2d 20, 26 (7th Cir. 1975). Here, individual claims range from the failure to pay one or two medical bills, to the refusal to pay for surgeries. For most consumers, pursuing a lawsuit over a few unpaid medical bills is not economically feasible. However, a class action is an ideal method for Washington consumers to recover for their damages, even if the damages are not substantial.

Class actions are allowed under FRCP 23 when the plaintiff can demonstrate numerosity, commonality, typicality, and adequacy under FRCP 23(a) and meet one of the requirements outlined in FRCP 23(b). Certification may be modified or withdrawn later by the trial court. FRCP 23(c)(1)(C). For this reason, federal courts adhere to the policy that "if there is to be an

MOTION FOR CLASS CERTIFICATION -- 15
CASE NO. 2-15-CV-01710-RAJ

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

1    error made, let it be in favor and not against the maintenance of the class action." *Esplin v.*

2    *Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968).

3

4              **1.      The threshold prerequisites for class action certification under FRCP
                         23(a) are met.**

5

6          Pursuant to FRCP 23(a), an action may be certified as a class action only if:

7          (1)  the class is so numerous that joinder of all members is impracticable ("numerosity");
8          (2)  there are questions of law or fact common to the class ("commonality");
           (3) the claims or defenses of the representative parties are typical of the claims or defenses
9          of the class ("typicality"); and,
           (4) the representative parties will fairly and adequately protect the interests of the class
10         ("adequate representation").

11

12   As these requirements are imprecise, the trial court has considerable discretion to reach a fair

13   result based on the unique circumstances of each case. *Yamamoto v. Omiya*, 564 F.2d 1319, 1325

14   (9th Cir. 1977).

15

16             **a.      FRCP 23(a)(1) is satisfied because the large number of widely
                        dispersed class members makes joinder impracticable.**

17

18         Plaintiff's pre-certification discovery indicates that there are over 3,285 potential class

19   members dispersed throughout the state of Washington. While there is no established number of

20   class members that must be reached in order satisfy the "numerosity" requirement, such a large

21   number of potential class members makes joinder impracticable. *Campbell v.*

22   *PricewaterhouseCoopers*, 253 F.R.D. 586, 594 (E.D. Cal. 2008). While pre-certification

23   discovery has only resulted in a statistical estimate of the number of class members, it is not

24

25   necessary that the precise number of class members be enumerated at the time the motion for

26   certification is considered. *Jackson v. Foley*, 156 F.R.D. 538, 541-42 (E.D.N.Y. 1994). Moreover,

27

28   the numerosity requirement is generally relaxed where, as here, declaratory and injunctive relief is

29   sought. H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS §3.05, at 3-24 (3d. ed. 1992).

30

MOTION FOR CLASS CERTIFICATION -- 16
CASE NO. 2-15-CV-01710-RAJ

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

Here, pre-certification discovery demonstrates that the class of claimants subjected to MMI claims handling practices include at least 3,285 consumers. According to statistical analysis based on sample claim files, the expected number of affected State Farm insureds is at least 2,278 Washington consumers. Taking into consideration these and other factors, such as judicial economy, geographic dispersal of class members throughout the state, the small size of individual claims, the limited financial resources of class members and their consequent limited ability to institute individual suits, and the fact that the Plaintiff is requesting prospective injunctive relief that would involve future class members, *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993), joinder is impracticable in this case.  The numerosity requirement is met.

> **b.      FRCP 23(a)(2) is met because there are questions
> of law and fact common to the class.**

The second requirement, "commonality," is qualitative rather than quantitative. Accordingly, it is satisfied where the potential class members present a common question susceptible to a common answer.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).  Even one common question may be sufficient to satisfy this standard.  *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 85 (S.D.N.Y. 2007). Where the factual allegations suggest that the defendant was engaged in a common course of conduct in relation to all the potential class members, the commonality requirement is satisfied, regardless of the presence of issues specific to an individual class member. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986). Here, Plaintiff presents a number of factual and legal questions common to the class:

- Does State Farm have a routine practice of denying benefits to claimants based upon an unlawful standard, whether the claimant has reached MMI?
- Is this practice part of a broader set of claims management practices undertaken to reduce costs of claims overall?

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

- Are these practices bad faith under the relevant Washington insurance law?
- Do these practices violate Washington's Consumer Protection act?
- Do these practices amount to breach of the insurance contract?
- Do these practices violate the Insurance Fair Conduct Act?

These questions all involve common issues of law and fact and all address the question of whether State Farm was engaged in an illegal course of conduct. Therefore, the requirements of FRCP 23(a)(2) are satisfied.

