Honorable Richard A. Jones

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE WESTERN DISTRICT OF WASHINGTON

BRETT DURANT, On Behalf of
Himself and all other similarly situated,

Plaintiffs,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a foreign
automobile insurance company,

Defendant.

CASE NO. 2-15-CV-01710-RAJ

**UNOPPOSED MOTION FOR AN
ORDER PRELIMINARILY
APPROVING CLASS ACTION
SETTLEMENT, AMENDING THE
CLASS DEFINITION FOR
SETTLEMENT PURPOSES,
APPROVING AMENDED NOTICE
TO CLASS, ORDERING A STAY,
AND SETTING CRITICAL DATES,
INCLUDING FINAL APPROVAL
HEARING DATE**

**NOTE ON MOTION CALENDAR:**
**October 26, 2018**

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

# TABLE OF CONTENTS

**TABLE OF CONTENTS**…................................................................ ii

**TABLE OF AUTHORITIES**………………………………………….. iv

**MOTION**…..................................................................................... 1

    I.       RELIEF REQUESTED………………………………. 1

    II.      FACTUAL BACKGROUND....................................................... 2

          A.  Nature of the Case………………………………………... 2

          B.  Procedural History………………………………………….. 3

          C.  Settlement Negotiations and Overview of the Settlement…… 5

          D.  Summary of the Proposed Settlement………………………. 6

    III.     ARGUMENT…………………………………………………… 9

          A.  The Proposed Settlement Satisfies the Criteria for Preliminary
              Approval ……………………………………………………. 9

          B.  The Settlement is the Result of a Thorough, Rigorous, and an
              Adversarial Process…………………………………………. 10

          C.  The Settlement Merits Preliminary Approval and Class Members
              Should be Given Notice and an Opportunity to be Heard
              Concerning the Terms of the Settlement……………………. 11

          D.  The Class Definition Should Be Amended Per the
              Settlement Agreement………………………………………… 15

           E.  Plaintiffs' Requested Attorney Fees and Class Representatives
              Incentive Award are Fair and Reasonable……………………. 15

               1.  Class Counsel Attorney Fees and Costs…………………. 15

                  a.   The Results Achieved………………………………. 18

                  b.   Benefits Outside the Class……………………………. 19

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 ● Fax (866) 947-4646

       c.   Complexity of Class……………………………..   19

       d.   Counsels' Skill, Experience and Effort ………….   20

       e.   Additional Factors…………………………………   21

     2.   Incentive Award for the Class Representative……………   21

   F.  Members of the Class Should be Given an Opportunity to
     Request Exclusion…………………………………………   22

   G.  The Proposed Notice Satisfies Rules 23(D) and (E) and
     Due Process………………………………………………   23

IV.     PROPOSED SCHEDULE OF EVENTS …………………………   25

V.     PROPOSED STAY ……………………………………………   26

VI.     CONCLUSION…………………………………………………   26

MOTION FOR PRELIMINARY APPROVAL --iii
CASE NO. 2-15-CV-01710-RAJ .

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

# TABLE OF AUTHORITIES

Cases

*Ambaugh v. French,* 167 Wn. 2d 167 (2009) ............................................................. 13

*Arthur V. Sallie Mae, Inc.,* No. C10-0198JLR, 2012 WL 90101 at *9 (W.D. Wash. Jan. 10, 2012) ....................................................................................................................... 11

*Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) ............................................... 16

*Boyd v. Bank of Am. Corp.,* No SACV 13-0561 DOC, 2014 WL 6473804 at *10 (C.D. Cal. Nov. 18, 2014)) ............................................................................................................... 21

*Churchill Vill. LLC v. GE,* 361 F.3d 566, 576 (9th Cir. 2004) ...................................... 11, 23, 24

*Class Plaintiffs v. Seattle,*
   955 F.2d 1268, 1276 (9th Cir. 1992) .................................................................... 9

*Colesberry v. Ruiz Food Prods., Inc.,* No. 04-5516, 2006 WL 1875444 at *7 (E.D. Cal. June 30, 2006) ....................................................................................................................... 23

*Daly v. Unitrin, Inc.,* 2008 U.S. Dist. LEXIS 46112 (E.D. Wash. June 11, 2008) ..................... 13

*Dees v. Allstate,* 993 F. Supp. 1299, 1310 (W.D. Wash. 2013) ................................... 13

*Fischel v. Equitable Ife Assur. Soceity of U.S.,* 307 F.3d 997, 1006 (9th Cir. 2002) ................. 16

*Franks v. Kroger Co.,* 649 F.2d 1216, 1222-23 (6th Cir. 1981) ................................... 23

*Handschu v. Special Servs. Div.,* 787 F.2d 828, 833 (2d Cir. 1986) ............................ 23

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
   105 Wn.2d 778, 719 P.2d 531 (1986) .................................................................. 13

*Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983) ....................................................... 18

*Ikuseghan v. Multicare Health Sys.,* No. C14-5539 BHS, 2016 WL 4363198 at *3 (W.D. Wash. Aug. 16, 2016) ....................................................................................................... 22

*In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) ...................... 16

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

*In re Apple Computer, Inc. Derivative Litig.*, No. C06-4128 JF (HRL), 2008 WL 4820784 at *4
(N.D. Cal. Nov. 5, 2008) ................................................................................................20

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ..................16, 17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL 4126533 at *5 (N.D. Cal.
Aug. 3, 2016) ................................................................................................................20

*In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 356 (E.D.N.Y. 2010) ..............16, 23

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008)............................16

*In re Pacific Enterprises Securities Litigation,* 47 F.3d 373, 377 (9th Cir. 1995) ....................11

*In re Wash. PUb. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994)................16

*Linney v. Cellular Alaska P'ship,*
151 F.3d 1234, 1238 (9th Cir. 1998) .......................................................................9, 14

*Mendoza v. United States,* 623 F.2d 1338, 1352 (9th Cir. 1980)................................................24

*Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.W. 306, 314 (1950) .............................9, 24

*Nat'l Rural Telecommunications Coop. v. DIRECTTV, Inc.,*
221 F.R.D. 523, 525 (C.D. Cal. 2004) ............................................................................9