### c.     FRCP 23(a)(3) is satisfied because Mr. Durant's claims are typical of those of the rest of the class.

FRCP 23(a)(3) requires that the claims of the representative party be "typical" of the claims of the class. A claim is typical if it arises from the same event, practice, or course of conduct that gives rise to the claims of other class members, and if it is based on the same legal theory. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). Thus, varying fact patterns in individual claims do not defeat the typicality requirement for class certification where the same unlawful conduct is alleged to have affected both the named plaintiffs and the class members. *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994).

Here, Plaintiff alleges that State Farm adjusted his claim and denied payment of benefits on an unlawful basis: that he had reached MMI. Similarly, State Farm used the same unlawful standard to deny benefits for at least 2,278 other State Farm insureds. (Sampson Dec. at 3-4) As a result of State Farm's claims handling practices, Mr. Durant suffered damages including the refusal to pay medical bills, emotional distress regarding State Farm's refusal to pay and how he would pay for continued care, and the loss of security that having insurance provides. Critically, the relevant question for class certification is not the particular type or amount of damages suffered, but whether the class representative was subjected to the defendant's same course of conduct. The only significant variation in proof among the class members relates to the amount

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

and type of damages due. This difference is insufficient to defeat class certification. *See, e.g.,* *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) (Damages are "invariably an individual question and [do] not defeat class action treatment").

> **d.**   **Mr. Durant and counsel have no conflicts and will prosecute the action with vigor.**

Much like commonality, the "adequate representation" requirement is a question of quality rather than quantity. *See Hohmann v. Packard Instrument Co*., 399 F.2d 711, 714 (7th Cir. 1968). Thus, even a single class representative is sufficient to satisfy FRCP 23(a)(4) so long as the court is convinced that the representative will prosecute the action with vigor on behalf of the class. *Id.* Federal courts examine three factors in determining the adequacy of representation: that the representative has a sufficient interest in the outcome so as to vigorously prosecute the claims, whether there are any conflicts of interest, and whether counsel is qualified and experienced in class action prosecution. *Seijas v. Rep. of Argentina,* 606 F.3d 53, 57 (2d Cir.2010). As detailed above, Mr. Durant has a significant interest in the outcome of this matter such that he is capable of vigorously prosecuting the class action. Plaintiff, just like the class, seeks to prove that State Farm's practices are unfair, deceptive, and illegal and, with the assistance of counsel, will make a conscientious and undivided effort to do so. (Durant Dec. ¶ 2)  Mr. Durant has no interests that conflict with the unnamed members of the proposed class and it is not anticipated that any conflicts are likely to arise.  Finally, Mr. Durant's counsel has 25 years of experience, has handled class actions before, and is committed to the vigorous prosecution of the case. (Firkins Dec. at 4) Accordingly, the requirement of adequate representation is met.

> **2.**   **The requirements for maintaining a class action under FRCP 23(b) are satisfied.**

In this case, the class will be seeking monetary damages, in addition to an injunction.

MOTION FOR CLASS CERTIFICATION -- 19
CASE NO. 2-15-CV-01710-RAJ

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

Because the class will predominantly be seeking damages, only FRCP 23(b)(3) is available for certification purposes. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998). Application of FRCP 23(b)(3) is appropriate where a class action is superior to other available methods of adjudicating a dispute, and common questions of law or fact predominate over questions affecting only individual members of the class. This rule is thus usually broken into two elements: predominance and superiority.

### a.  Predominance

The requirement that common questions of law or fact predominate is similar to, but more stringent than, the commonality requirement. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-24, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). That said, however:

> [I]n judging whether the alleged common issues predominate over individual issues, Rule 23(b)(3) does not require that every issue in the case be similar to every other issue presented by each class member's case. In determining whether common questions predominate, the court's inquiry is directed primarily to classwide questions of liability.

*Daniel v. Am. Bd. of Emergency Med.*, 269 F. Supp. 2d 159, 189 (W.D.N.Y. 2003) *aff'd*, 428 F.3d 408 (2d Cir. 2005) (internal citations omitted).

Common issues predominate in this class action: There is a single defendant that has engaged in substantially similar conduct toward all class members, and determination about the legality of that conduct will predominate and substantially advance the litigation. *See, e.g.* *O'Keefe v. Mercedes-Benz*, 214 F.R.D. 266, 291 (E.D. Pa. 2003). The main question presented in this case is whether it is unreasonable and unlawful for State Farm to adjust PIP claims based on the unauthorized MMI standard. Because State Farm denies that it adjusts claims to the MMI standard, it then is a factual question whether State Farm actually does adjust the PIP claims to

MOTION FOR CLASS CERTIFICATION -- 20
CASE NO. 2-15-CV-01710-RAJ

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

the inappropriate MMI standard, and whether such conduct is unlawful.[7] These are the predominant questions in the case.