*NVIDIA Corp.,* 2008 WL 5382544 at *2 ...................................................................................11

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982)...........................11

*Reichl v. State Farm Mut. Auto. Ins. Co.,* 75 Wn. App. 452, 457-458 (1994) ...........................12

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) .........................................22

*Satchell v. Fed. Express Corp.,* No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13,
2007) .............................................................................................................................10

*Santos v. Camacho,* No. 04-00006, 2007 WL 81868 at *7 (D. Guam Jan. 9, 2007)..................23

*Syed v. M-I LLC,* No. 1:14-742 WBS BAM, 2016 WL 310135, at *9 (E.D. Cal. Jan. 26, 2016)
............................................................................................................................................16

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

*T-Mobile USA Inc. v. Selective Ins. Co. of America,* 2017 U.S. Dist. LEXIS 99857 (W.D. Wash. June 27, 2017) ................................................................................................................. 12

*T-Mobile USA Inc. v. Selective Ins. Co. of America,* 2017 U.S. Dist. LEXIS 174501 (W.D. Wash. Oct. 19, 2017) ..................................................................................................... 12

*Torrisi v. Tucson Elec. Power Co,* 8 F.3d 1370, 1374-75 (9th Cir. 1993) ................................. 26

*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 (9th Cir. 2002) ................................. 16, 17, 18

*Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2561 (2011) ................................................ 12

*Wilson v. Venture Fin. Grp., Inc.,* No. C09-5768BHS, 2011 WL 219692, at *2 (W.D. Wash. Jan. 24, 2011) ......................................................................................................... 10

*Young v. Polo Retail, LLC,* No. C-02-4546 VRW, 2006 WL 3050861 at *5 (N.D. Cal. Oct. 25, 2006) ................................................................................................................... 9, 10

<u>Rules</u>

FRCP 23 ................................................................................................................. 23, 24

FRCP 23(c)(2)(B) ............................................................................................................ 22

FRCP 23(e) ..................................................................................................................... 1, 23

FRCP 23(e)(1) ................................................................................................................. 23

FRCP 23(f) ......................................................................................................................... 4

**Washington Administrative Code**

WAC 284-30-395 .................................................................................................................. 5

WAC 284-30-395(1) ...................................................................................................... 2, 3, 20

**Other**

*7B Federal Practice & Procedure,* §797.6 (3d ed. 2015) ........................................................ 23

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 ● Fax (866) 947-4646

*Manual for Complex Litigation*, Second § 30.44 (1985) ............................................................. 9

*Manual for Complex Litigation*, Fourth § 14.121 (2004) ......................................................... 17

*Newberg on Class Actions,* § 11.25 (1992) ............................................................................ 10

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 ● Fax (866) 947-4646

# I.   RELIEF REQUESTED

Plaintiff Brett Durant ("Plaintiff") and defendant State Farm Mutual Automobile Insurance Company ("State Farm"; Plaintiff and State Farm collectively the "Parties") have entered into a Settlement Agreement and Release dated September 28, 2018 (the "Agreement") to resolve all claims in this Litigation for the amount of $18,500,000.00 on the terms set forth in the Agreement (the "Class Action Settlement").  See Exhibit A to the Dec. of Firkins.

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiff now moves for entry of the proposed order, submitted herewith, which: (1)  grants preliminary approval of  the proposed Class Action Settlement; (2) amends the class definition for settlement purposes as set forth in the Agreement (the "Settlement Class") and certifies the Settlement Class; (3) approves the form and manner of  Notice to Settlement Class members of the Class Action and Class Action Settlement (the "Notice") and directs the dissemination of the Notice; (4) sets important dates including an opt-out deadline, and a deadline to file objections, if any, to the Class Action Settlement; (5) approves the retention of Rust Consulting, Inc. as Settlement Administrator;  (6) schedules a date and time for a Final Approval Hearing to consider final judicial approval of the proposed Class Action Settlement; and (7) orders a stay of all deadlines, dates and proceedings unrelated to the Class Action Settlement pending the Final Approval Hearing.

Plaintiff submits that the proposed settlement is a good result for the Settlement Class and should be preliminarily approved. The settlement, which was achieved after a comprehensive pre-discovery investigation by Settlement Class Counsel, significant formal discovery, analysis by expert consultants, aggressive motion practice, class certification, an appeal of class certification, resolution of certified questions by the Washington State Supreme

MOTION FOR PRELIMINARY APPROVAL --1
CASE No. 2-15-cv-01710 -RAJ .

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

Court, and mediator-assisted settlement negotiations, provides a present recovery for the Settlement Class in the face of challenges to any recovery after continued litigation and trial. In consideration for the payment of $18,500,000.00, the settlement will result in the dismissal of the Complaint for Damages, filed on April 9, 2014 (the "Complaint") with prejudice, and a release of claims against State Farm. For the reasons set forth herein, Plaintiff respectfully requests that the Court grant this motion.

## II. FACTUAL BACKGROUND

### A. Nature of the Case

This class action arises from a state insurance regulation, promulgated in 1997, which states that there are only four reasons for which an insurer may deny, limit or terminate PIP coverage: if treatment is not reasonable, necessary, related to the accident, or incurred within three years of the accident. WAC 284-30-395(1). The regulation declares: "these are the only grounds for denial, limitation, or termination" of PIP benefits. *Id*. (emphasis added). State Farm has a clause in the PIP coverage provision of its Washington state auto policy, which requires that treatment be "essential in achieving maximum medical improvement" (MMI standard). Relying on this policy provision, Plaintiff alleges that State Farm systematically adjusted PIP claims almost exclusively on the MMI standard, and thereby violated Washington insurance regulations in doing so.

Brett Durant, the class representative, was a State Farm insured. His PIP coverage for chiropractic and massage therapy was terminated by State Farm on the basis that his chiropractor had given an MMI date in response to a form letter inquiry from State Farm. After chiropractic and massage benefits were terminated, the chiropractor indicated to State Farm that

MOTION FOR PRELIMINARY APPROVAL --2
CASE NO. 2-15-CV-01710 -RAJ .