In *Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431 (D.N.J. 2009), the plaintiff similarly challenged the legality of GEICO's PIP policies. Specifically, Weber alleged that GEICO sold PIP policies under $250,000 in benefits without providing written notice or obtaining written consent, as mandated by New Jersey insurance law. *Id.* at 437. The District Court found that the plaintiffs had satisfied the predominance requirement because the claims were all based on the same course of conduct by the defendant and premised on the same legal theory. *Id.* at 442. None of the issues that typically defeat predominance, such as individualized reliance, variance in state laws, or variance in the defendant's underlying course of conduct, were present in *Weber*. Rather, the central issue was whether GEICO was systematically selling PIP policies that did not meet the requirements of state insurance law. *Id.* at 442.

Like the *Weber* case, the issue addressed here is State Farm's uniform and systematic use of an unlawful basis to deny or limit PIP benefits. The question in this case is whether State Farm employs a standard for denying claims that is prohibited by WAC 284-30-395. Because that legal question predominates and certification under FRCP 23(b)(3) is appropriate.

**b.     Superiority**

In addition to predominance, FRCP 23(b)(3) requires that the court certifying a class action also find that a class action is superior to other methods of adjudicating the case. In determining superiority, the court is to consider four factors:

(A) the class members' interest in individually controlling the prosecution or defense of

---

[7] In the context of a class certification motion, the Court should assume that State Farm does in fact adjust its claims to the MMI standard rather than the necessary standard. *Guenther v. Pac. Telecom, Inc.*, 123 F.R.D. 333, 335 (D. Or. 1988). Nonetheless, since State Farm does not stipulate to this fact, it is a predominant question to be resolved in the litigation.

MOTION FOR CLASS CERTIFICATION -- 21
CASE NO. 2-15-CV-01710-RAJ

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA 98002-1381
(253) 859-8899 • Fax (866) 947-4646

separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action.

FRCP 23(b)(3). Importantly, the comparison is not to the alternative of no litigation at all, but to the alternatives available—joinder, intervention, consolidation, or separate actions. *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012) (quoting *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 632 (3d Cir.1996)). Here, the alternative is a complex joinder procedure or thousands of individual trials encompassing all issues in the case. Plaintiff need only demonstrate that a class action would be superior to those methods, and has done so: without a class action, thousands of Washington consumers' damages would go uncompensated due to the small amount of damages, not to mention that the financial cost of conducting thousands of trials would be astronomical.

It is anticipated that State Farm will contend that class certification is inappropriate because of case management issues. However, case management is but one consideration in whether a class action is a superior method of adjudication:

> It must also be remembered that manageability is only one of the elements that goes into the balance to determine the superiority of a class action in a particular case. Other factors must also be considered, as must the purposes of Rule 23, including: conserving time, effort and expense; providing a forum for small claimants; and deterring illegal activities.

1 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS, § 4.32, at 4-129 to -130 (3rd ed.1992).  Furthermore, "if the predominance requirement is met, then the court should not decline to certify the class on manageability grounds alone."   *Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, No. CIV 13-0971 JB/GBW, 2015 WL 6393567, at 26 (D.N.M. Sept. 16, 2015) (citing *Sacred Heart Health Systems, Inc. v. Humana Military Healthcare Servs.,*

*Inc.,* 601 F.3d 1159, 1184 (11th Cir.2010); *Klay v. Humana, Inc.,* 382 F.3d 1241, 1272 (11th Cir. 2004)). Class certification and then resolution of the legality of State Farm's practice is superior to having 3,285 separate decisions and potentially different resolutions of the legality of the practice. Such a process would then involve 3,285 separate appeals in potentially three different appeals courts.  Instead, the plaintiff proposes that one court resolve these predominant issues. This will insure that one court would have the expertise as it relates to the case rather than thousands of separate determinations. Class action is a superior method for resolution of this case.

## VI.    CONCLUSION

Because State Farm engages in a systematic unlawful practice to deny PIP benefits to thousands of Washington consumers and all requirements of CR 23 are met; the Court should therefore grant class certification.

**DATED** this 23RD day of June, 2016.

VAN SICLEN, STOCKS & FIRKINS

/s/ Tyler K. Firkins

By_____

Tyler K. Firkins, WSBA # 20964
Attorneys for Plaintiff