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

Mr. Durant needed additional treatment from time to time for injury-related exacerbations, to maintain function, and to reduce pain. Despite this indication by Mr. Durant's chiropractor, State Farm denied chiropractic and massage therapy bills after the MMI date, on the basis that treatment was not essential in achieving MMI. State Farm rejected the argument that coverage was required under WAC 284-30-395(1) because there was no finding that the treatment was not reasonable, necessary or related.

### B. Procedural History

In April 2014, Plaintiff filed his Complaint in this case in state court.  Plaintiff alleged claims for breach of contract, bad faith, and statutory claims for violation of Washington's Consumer Protection Act ("CPA") and Insurance Fair Conduct Act ("IFCA").  He also sought emotional distress, "pain and suffering" and treble damages under his statutory claims, and certification of a class of all Washington insureds whose PIP benefits were denied, terminated or limited on the ground that they had reached MMI.

State Farm moved to dismiss the state court Complaint on the ground that its consideration of MMI could not support liability, because, while the regulation did not define "necessary," its policy did—in terms of MMI.  In support of that motion, State Farm recounted the policy form filing and approval history.  State Farm additionally sought dismissal under a theory that Mr. Durant had failed to exhaust his administrative remedies. The state court denied State Farm's motion.

Extensive discovery was conducted, and the Plaintiff learned that claims involving MMI non-payments could be ascertained through the use of three Reason Codes—SF 546, SF 536 and SF 537.

MOTION FOR PRELIMINARY APPROVAL --3
CASE NO. 2-15-CV-01710 -RAJ .

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

State Farm produced 60 randomly selected sample claim files involving those Reason Codes, which consisted of more than 60,000 pages. The Plaintiff hired two experts to review the claim files and evaluate the amounts of allegedly improperly denied PIP claims, or damages.

Plaintiff then moved for class certification in state court. State Farm opposed Plaintiff's motion on numerous grounds. Because the motion for class certification revealed that the claims exceeded $8,000,000.00 in potential damages, State Farm removed the case to federal court pursuant to CAFA. The Plaintiff opposed removal. This Court denied the Plaintiff's motion to remand. Thereafter, the Plaintiff renewed its motion for class certification in federal court. The District Court granted Plaintiff's class certification motion on March 9, 2017. The District Court also appointed Class Counsel.

Subsequent to class certification, and after a series of motions, the District Court then certified two questions to the Washington Supreme Court, which accepted review.

Meanwhile, State Farm moved for reconsideration of the class certification ruling. The District Court denied reconsideration but ordered the parties to stipulate to "narrower language" for the class definition. State Farm filed an FRCP 23(f) petition for review of the Court's order on class certification with the Ninth Circuit Court of Appeals. The appeal was rejected.

The parties thereafter stipulated to the following revised class definition which includes only two Reason Codes (SF546 and SF537):

State Farm insureds in the state of Washington who, from April 19, 2008 to the present, had a Personal Injury Protection (PIP) claim for medical or hospital benefits denied, terminated or limited by State Farm Mutual Automobile Insurance Company (State Farm) on the grounds that they had reached Maximum Medical Improvement, using an Explanation of Review form referencing Reason Codes SF546 or SF537.

MOTION FOR PRELIMINARY APPROVAL --4
CASE NO. 2-15-CV-01710 -RAJ .

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

In June 2018, the Washington Supreme Court issued its opinion holding that MMI did not comport with WAC 284-30-395.  In issuing its ruling, the Washington Supreme Court found that the OIC's prior approval of State Farm's MMI language did not prevent it from finding the language violated the OIC's regulation.

Subsequently, the District Court issued an order approving a form of class notice and ordering State Farm to provide an updated list of class members.  On July 2, 2018, State Farm produced a list of all claims involving PIP non-payments based on Reason Code SF546 or SF537 for medical services provided between April 19, 2008 and June 15, 2018[1], including participant names and addresses.  That list included about 4,117 unique names.

On August 21, 2018, the parties, using professional mediator Robert Kaplan, mediated the dispute in San Diego, California and reached a written settlement that is explained in greater detail below.

## C. Settlement Negotiations and Overview of the Settlement

After the Supreme Court of Washington issued its opinion, the parties began to discuss various potential frameworks for settlement, and further discussed potential mediators. Eventually the parties agreed to an all-day mediation with a nationally-renowned mediator, Robert Kaplan, from San Diego, California.  The mediation took place on August 21, 2018 in San Diego.

All negotiations were at arm's length and well informed by: (i) extensive discovery including substantial document productions of 60 claim files and claims handling practices, training materials and manuals; (ii) additional discovery that included depositions of a claims

---

[1] State Farm asserts that after the Supreme Court decision it immediately terminated its use of the MMI standard, and therefore the parties have agreed for purposes of settlement that the class ends as of June 15, 2018.

MOTION FOR PRELIMINARY APPROVAL --5
CASE NO. 2-15-CV-01710 -RAJ .

handler, a supervisor, an IT professional, and a variety of other witnesses; (iii)  Plaintiff's expert's analysis of the thousands of pages of claim files and claims handling methods,; (iv) extensive motions materials and multiple appeals, including briefing to the Supreme Court of Washington on two certified questions; and (v) statistical analysis by Plaintiff's expert regarding the amounts of denied claims, i.e., damages.

The mediation was adversarial and contentious and took the entire day to conclude. In the end, the parties agreed to the Plaintiff's lump sum compensation proposal as it better insured maximum participation and compensation by class members, and is less expensive to administer, than a "claims made" settlement.

### D.   Summary of the Proposed Settlement

According to the mediated settlement, the settlement will be funded by a $18,500,000.00 cash payment by State Farm, which will be paid into a qualified distribution account following the Court's final approval of the settlement (the "Gross Settlement Amount"). The detailed terms of the settlement are set forth in the Agreement, which is attached to the Declaration of Tyler Firkins as Exhibit A.

The $18.5 million, less attorneys' fees, costs and administrative expenses awarded by the Court, and any tax expenses payable from the Gross Settlement Amount[2] (the "Net Settlement Amount"), will be distributed to Settlement Class members who do not opt-out of the Class Action Settlement in accordance with the Plan of Allocation as attached to the Settlement Agreement and described in Exhibit A to the Dec. of Firkins. The Plan of Allocation is based on a distribution formula developed by Plaintiff's statistical expert, Dr. Paul Sampson

---

[2] After consultation with Rust Consulting it is not anticipated that there will be any substantial tax issues, or tax reporting issues regarding the settlement or payments to Class Member.

MOTION FOR PRELIMINARY APPROVAL --6
CASE NO. 2-15-CV-01710 -RAJ  .

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

(the "Distribution Formula").  [See Exhibit A to Firkins Dec.; Sampson Dec.].  The Distribution Formula reflects Plaintiff's theory of damages and treats all Settlement Class members in a fair and equitable fashion.  Under the Distribution Formula, each Settlement Class member will be paid that percentage or fraction of the Net Settlement Amount that such Settlement Class member's denied PIP medical and hospital benefits claim represents in relation to the total amount of denied claims under the three Reasons Codes, SF546, SF537 and SF536, multiplied by the Net Settlement Amount.  [Id.]  Each Settlement Class member's fractional award under the Distribution Formula will exceed 100% of their unpaid PIP medical or hospital benefits claim.

The Plan of Allocation will be carried out by Class Counsel and Rust Consulting, Inc. (Settlement Administrator hereafter), a nationally-recognized settlement/claims administrator. The Settlement Administrator will first set up a tax identification number (TIN) for the settlement.  Using that TIN, the Settlement Administrator will set up a bank account to receive the Gross Settlement Amount.   The Settlement Administrator will handle any necessary tax reporting.  Once the Class Action Settlement is finally approved and the payment amounts due each participating Settlement Class member are established by the Distribution Formula and approved by Class Counsel, the Settlement Administrator will print and mail the payments.  The Settlement Administrator will provide a payment register including a listing of all check payees, check numbers, and their corresponding payment amounts.  If a check is presented that does not match the file, the bank will contact the Settlement Administrator to determine whether it is appropriate to clear the check.   Settlement Class Counsel will investigate any distribution checks that are returned or not cashed after 90 days.  Settlement Class Counsel will make every

MOTION FOR PRELIMINARY APPROVAL --7
CASE NO. 2-15-CV-01710 -RAJ .

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

reasonable effort to make sure each Settlement Class member receives payment.  Any amounts unclaimed shall escheat to the state in which the respective Settlement Class member resides and shall not revert to State Farm.

Settlement Class Counsel will apply for a 25% contingent fee based on the recovery of the common fund.  The fee is appropriate in this case given the extraordinary risk in the case, the extraordinary results obtained, and the fact that the litigation has been pending for nearly five years and has involved multiple appeals.

The Plaintiff is also seeking an incentive award of $10,000.00 for the Class Representative in this matter.  Mr. Durant and his wife were subjected to discovery, subpoenas and depositions in this matter.  Mr. Durant also worked with Class Counsel on multiple motions and was very actively involved in obtaining this extraordinary relief for the Class Members.

As set forth below, the settlement meets the standards for preliminary approval because it falls well within the range of possible approval, was the product of extensive arm's-length negotiations between experienced counsel and has no obvious deficiencies.  The Plaintiff proposes that the original class action notice be combined with the notice of settlement, as set forth in the agreed Class Notice and Notice of Settlement.  Exhibit C to the Dec. of Firkins.

## II. ARGUMENT

### A.  The Proposed Settlement Satisfies the Criteria for Preliminary Approval

Judicial policy strongly favors settlement of class actions. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998).   Approval   of   a class action settlement normally   proceeds   in   two stages: preliminary approval, followed by notice to the class, and then final approval. *See, e.g.,*

MOTION FOR PRELIMINARY APPROVAL --8
CASE NO. 2-15-CV-01710 -RAJ .

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). This case is now at the first stage of the process. Standards governing whether preliminary approval should be granted have "both a procedural and a substantive component." *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006). The court in *Young*, quoting from the *Manual for Complex Litigation* and *Newberg on Class Actions*, explained the procedure as follows.

> "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing . . . ." *Manual for Complex Litigation*, Second §30.44 (1985). In addition, "[t]he court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid." *Newberg on Class Actions* §11.25 (1992).

2006 WL 3050861, at *5 (omission in original); *see also Wilson v. Venture Fin. Grp., Inc.*, No. C09-5768BHS, 2011 WL 219692, at *2 (W.D. Wash. Jan. 24, 2011) (granting preliminary approval after finding proposed settlement was non-collusive, had no obvious defects, and was within the range of possible settlement approval). Applying the standards set forth above, the proposed settlement should be preliminarily approved.

**B.  The Settlement Is the Result of a Thorough, Rigorous, and an Adversarial Process**

The procedural and settlement history of this case demonstrate an arm's length, adversarial relationship between the parties. The settlement discussions were contentious, with the parties far apart. However, the participation of a skilled mediator resulted in the parties reaching a settlement. Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express*

MOTION FOR PRELIMINARY APPROVAL --9
CASE NO. 2-15-CV-01710 -RAJ .

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

*Corp.*, No. C03-2659 SI, 2007 WL 1114010, at \*4 (N.D. Cal. Apr. 13, 2007); *see also In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003WL 22244676, at \*4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable"). This presumption is particularly apt given the lump sum settlement in this case, which insures that Settlement Class members will be paid without having to fill out claim forms, thereby ensuring a higher participation and compensation rate.

   **C.      The Settlement Merits Preliminary Approval and Class Members Should Be Given Notice and an Opportunity to Be Heard Concerning the Terms of the Settlement**

   "[A]t this preliminary approval stage, the court 'need only determine whether the proposed settlement is within the range of possible approval.' " *Arthur v. Sallie Mae, Inc.*, No. C10-0198JLR, 2012 WL 90101, at \*9 (W.D. Wash. Jan. 10, 2012); *NVIDIA Corp.*, 2008 WL 5382544, at \*2. To determine whether the Settlement is "within the range of possible approval," the Court must evaluate whether the Settlement is "fair, reasonable, and adequate" and ensure that the agreement is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Pacific Enterprises Securities Litigation,* 47 F.3d 373, 377 (9th Cir. 1995).

   This settlement, which requires $18.5 million to be paid by State Farm, is clearly within such a range and merits consideration by all of the members of the Class. The settlement represents a recovery to Settlement Class members of 100% of their actual denied claims, plus some amount of interest. Further, the settlement method ensures that all Settlement Class

MOTION FOR PRELIMINARY APPROVAL --10
CASE NO. 2-15-CV-01710 -RAJ .

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

members who do not opt-out of the Class Action Settlement will recover, rather than only those that fill out forms, thus ensuring nearly 100% class participation.

The fairness and adequacy of the settlement is further underscored by taking into account the obstacles the Settlement Class faces in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. *See Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004) (citing risk, expense, complexity, and likely duration of further litigation as factors supporting approval of settlement).

In the absence of this settlement, the Settlement Class is faced with substantial litigation risks. It is anticipated that State Farm would, in the absence of a settlement, make a great number of arguments, including motions to decertify the Class based on the District Court's "grave concerns" with manageability. State Farm will argue numerous legal and substantive issues. As an example, State Farm will contend that two recent Western District of Washington cases undermine the strength of Plaintiff's claims. *T-Mobile USA Inc. v. Selective Ins. Co. of America*, 2017 U.S. Dist. LEXIS 99857 (W.D. Wash. June 27, 2017) (Robart, J.); *T-Mobile USA Inc. v. Selective Ins. Co. of America*, 2017 U.S. Dist. LEXIS 174501 (W.D. Wash. Oct. 19, 2017) (Robart, J.). Pursuant to these cases, State Farm will contend that the class action is not manageable because each individual insured still needs to prove that they are entitled to coverage.

While the Settlement Class has arguments it believes will likely defeat these contentions, these arguments create risk for the Settlement Class in sustaining the matter as a class action, and prevailing on the class damages theory.

State Farm will also claim it has the due process right to litigate its affirmative defenses,

MOTION FOR PRELIMINARY APPROVAL --11
CASE NO. 2-15-CV-01710 -RAJ .

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

including settlement and release. *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2561 (2011). At least two of the 60 sample claims produced during discovery involved written releases of State Farm, which may extend to all claims alleged in this case. [Dkt. 39, ¶ 18.] Sixteen others involved insureds who settled with the third-party tortfeasor. [Dkt. 39, ¶ 14.] State Farm asserts that under Washington law, a PIP claimant that receives full compensation through settlement with the tortfeasor is barred from recovering further PIP benefits under their contract. *Reichl v. State Farm Mut. Auto. Ins. Co.*, 75 Wn. App. 452, 457-458 (1994). State Farm will argue that application of these and other affirmative defenses cannot be resolved on a class-wide basis.

State Farm will also argue against the various legal claims. As an example, State Farm will contend that Plaintiff cannot establish the essential elements of his CPA claim. The CPA requires a plaintiff to satisfy five elements: (1) an unfair or deceptive act or practice, (2) occurring within trade or business, (3) affecting the public interest, (4) injuring the plaintiff's business or property, and (5) a causal relation between the deceptive act and the resulting injury. *Hangman Ridge Training Stables v. Safeco Title Ins. C*o., 105 Wn.2d 778, 784 (1986). A violation of certain statutes alone is sufficient to satisfy the first two elements as a "per se" violation of the CPA. *Id.* at 785. However, even under a per se theory, the last three elements must be established independently. *Id.*; *Daly v. Unitrin, Inc*., 2008 U.S. Dist. LEXIS 46112 (E.D. Wash. June 11, 2008).

State Farm will contend that the fourth element cannot be satisfied, because unpaid medical bills do not amount to "injury to business or property." In *Ambach v. French*, 167 Wn.2d 167 (2009), the Washington Supreme Court held that the CPA's "injury to business or

property" language "is restrictive," and did not encompass medical bills incurred as a result of personal injury. *Id.* at 172, 169. State Farm will also argue that *Ambach* made clear that "payment for medical treatment … does not transform medical expenses into business or property harm." *Id.* at 175. Relying on *Ambach*, numerous District Court decisions in Washington have recently held that claims against an auto insurer for wrongfully denied medical bills do not satisfy the "injury to business or property" requirement under the CPA. *Dees v. Allstate*, 933 F.Supp.2d 1299, 1310 (W.D. Wash. 2013) (Robart, J.)

While again the Plaintiff has substantial arguments pertaining to these contentions by State Farm, such class-wide defenses represent risk to the Settlement Class, and represent uncertainty as to the fact of recovery, and when a recovery might happen. The substantial settlement payments represent more than the total losses of the class members as ascertained by the updated spreadsheets, and statistical analysis.

State Farm will likely advance a host of additional arguments described in its mediation materials. It is unnecessary here to list them all, but it is sufficient to say that these arguments create risks for the Plaintiff Class in continuing this litigation. Instead, this settlement provides immediate payment and compensation for Settlement Class members at more than 100% of the actual unpaid medical bills (as currently estimated).

Taking into account the risks of surviving summary judgment and decertification motions and in proving liability and damages at trial, the proposed $18,500,000.00 settlement is an exceptional result for the Class. The Ninth Circuit has pointed out that the very essence of settlement is compromise and that a settlement can be acceptable even though it may amount to only a fraction of the potential recovery. *Linney*, 151 F.3d at 1242. However, in this case the

settlement pays 100% of the actual denied claims suffered by the Settlement Class members, and also includes some interest. This recovery is significantly above the average recovery in class action settlements.  See Firkins Dec and Firkins' Dec. Ex. D.  Thus, the proposed Class Action Settlement meets the standards for preliminary and final approval.

Additionally, the Plaintiff obtained State Farm's agreement to include Washington consumers who had not yet been made a part of the certified class in federal court—those whose bills were rejected under Reason Code SF536.

**D.     The Court Should Certify a Settlement Class that Amends the Certified Class Definition Per the Settlement Agreement.**

As mentioned above, the Court previously granted Plaintiff's motion for class certification under Rule 23(b)(3), finding that Plaintiff had met all of the requirements set forth in Rule 23(a) and Rule 23(b)(3) for purposes of certification.  [Dkt. 50]  The Court later approved of the parties' stipulation defining the certified class to include State Farm insureds in Washington who, from April 19, 2008 to the present had a PIP claim denied terminated or limited on the grounds that they had reached MMI, using an Explanation of Review form referencing Reason Codes SF546 or SF537.  [Dkt. 81].  Plaintiff now requests that the Class Definition be amended slightly so as to conform to the Settlement Agreement, and that the Court certify for Settlement purposes the following class definition:

> State Farm insureds in the state of Washington who, from April 9, 2008 to June 15, 2018, had a Personal Injury Protection (PIP) claim for medical or hospital benefits denied, terminated or limited by State Farm Mutual Automobile Insurance Company (State Farm) on the grounds that they had reached Maximum Medical Improvement, using an Explanation of Review form referencing Reason Codes SF546, SF536 or SF537.

MOTION FOR PRELIMINARY APPROVAL --14
CASE NO. 2-15-CV-01710 -RAJ .

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

This definition only differs from the certified Class Definition in two ways: (1) it adds Reason Code SF536 claims; and (2) revises the date range.  During settlement negotiations, the parties agreed that claimants whose medical bills were denied using Reason Code SF536 should be included in the class and share in the settlement proceeds.  These individuals were previously excluded from the class because the random sample of claim files did not include a statistically valid sample of SF536 claims for expert analysis.  Due to the similarity between SF537 and SF536, it is equitable and promotes judicial economy to include Reason Code SF536 denials in the settlement class.

The Parties also agreed that the class period should be revised to:  (1) commence on "April 9, 2008" (the date of filing of the Complaint, rather than April 19, 2008 (a typographical error)); and (2) end on "June 15, 2018", since State Farm ceased using MMI as a basis to deny, terminate or limit PIP medical or hospital benefits after that date.

The Court's prior finding that class treatment of Plaintiff's claims met the requirements of Rule 23(a) and (b)(3) applies equally to the only slightly amended class definition.  [Dkt. 50]. Among other things, the Court found that: (1) the class "satisfies the numerosity requirement of Rule 23(a)" [Dkt. 50, p. 7:17]; (2) "Plaintiff satisfies the commonality requirement of Rule 23(a) because he alleges that State Farm engaged in the same conduct for each class member by denying claims based on the MMI standard," [Dkt. 50, p. 8:17-19]; (3) "Plaintiff satisfies the typicality requirement because the course of conduct leading to his alleged injury—that State Farm denied coverage based on the MMI standard—is the same for all potential class members" [Dkt. 50, pp. 9:11-14]; and (4) Plaintiff was an adequate class representative under Rule 23(a)(4).  [Dkt. 50, p. 10:17-23].  The Court also found that resolving the common question of

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

"whether State Farm's use of the MMI standard to deny claims is unreasonable" would predominate over individualized questions [Dkt. 50, p. 11:8-19], and that a class action was superior to other means of resolving the claims alleged under Rule 23(b)(3).  [Dkt. 50, p. 13:5]. Although the Court noted a concern regarding manageability "in this case moving forward," [Dkt. 50, p. 11, fn 5], manageability is not an issue with respect to a settlement class, because settlement avoids the need for trial.  *Amchem Products v. Windsor*, 521 U.S. 591, 620 (1997); *Span v. J.C. Penney Corp.*, 314 F.R.D. 312,318 (C.D. Cal. 2016).

**E.**     **Plaintiffs' Requested Attorney Fees and Class Representative Incentive Award are Fair and Reasonable.**

**1.**     **Class Counsel attorney fees and costs**

This Court should preliminarily approve this Class Action Settlement including the proposed attorney fee, subject to final approval.  Class Counsel whose efforts create a common fund of money for class members are entitled to a payment from that fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *Syed v. M-I LLC*, No. 1:14-742 WBS BAM, 2016 WL 310135, at *9 (E.D. Cal. Jan. 26, 2016) (quoting *Boeing*). Put another way, "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("WPPSS"). Moreover, awards of fair attorney's fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on

entire classes of people, and to discourage future alleged misconduct of a similar nature. *See, e.g., In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 356 (E.D.N.Y. 2010).

The district court has the discretion to award attorneys' fees as either a percentage of the common fund or by using the lodestar method, depending on the circumstances. Courts most often use the percentage method. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (stating "use of the percentage method in common fund cases appears to be dominant" and its "advantages . . . have been described thoroughly by other courts."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (approving use of percentage method); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) ("this court concludes that in class action common fund cases the better practice is to set a percentage fee"). This percentage method is particularly appropriate where, as here, "the benefit to the class is easily quantified." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Whichever method is used, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth.*, 654 F.3d at 941.

The Court should use the percentage-of-the-common fund method here for the same reasons most other courts employ that method. First, percentage approaches are the standard contingent-fee arrangements in non-class action cases and awarding them in cases like these acts as a strong incentive to attorneys to take risky cases such as this. Moreover, the percentage method aligns the interest of the attorney and client, while avoiding the downsides of the lodestar method. It provides class counsel with a strong incentive to effectuate the maximum possible recovery in the shortest amount of time, which is a tangible benefit to class members

MOTION FOR PRELIMINARY APPROVAL --17
CASE NO. 2-15-CV-01710 -RAJ .

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

and the judicial system. The "lodestar method is difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation" and "creates inherent incentive to prolong the litigation until sufficient hours have been expended." Manual for Complex Litigation (Fourth) § 14.121 (2004); *see also Vizcaino*, 290 F.3d at 1050 n.5 ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee . . . ."); *Bluetooth*, 654 F.3d at 942 (use of the percentage method avoids " 'the often more time-consuming task of calculating the lodestar' ").

In determining, the reasonable percentage of recovery to apply, the Court should consider all of the circumstances. *Bluetooth*, 654 F.3d at 941; *Vizcaino*, 290 F.3d at 1048. Factors to consider include:

- the quality of the results obtained;
- the size of the recovery;
- whether the litigation created benefits outside of the monetary recovery for the class;
- whether the case was pursued in the absence of supporting precedents;
- expertise exhibited by counsel in handling of the case;
- the risk counsel faced of losing the case;
- the complexity of the case; and
- the length of the litigation.

*Vizcaino*, 290 F.3d at 1048-49.

For purposes of preliminary approval, the Plaintiff submits that consideration of these factors supports an attorneys' fees award of 25% of the common fund, which is $4,625,000. The reasonableness of this fee is supported by the excellent quality of the result obtained.

### a.    The Results Achieved

One of the most important factors in determining the reasonableness of a fee is the result

MOTION FOR PRELIMINARY APPROVAL --18
CASE NO. 2-15-CV-01710 -RAJ .

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

achieved for the class. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Vizcaino*, 290 F.3d at 1048.  Here, Plaintiff brought this case to accomplish two goals: stopping the challenged practice and obtaining compensation for the Class.  Plaintiff has succeeded in both.

First, the proposed settlement expands the certified class. The settlement includes not only those insureds who had medical bills denied using the reason codes included in certified class (SF546 and SF537), but also adds reason code SF536. This brings into the settlement claimants who had medical bills denied based on the results of a records review.

The settlement covers *all* medical bills denied under these three reason codes for over *ten years*, to include April 9, 2008 to June 15, 2018. According to preliminary calculations, Settlement Class members will receive 100% of their actual improperly unpaid medical bills, even after attorneys' fees, costs and administrative fees. See Declaration of Firkins.  Moreover, there are over 4,000 Washington consumers who will be benefitted by this substantial settlement.  Therefore, the results obtained for the class are well above the nominal amounts sometimes seen in class actions, and according to a certain study are at the very highest range of recoveries.  See Exhibit D to Firkins declaration.

However, the results obtained by Settlement Class Counsel are more than just monetary. State Farm has ended its practice of adjusting PIP claims using the MMI standard.

### b.    Benefits Outside the Class

The work performed by Plaintiff's counsel in this matter has had a tangible benefit not only to members of the class who will receive monetary awards from the common fund, but also to all persons in the state of Washington who receive PIP benefits through their automobile

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

insurers.  In the wake of the Washington Supreme Court's decision, State Farm has ended its practice of using the MMI standard to adjust PIP claims.  Other insurers such as Allstate have followed suit.  Firkins declaration.  Further, the decision in *Durant v. State Farm* means that from this date forward, no insurer in the state of Washington will not be able to deny PIP benefits because treatment is "palliative" or not "curative."  This will result in fewer denied benefits to all Washington insureds Therefore, the settlement and proposed fee is appropriate for preliminary approval.

### c.        Complexity of Case

This case raised a host of complex issues with -- in many instances -- relatively few useful precedents, unlike fields such as securities fraud and antitrust where caselaw is far more developed.  To prevail, Plaintiff needed to establish, in addition to the elements of his claims under IFCA and the CPA, that: (1) the MMI standard is not consistent with WAC 284-30-395(1), a regulation that had not been construed by any court; and (2) that the MMI standard was not consistent with the terms "reasonable" and "necessary," neither of which is defined by regulation. The case also raised numerous technical issues for class certification, particularly as it related to how the class should be defined, the manageability of the class and whether causation could be established on a class level.  In order to certify the class in this matter, Plaintiff had to engage in pre-certification discovery, which State Farm resisted. These issues are complex, and required in-depth factual discovery, expert analysis, extensive document review, and legal analysis.

Courts have often found that complex cases merit an upward adjustment to the 25 percent benchmark. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL

4126533, at *5 (N.D. Cal. Aug. 3, 2016); *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 WL 4820784, at *4 (N.D. Cal. Nov. 5, 2008). Certainly, a complex case such as this one does not merit any reduction to the requested fee.

### d. Counsels' Skill, Experience and Effort

The Court is in the best position to evaluate the counsel's skill in the prosecution of this particular action. Much of counsels' efforts, however, have taken place outside of the courtroom itself, conducting the initial investigation of the case, crafting the arguments that formed the basis for the numerous pleadings filed in this matter, negotiating discovery disputes, organizing and conducting the review of the thousands pages of documents produced by Defendant and obtained from public records requests, preparing for and conducting depositions of key witnesses, preparing and defending Plaintiff's deposition, consulting with and defending the depositions of two experts, working with a mediator to negotiate the proposed settlement, further negotiations to finalize the terms of the settlement, and working with State Farm on numerous issues related to notice, claims processing and the development of an fair, reasonable and appropriate plan of allocation. Settlement Class Counsel devoted hundreds of attorney hours over the course of five years. This represented a very significant commitment of resources, particularly since Mr. Firkins' firm has only four litigation attorneys and Mr. Nauheim is a solo practitioner. Compare *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561- DOC, 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014) (upwards adjustment to benchmark warranted where "[b]oth of the firms representing the Class are small firms with fewer than fifteen attorneys. Firms of this size face even greater risks in litigating large class actions with no guarantee of payment.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

### e.    Additional Factors

The 25% fee is also warranted for preliminary approval based on the length of the litigation and the risk of the case. As detailed above, Class Counsel's efforts began five years ago, when Mr. Nauheim began to research the issue of a potential class action, and then contacted Mr. Firkins. A great amount of time was invested even before filing suit, in developing legal arguments and strategy and drafting pleadings, motions and discovery.

In summary, the proposed 25% contingent fee from the common fund created by Class Counsel's efforts merit consideration of final approval and should be preliminarily approved by this Court.

### 2.    Incentive award for the Class Representative.

This Court should also preliminarily approve a $10,000.00 incentive award for Mr. Durant.  Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).  Mr. Durant and his wife were subjected to discovery, subpoenas and depositions in this matter.  Mr. Durant also worked with Settlement Class Counsel on multiple motions, and was very actively involved in obtaining this extraordinary relief for the Class Members.  Given the amount of total recovery, an award of $10,000 to Mr. Durant is more than fair.  *See Ikuseghan v. Multicare Health Sys.*, No. C14-5539 BHS, 2016 WL 4363198, at *3 (W.D. Wash. Aug. 16, 2016) (approving $15,000 incentive award where settlement fund totaled $2.5 million).

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

### F.  Members of the Class Should Be Given an Opportunity to Request Exclusion

This Court previously approved a class notice that allowed a time in which class members could request exclusion.  The proposed amended Notice includes many of the same provisions previously approved by this Court, expanded to include Reason Code SF536 claims. Notice of any proposed class action settlement should also advise members of the Class of the method for requesting exclusion from the Class, the time within which they can make such decision, the manner in which they can advise the Settlement Administrator of their decision to request exclusion, and the date and time of the final approval hearing. *See* Fed. R. Civ. P. 23(c)(2)(B).   The proposed amended Notice, attached to the proposed Preliminary Approval Order as Exhibit A, meets all of these requirements.  *Id.*

### G.  The Proposed Notice Satisfies Rules 23(D) and (E) and Due Process

Rule 23(e) requires that notice of a proposed class action settlement be provided "in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Rule 23(e) notice is designed to apprise class members of the key terms of the settlement and of their rights in connection with the settlement. *See Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (the notice should "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard").

The Court has substantial flexibility and discretion to determine the method of providing this notice. Indeed, "Rule 23 essentially gives the court complete discretion as to the manner of service of settlement notice." *Santos v. Camacho*, No. 04-00006, 2007 WL 81868, at *7 (D. Guam Jan. 9, 2007) (citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir.

MOTION FOR PRELIMINARY APPROVAL --23
CASE NO. 2-15-CV-01710 -RAJ .

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

1981)); *accord Colesberry v. Ruiz Food Prods., Inc.*, No. 04-5516, 2006 WL 1875444, at *7

(E.D. Cal. June 30, 2006); *see also Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir.

1986); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 345 (E.D.N.Y. 2010); 7B

Federal Practice & Procedure § 1797.6 (3d ed. 2015) (under Rule 23(e), "[t]he court has

complete discretion in determining what constitutes a reasonable notice scheme, both in terms

of how notice is given and what it contains").

The proposed method of notice is to directly mail the Notice to the Settlement Class

members, as determined from State Farm's records and a search of the National Change of

Address ("NCOA") Database.  State Farm is required to maintain records regarding all claims

and has done so.  The administrator, Rust Consulting, will then check the addresses for updates

through the US Post Office using a service they have developed in partnership with the USPS.

Any mail that is returned will be catalogued, and investigation will be made by both Class

Counsel and Rust Consulting for an appropriate address, and the notice will be re-sent

thereafter.

The Notice to be mailed to Settlement Class members will include a description of the

Class Action, a summary of the terms of the Class Action Settlement, the date of the Final

Approval Hearing, how to obtain more information, and an explanation of Settlement

Class members' right to object to the Class Action Settlement. The Notice also provides

Settlement Class members with the opportunity to opt out of the Class Action Settlement

pursuant to Rule 23. The Notice will also be published on the website established for this

lawsuit, *www.durantvstatefarm.com,* and will be mailed or emailed to any Settlement

MOTION FOR PRELIMINARY APPROVAL --24
CASE NO. 2-15-CV-01710 -RAJ .

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

Class member who requests a copy by mail, email or telephone prior to the Final Approval Hearing.

Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Mendoza v. United States*, 623 F.2d 1338, 1352 (9th Cir. 1980). The proposed method of notice is appropriate.

The form and substance of the notice is sufficient. "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill.*, 361 F.3d at 575 (quoting *Mendoza*, 623 F.2d at 1352). The proposed  Notice describes in plain English the terms of the settlement, the maximum counsel fees and expenses that will be sought, the procedure for requesting exclusion from the Settlement Class, the procedure for objecting to the settlement, the procedure for participating in the settlement, and the date and place of the fairness hearing. The Notice will fairly apprise Settlement Class members of the settlement and their options with respect thereto, and fully satisfies all due process requirements.

### IV. PROPOSED SCHEDULE OF EVENTS

Plaintiff requests that the Court set the following deadlines with respect to the Class Action Settlement:

1.     Date by which the Notice is mailed to Settlement Class Members: **Thirty (30) days from the date of the Preliminary Approval Order**

2.     Date by which to file Motion for Attorneys' Fees, Costs  and Expenses: **Sixty (60) days from the date of the Preliminary Approval Order**

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646

3.      Last day to request exclusion from the Settlement Class: **Ninety (90) days from the date of the Preliminary Approval Order**

4.      Last day for Settlement Class Members to file objections to the settlement or attorney fees, costs and expenses application: **Ninety (90) days from the date of the Preliminary Approval Order**

5.      Date by which Settlement Class Counsel will Provide Defense Counsel with Opt-Out List: **One hundred (100) days from the date of the Preliminary Approval Order**

6.      Last Day for Settlement Class Counsel to File Motion for Final Approval of Class Action Settlement: **One hundred ten (110) days from the date of the Preliminary Approval Order**

**7.**      Last day to file any reply to objections: **One hundred ten (110) days from the date of this Order**

This proposed schedule is similar to those used and approved by numerous courts in class action settlements and provides due process to Class Members with respect to their rights concerning the settlement. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993).  Further, the schedule was the product of negotiation between the parties after consulting with Rust Consulting, Inc.

### V.  PROPOSED STAY & CONCLUSION

Plaintiff also requests that the Court order a stay of all deadlines, dates and proceedings in this matter unrelated to the Class Action Settlement, pending the Final Approval Hearing.

For the reasons set forth above, Plaintiff respectfully requests that the Court grant this Motion and enter the proposed order submitted herewith.

DATED this 28th day of September, 2018.

VAN SICLEN, STOCKS & FIRKINS
/s/ Tyler K. Firkins
By_____
Tyler K. Firkins, WSBA # 20964
David Nauheim/Attorneys for Plaintiff Class

VAN SICLEN, STOCKS & FIRKINS
A Professional Service Corporation
721 45th Street N.E.
Auburn, WA  98002-1381
(253) 859-8899 • Fax (866) 947-4646